UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AMANDA L KONDRAT'YEV, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:25-cv-4785 |
| | § | |
| NASA JOHNSON SPACE CENTER, *et al.*, | § | |
| | § | |
| Defendants. | § | |

# ORDER

Pending before the Court is *pro se* Plaintiff Amanda L Kondrat'yev's ("Plaintiff") Combined Motion for Leave to Use Electronic Filing System, Appointment of Counsel, Reasonable Disability Accommodations, and Court Guidance. (ECF No. 3). The Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion (*id.*).

The Court **GRANTS** Plaintiff's request to use electronic filing (*id.* at 2). Plaintiff must complete any required registration necessary to obtain electronic filing privileges located at pacer.uscourts.gov/register-account for an account/non-attorney filers for CM/ECF. Once registered, the Clerk will provide Plaintiff access to the CM/ECF system with the email address amandakondratyev@gmail.com. Plaintiff is hereby notified that upon being registered to receive electronic notices, the Clerk will not mail hard copies of

docket entries to Plaintiff. It is Plaintiff's responsibility to monitor the email address provided, to monitor this case docket in order to be informed of all activity in the case, and to promptly notify the court of any address change. The Clerk will provide Plaintiff access to the CM/ECF system for the purpose of filing pleadings in this case with permission terminating at the end of the case. Plaintiff will NOT have the ability to file documents in any case other than the above-styled case and will NOT have the ability to file a new case using the CM/ECF system. If Plaintiff has technical difficulties with the PACER system, they must address them with PACER, not the Court. It is further **ORDERED** that if Plaintiff abuses or misuses the privilege of electronic filing, their access will be revoked. Plaintiff must file all documents in person at the clerk's office, by mail to the clerk's office, or by electronic filing.

Turning to Plaintiff's request to appoint counsel (*id.* at 2–3), the Court notes that Plaintiff's case involves allegations of discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112 et seq. Title VII provides "upon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant." 42 U.S.C. § 2000e-5(f)(1). Notwithstanding this statutory authority, "[t]here is no automatic right to the appointment of

counsel." *Gonzalez v. Carlin*, 907 F.2d 573, 579 (5th Cir. 1990). "Rather, the decision whether to appoint counsel rests within the sound discretion of the trial court." *Id.* Courts consider the following factors in determining whether to appoint an attorney in a Title VII case: (1) the merits of the claim; (2) the plaintiff's own efforts to secure private counsel; and (3) the plaintiff's financial ability to retain private counsel. *Id.* at 580. No single factor is conclusive. *Id.* Courts also consider the plaintiff's ability, under the circumstances of the case, to litigate the case without the assistance of an attorney. *See Salmon v. Corpus Christi Indep. Sch. Dist.*, 911 F.2d 1165, 1166–67 (5th Cir. 1990). This same analysis is applied in cases brought under the ADA. *See Johnson v. City of Port Arthur*, 892 F. Supp. 835, 840 (E.D. Tex. 1995).

As to Plaintiff's ability to present her case, from the pleadings and the supporting documents found in the record, Plaintiff has not provided background information regarding her education. However, in Plaintiff's *in forma pauperis* ("IFP") application, she indicated she owes $30,000 in student loan debt. (4:25-mc-1874, ECF No. 1 at 2). Assuming Plaintiff was attempting to pursue some sort of higher education, the Court finds she likely possesses the ability to explain the factual circumstances underlying her complaint in a succinct and clear manner. *See Pinkard v. Wilkie*, No. 19-cv-849, 2019 WL 13020834, at *2 (W.D. Tex. Oct. 7, 2019) (finding a plaintiff with an associate's

3

degree should be able to litigate a case without an attorney); *Lara v. Dep't of Air Force*, No. 06-cv-626, 2006 WL 2241233, at *1 (W.D. Tex. Aug. 3, 2006) (noting an eleventh-grade education was enough for a court to find a plaintiff possessed the ability to represent herself). Further, Plaintiff filed her claim with the Equal Employment Opportunity Commission and appears to have followed all of the necessary procedures to preserve her discrimination claim. This suggests "an ability to understand what is necessary to prosecute a lawsuit in federal court." *Lampkin v. Tex. Dep't of Pub. Safety*, No. 12-cv-876, 2013 WL 264541, at *7 (W.D. Tex. Jan. 22, 2013). As such, this factor weighs against granting Plaintiff's request.

Next, the Court considers whether Plaintiff has made efforts to secure counsel. "A plaintiff must make a reasonable effort to secure counsel on her own." *Id.* Here, Plaintiff states "[m]ultiple legal aid, pro bono, and private attorneys have declined due to complexity and resources." (ECF No. 3 at 2). Plaintiff does not provide documentation to support her claim as to private attorneys. However, Plaintiff previously filed documents that show she reached out to Disability Rights Texas and Lone Star Legal Aid (ECF No. 2 at 28–33). As such, the Court finds this factor is neutral in the context of Plaintiff's request.

In analyzing whether Plaintiff has the financial means to retain private counsel, "a showing of poverty equal to that which is necessary to support a motion to proceed [IFP] is not required." *Lara*, 2006 WL 2241233, at *2. Instead, "[t]here need only be insufficient assets and income to enable plaintiff to afford an attorney to investigate and file her claim." *Id.* Here, Plaintiff states she "cannot afford counsel as documented in the IFP application." (ECF No. 3 at 2). In Plaintiff's IFP application, she indicated she is not currently employed and receives approximately $1,100.00 in government and private assistance. (4:25-mc-1874, ECF No. 1 at 1). Plaintiff states she has $800.00 and does not have any other assets. (*Id.* at 2). Plaintiff further states she has one minor child and that her monthly expenses total $1,565.00. (*Id.*). Lastly, Plaintiff states she owes $3500.00 in credit card debt and $30,000 in student loan debt. Based on the information presented, Plaintiff's present financial circumstances do not allow her income sufficient to retain counsel. As such, this factor weighs in favor of granting Plaintiff's request. *See Lara*, 2006 WL 2241233, at *2.

The final factor is whether Plaintiff presents a meritorious claim. While the early evaluation of the potential merits of a *pro se* litigant's claim can eliminate patently frivolous actions, the Court should interpret *pro se* complaints liberally. *See Thomas v. Norris*, No. 1:07-cv-573, 2008 WL 859190,

at *2 (E.D. Tex. Mar. 28, 2008) (citing *Peña v. United States*, 122 F.3d 3, 4 (5th Cir. 1997)). In making this evaluation, the Court should accept movant's allegations as true, unless they rise to the level of being wholly irrational or incredible. *See id.* (citing *Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992)). Weighing facts in a movant's favor also means the Court should grant movant all reasonable inferences of their factual contentions. *See id.* (citing *Johnson v. Rodriguez*, 943 F.2d 104, 107 (1st Cir. 1991)). Therefore, if movant asserts a recognized legal theory and facts supporting such a claim, the claim is not wholly frivolous and should survive frivolousness review. *See Denton*, 504 U.S. at 32–33; *Reado v. Tex. Gen. Land Office*, 929 F. Supp. 1046, 1053 (E.D. Tex. 1996) ("Examination of the merits of the case *sua sponte* before the defendant has been required to answer is akin to frivolousness review of a general *in forma pauperis* proceeding in that it cannot serve as a fact finding process for the resolution of disputed facts.").

Here, Plaintiff complains of the following discriminatory conduct: (1) termination of employment; (2) failure to promote; (3) failure to accommodate; (4) unequal terms and conditions of employment; (5) retaliation; (6) sexual harassment; (7) hostile work environment; (8) "denial of ADA proc." (ECF No. 1 at 4). Plaintiff alleges she was discriminated against based on her race, gender/sex, and disabilities. (*Id.*).

> Plaintiff provided the following facts in support of her case:
>
> Plaintiff worked at NASA JSC from Sept. 2022–Jan. 4, 2024 under joint employers Leidos and All Points. An Asian American woman with ADHD, PTSD (pre-hire) and ASD (confirmed 3.10.25), she endured sexual harassment, disability discrimination, denial of accommodations, and retaliation, culminating in wrongful termination on Jan. 4, 2024. The full factual basis is set forth in Exhibits A–L (EEOC Charges No. 460-2024-09354 & 460-2024-0943; EDEO NCN-24-JSC-00038; TWS 3719044; OFCCP I00311965; medical records; meeting notes), all incorporated by reference. Plaintiff reserves the right to amend these allegations and assert additional facts or claims reasonably related to the employment discrimination described in the attached materials.

(ECF No. 1 at 5). In the documents Plaintiff filed with the Court, she also states she experienced sexual harassment and worked in a misogynistic environment. (ECF No. 1-1 at 1). Plaintiff describes various incidents, including other employees being treated better than her, feeling uncomfortable around a supervisor, being given "large deployments" after requesting accommodations, being assaulted by an individual who pushed boxes onto Plaintiff, and being told she was terminated for making a false report. (*Id.* at 1–2).

From the Court's initial review, it notes that Plaintiff's factual allegations do not mention her race or her mental disabilities. For example, to establish a *prima facie* claim for race discrimination under Title VII, Plaintiff must show that she (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse

7

employment action by the employer; and (4) was replaced by someone outside her protected group or was treated less favorably than other similarly situated employees outside the protected group. *See Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 339 (5th Cir. 2021) (internal quotations omitted). Plaintiff states she is an Asian American woman (ECF No. 1 at 5) but does not state whether she was qualified for the position at issue. Plaintiff also states she was terminated. (ECF No. 1-1 at 3). However, Plaintiff does not address whether she was replaced by someone outside her protected group. Plaintiff alleges her supervisor treated a certain employer "nicer" and hired friends who allegedly received promotions and certain positions over others. (*Id.* at 1). However, Plaintiff does not specifically explain if these were similarly situated employees outside the protected group.

Similarly, to establish prima facie discrimination under the ADA, Plaintiff must show that she (1) has a disability; (2) was qualified for the position; and (3) was subject to an adverse employment decision due to her disability. *Dupre v. Charter Behavioral Health Systems of Lafayette, Inc.*, 242 F.3d 610, 613 (5th Cir. 2001). Plaintiff states she has "ADHD, PTSD (pre-hire) and ASD (confirmed 3.10.25)." (ECF No. 1 at 5). Plaintiff also states she "requested ADA accommodations in writing and offered medical documentation" but that she was told "the ADA is only for significant life

activities and they would not provide any accommodations." (ECF No. 1-1 at 2). Even assuming that Plaintiff has satisfied the first two elements for establishing a claim under the ADA, Plaintiff does not assert facts suggesting that her disability played a role in the decision to terminate her employment. *See Lampkin*, 2013 WL 264541, at *4 ("In other words, Lampkin has presented no facts that suggest any causal link between her alleged disability and TDPS's employment decision.").

Further, to establish a prima facie case of sex discrimination under Title VII, Plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for the position she sought; (3) she suffered an adverse employment action; and (4) others similarly situated but outside the protected class were treated more favorably. *See Stanton v. Jarvis Christian Coll.*, 417 F. Supp. 3d 811, 818 (E.D. Tex. 2019), *report and recommendation adopted*, No. 6:18-cv-479, 2019 WL 6034975 (E.D. Tex. Nov. 13, 2019). Again, Plaintiff does not address her qualifications for a position she sought or provide details as to whether others similarly situated but outside the protected class were treated more favorably.

As such, while this case is not frivolous within the meaning of 28 U.S.C. § 1915(d), this does not appear to be a particularly strong Title VII or ADA

case, and the "merits of the case" factor does not weigh in favor of appointed counsel. *See Reado*, 929 F. Supp. at 1053.

Overall, the balance of factors does not weigh in favor of granting Plaintiff's request. Despite her financial inability to retain counsel, Plaintiff has shown that she can, thus far, present her own case. For these reasons, Plaintiff's request to appoint counsel is **DENIED WITHOUT PREJUDICE**. The Court will email Plaintiff a copy of the Guidelines for Litigants Without Lawyers for the Southern District of Texas.[1]

As to Plaintiff's request for disability accommodations (ECF No. 3 at 3), the Court will consider specific requests for accommodations on a case-by-case basis at the time of any proceedings.

It is **SO ORDERED**.

**SIGNED** in Houston, Texas on November 13, 2025.

*[signature]*

Richard W. Bennett
United States Magistrate Judge

---

[1] The Guidelines for Litigants Without Lawyers may also be found online at https://www.txs.uscourts.gov/sites/txs/files/proseguide.pdf.