UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

AMANDA L. KONDRAT'YEV,
Plaintiff,
v.
NASA JOHNSON SPACE CENTER,
LEIDOS HOLDINGS INC., and
ALL POINTS LOGISTICS LLC,
Defendants.

Civil Action No. 4:25-cv-04785

# PLAINTIFF'S RENEWED COMBINED MOTION FOR APPOINTMENT OF COUNSEL AND DISABILITY ACCOMMODATIONS

Plaintiff Amanda L. Kondrat'yev, appearing pro se and in forma pauperis, respectfully files this Renewed Combined Motion for Appointment of Counsel and Disability Accommodations under 42 U.S.C. § 2000e-5(f)(1) and the Court's disability access policies and procedures, and would show as follows:

## I. INTRODUCTION AND PROCEDURAL POSTURE

### 1. Prior ruling

On November 13, 2025, this Court entered an Order (ECF No. 13) denying without prejudice Plaintiff's initial request for appointment of counsel. The Court found that Plaintiff's financial circumstances strongly supported appointment, but that the Title VII and ADA claims did not appear particularly strong on the then-existing pleadings, and that Plaintiff had shown an ability to present her case pro se.

### 2. What changed since ECF No. 13 (why this renewed motion is materially different)

This Renewed Motion, filed 104 days after the Court's November 13 denial, directly responds to ECF No. 13 and describes material changes in case posture that Plaintiff contends support reconsideration. Since November 13: all three defendants have

obtained counsel; Leidos and NASA have received permission to file motions to dismiss; and the Initial Scheduling Conference has been set for March 25, 2026. The Court noted gaps in comparator evidence and disability-to-termination connection; Plaintiff now provides concrete evidence addressing these concerns, including agency materials and sworn-admission materials bearing on causation and pretext (see, e.g., Exhibits F and G). The Court inferred pro se capacity from EEOC filings; Plaintiff now explains that written work capacity does not necessarily reflect real-time litigation management capacity. The Court noted limited documentation of counsel efforts; Plaintiff now provides comprehensive documentation (Exhibit C: Attorney Contact Log). Plaintiff primarily requests appointment of counsel. In the alternative, Plaintiff requests the bounded litigation accommodations set forth in Section V below, and, if needed, a short status conference or limited-scope appointment to ensure meaningful participation in early case-management events.

**3. Current procedural posture (service, counsel appearances, ISC)**

The case posture has materially changed since ECF No. 13. Service is complete. All three defendants now have counsel. All Points filed an Answer on January 28, 2026 (ECF 23). Leidos received leave to file a Motion to Dismiss on December 30, 2025 (ECF 17). NASA received leave to file a Motion to Dismiss on January 5, 2026 (ECF 19). As of this filing, neither Leidos nor NASA has filed its authorized motion to dismiss — a period of 57 and 51 days, respectively, since leave was granted. An Initial Scheduling Conference is set for March 25, 2026 at 10:15 AM (ECF 22), requiring Rule 26(f) conferral, initial disclosures, and a case-management plan.

**4. Why appointment or accommodations are needed now**

Plaintiff now faces three well-resourced defendants with sophisticated counsel while proceeding pro se with documented disabilities, and Plaintiff contends this increases the need for counsel (or accommodations). The *Gonzalez* factors now weigh in favor of appointment given case complexity, documented medical inability to present the case, and exhaustive but unsuccessful efforts to retain counsel. Urgent need for accommodations for the March 25 ISC and imminent motion practice is a separate disability accommodations request addressed in Section V below.

**5. Judicial economy**

Appointment serves judicial economy. Without counsel, Plaintiff's pro se responses to authorized Motions to Dismiss may require supplemental briefing and additional hearings. Defendants may raise issues such as corporate entity distinctions, administrative exhaustion/notice requirements, and sovereign immunity—issues that typically require specialized employment law expertise. Appointing counsel now prevents deficient pro se responses, repetitive procedural explanations, and delayed case progression. Early appointment allows counsel to participate meaningfully in the Initial Scheduling Conference and Rule 26(f) conference.

**II. LEGAL STANDARD**

**A. Appointment of Counsel**

1. Under Title VII, "upon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant." 42 U.S.C. § 2000e-5(f)(1). In cases involving federal defendants, 42 U.S.C. § 2000e-16(d) incorporates the appointment of counsel provision of § 2000e-5(f)(1), making that provision applicable to claims against

NASA Johnson Space Center as a federal employer.

2. In deciding whether to appoint counsel, courts in the Fifth Circuit consider: (1) the merits of the plaintiff's claims; (2) the plaintiff's efforts to secure counsel; and (3) the plaintiff's financial ability to retain counsel. *Gonzalez v. Carlin*, 907 F.2d 573, 579–80 (5th Cir. 1990). Courts also consider (4) the plaintiff's ability, in light of the circumstances, to present the case without an attorney. *Salmon v. Corpus Christi Indep. Sch. Dist.*, 911 F.2d 1165, 1166–67 (5th Cir. 1990).

3. No single factor is dispositive. The Court exercises discretion based on whether appointment would be "just" under the circumstances. *Gonzalez*, 907 F.2d at 579.

**B. Disability Accommodations (Federal Court)**

1. Plaintiff respectfully requests reasonable litigation accommodations for federal court proceedings, including for the March 25, 2026 Initial Scheduling Conference.

2. Courts have long recognized that meaningful access to judicial proceedings is a fundamental concern. *See Tennessee v. Lane*, 541 U.S. 509, 522–24 (2004) (recognizing Congress's authority to require accommodation of disabled persons' access to judicial services as implicating fundamental rights of access to the courts). While *Lane* arose under ADA Title II as applied to state courts, its core principle — that disability barriers to court access are constitutionally significant and must be remedied — is persuasive authority for this Court's inherent power to manage its proceedings fairly. SDTX has separately

designated Communication Access Coordinators and states that, although the ADA does not apply to the federal judiciary, SDTX provides reasonable accommodations for communication disabilities under Judicial Conference policy. Plaintiff respectfully requests accommodations consistent with *Lane*'s access-to-courts principle, that policy/practice, and this Court's inherent authority to manage proceedings fairly and efficiently.

3. Plaintiff seeks practical, case-management accommodations (remote appearance, written agenda, breaks, written confirmation of deadlines/orders, and structured procedures) that support meaningful participation. Plaintiff does not ask the Court to adjudicate disputed statutory coverage issues regarding whether ADA Title II or Rehabilitation Act § 504 applies to the federal judiciary, and Plaintiff does not rely on inapplicable state/local "public entity" cases for that proposition.

## III. INTERSECTIONAL FRAMEWORK

Plaintiff is an Asian American woman with disabilities—a distinct protected subgroup under *Jefferies v. Harris County Community Action Association*, 615 F.2d 1025 (5th Cir. 1980), which held that "recognition of black females as a distinct protected subgroup... is the only way to identify and remedy discrimination against black females."

Under *Jefferies*, this Court must analyze Plaintiff's access barriers through an intersectional lens recognizing the compounding effects of race, gender, and disability. The model minority myth creates unique diagnostic barriers for Asian Americans with ADHD/autism—clinicians dismiss symptoms when grades are

adequate. Gender amplifies masking burdens, as women with ADHD/autism work "three times harder than neurotypical colleagues" but "nobody sees the struggle behind the achievement." *See* Turnock et al., *Understanding Stigma in Autism: A Narrative Review and Theoretical Model*, Autism in Adulthood, Vol. 4, No. 1, at 76 (2022) (documenting that autistic individuals—particularly women—engage in sustained, invisible masking of disability-related traits at significant psychological cost, producing neurotypical-appearing behavior while concealing the underlying disability burden from observers). *See* Exhibit D-1 for detailed intersectional framework analysis.

When disability barriers are compounded by systemic obstacles at the intersection of race, gender, and disability, appointment of counsel becomes a reasonable, practical accommodation that enables meaningful participation in the case.

## IV. APPLICATION OF THE *GONZALEZ* FACTORS

### A. Plaintiff's Financial Circumstances (Still Strongly in Her Favor)

The Court in ECF No. 13 found Plaintiff's financial circumstances "do not allow her income sufficient to retain counsel" and this factor weighs in favor of appointment. Plaintiff's situation has not improved. She remains unemployed despite active job search, relies on government and private assistance as a single parent, has limited cash, and carries significant debt. Monthly expenses exceed income. Private employment attorneys require retainers of $5,000-$15,000, far exceeding Plaintiff's capacity. Plaintiff continues to actively seek employment and has not applied for Social Security Disability Insurance (SSDI) because she is able and willing to work with reasonable accommodations. This supports Plaintiff's position that her request for

appointment of counsel is based on litigation barriers, not inability to work. This factor continues to weigh in favor of appointment.

**B. Plaintiff's Efforts to Secure Counsel (Now More Fully Documented)**

**Attorney Contact Efforts (Exhibit C):** Plaintiff contacted 16+ employment attorneys over 19 months (February 2024 - September 2025). All declined or did not take the case; where reasons were provided, Exhibit C reflects them.

Exhibit C documents:

- HKM Employment Attorneys (April 2024): Declined representation stating "enough of those thresholds were not met in order for us to move forward" and that firm was "not in a perfect position to represent you at this time"
- Dupree Law Firm (July and December 2024): Paid $250 consultation fee, no representation secured
- Shellist Lazarz Slobin LLP (September 2025): Provided EEOC charge documents; firm declined representation September 25, 2025 and referred Plaintiff to Amanda Hernandez at AH Law PLLC, who also declined September 29, 2025 stating she was "completely booked and cannot help at this time with those deadlines"
- Rob Wiley P.C. (December 2024): Paid $250 consultation fee, no representation offered
- TB Robinson Law Group (2024): Quoted $10,000 retainer minimum, stated "likelihood of contingency very low"
- Lone Star Legal Aid: Four applications covering both employment and divorce matters; resource-based closure after internal review

The consistent response: case is too resource-intensive or complex for contingency representation given multiple defendants, overlapping federal statutes, joint-employer issues, and volume of administrative filings. Plaintiff's inability to obtain representation supports an inference of case complexity. This factor weighs in favor of appointment.

**C. Merits of the Claims (Strengthened by Organized Evidence)**

Plaintiff's claims are strong and supported by a substantial documentary record, as demonstrated below:

**a. Retaliation / temporal proximity anchors (Exhibit E)**

- 26-minute retaliation sequence: On September 18, 2023, at 5:20 PM, Plaintiff sent an email to HR reporting race discrimination, sex discrimination, hostile work environment, FLSA violations, and requesting disability accommodations. Twenty-six minutes later, at 5:46 PM, Plaintiff received her first disciplinary action in 15 months of employment, described in the cited records as a "Final Warning." The next business day, September 19, 2023, All Points denied Plaintiff's accommodations request with the statement: "This is not covered by the ADA." Plaintiff cites this statement as part of the record supporting retaliation and pretext. A blanket denial of this nature — foreclosing the interactive process entirely — supports Plaintiff's ADA failure-to-accommodate claim on the merits. *See Tudor v. Whitehall Cent. Sch. Dist.*, No. 23-665 (2d Cir. Mar. 25, 2025) (2d Cir., persuasive authority; employment/employer context only — cited for proposition that ADA may require reasonable accommodation even where employee can perform essential

functions without one; does not address judicial access or federal court proceedings). The statement "This is not covered by the ADA," issued the day after Plaintiff's formal accommodation request and discrimination report, is not merely circumstantial evidence. It is direct evidence of discriminatory intent toward Plaintiff's disability status — communicated in writing, on the record, by management, immediately following a formal accommodation request. Direct evidence of discriminatory animus, standing alone, creates a triable issue of fact. Combined with the temporal proximity of the formal warning issued 26 minutes after the accommodation request and discrimination report, this sequence creates an unusually strong retaliation record.

This 26-minute temporal proximity from protected activity to adverse action is cited as supporting an inference of retaliation and causation. These temporal sequences are not supported by proximity alone — they are corroborated by independent documentary evidence, including the written admission in Exhibit G, the agency records in Exhibit F, the RCA findings in Exhibit H, and the sworn statements in Exhibits I and J. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (temporal proximity must be assessed in context of the entire record). Notably, this escalation occurred 67 days after Plaintiff's report of Brent Wong's sexual harassment to management/HR on July 13, 2023.

- 6-day assault-to-termination: On December 29, 2023, Plaintiff was physically assaulted by coworker Susana Kane at the NASA facility. Plaintiff reported the assault through NASA Security, All Points management, and Leidos HR. This report is cited as protected activity. Three business days later—January 4,

2024—All Points terminated Plaintiff. The temporal proximity (6 calendar days, 3 business days) between the report and the termination supports an inference of retaliation. Contemporaneous work-assignment records are cited as reflecting that Plaintiff remained telework/no-deployments while Susana Kane had onsite scheduling. Eight days before termination, Plaintiff was the top-performing technician in her peer group — three of the nine tickets resolved and closed on December 27, 2023 were resolved by Plaintiff alone. Defendants' own contemporaneous performance records thus directly contradict any performance-based rationale for the January 4, 2024 termination.

**b. Termination narrative / shifting accounts / Cat's Paw coordination (Exs. F, G, I, J)**

- March 25, 2024 written admission (Exhibit G): All Points' representative wrote, "We were not told the actual results of the security investigation." This written admission — made nearly three months after the January 4 termination — establishes that All Points confirmed in writing that the stated justification for termination (the security investigation outcome) was not communicated to the decision-maker before the termination decision was made. A party cannot simultaneously rely on an investigation outcome as its legitimate non-discriminatory reason for termination and admit in writing that it did not know that outcome. This admission is not subject to competing interpretation — it is All Points' own words. Contemporaneous internal NASA records from the same date independently confirm the decision flow: JSC Security Deputy Chief

Christopher Kindred wrote in an internal email that "Ms. Kondrat'yev was terminated by Leidos after the incident described" — NASA's own security office identifying Leidos as the terminating entity (Exhibit G).

- Cat's paw liability — cross-entity decision flow (Exhibit F): Exhibit F is cited as documenting a decision flow between Leidos supervisors and All Points decision-makers consistent with a cat's paw theory under *Staub v. Proctor Hospital*, 562 U.S. 411 (2011). Plaintiff cites this coordination as supporting joint-employer theories and the need for counsel.

- All Points EEOC sworn statement (Exhibit I): In its EEOC position statement, All Points asserted, "Leidos requested we retrieve her personal belongings and remove her from the contract." This conflicts with the NASA ODEO record (Ex. F), where Robyn Smith (All Points) indicated that JSC Security did not tell All Points to terminate Plaintiff, and, when asked whether Leidos told All Points to terminate Plaintiff, Smith answered no — describing the request as limited to collecting Plaintiff's personal belongings. These inconsistent accounts are attributed to the same All Points HR official, highlighting materially conflicting explanations across proceedings and supporting pretext and *Staub* Cat's Paw concerns.

- Exhibit J (TWC hearing) — corroboration + complexity: This record is cited as preserving All Points' early sworn narrative that can be compared against later written admissions and agency records for consistency and pretext. At the TWC hearing, All Points' representative testified that Plaintiff was "sent home during the investigation" and that All Points was unaware of any remote work

during that period — establishing that the termination was not All Points' independent decision, but waited on an external investigation conclusion that, per Exhibit F, was never actually reached (Exhibit J).

**c. Comparator / selective enforcement cluster (scope-of-work / RCA, Ex. H)**

Plaintiff cites Exhibit H (RCA excerpt) as supporting that actions "were not within her normal tasks and therefore was not trained in the area of GPOs and security groups," and as relevant to disparate treatment and complexity issues.

**d. Comparator evidence — ADA pretext (William Figueredo; Exhibit K)**

William Figueredo is a male PC Support Technician who worked in the same position as Plaintiff at NASA JSC under the same supervisors (Brent Wong and Christy Murray). Figueredo repeatedly failed to meet performance standards and was unable to complete deployments within required service level agreements. Despite this sustained poor performance, Figueredo was informally accommodated with a lighter-duty Spacebar assignment—the same type of modified-duty assignment Plaintiff requested and was denied. Unlike Plaintiff's formal accommodation request—which All Points denied with the statement "This is not covered by the ADA"—Figueredo's Spacebar assignment was never processed through a formal ADA accommodation procedure. Work assignment records and contemporaneous emails are expected to reflect that Figueredo was regularly assigned to the Spacebar rather than incident tickets or deployments, notwithstanding documented performance deficiencies. Notably, Figueredo was an All Points employee — the same employer as Plaintiff — and had a personal relationship with supervisor Brent Wong—the same supervisor who managed Plaintiff and who received Plaintiff's July 2023 harassment report. This

comparator evidence supports two propositions bearing on the merits: (1) modified-duty accommodations were available and informally extended to a male employee through a personal relationship rather than ADA process, but withheld from Plaintiff after she made formal accommodation requests—demonstrating that Defendants' denial was based on discriminatory animus and sex-based favoritism rather than undue hardship; and (2) the cross-actor comparator evidence involves Leidos supervisors, All Points management, subcontractor relationships, and individual witnesses across entities, requires coordinated discovery that independently supports the need for appointed counsel to manage scope and strategy.

The discriminatory irony is not subtle: the supervisor who denied Plaintiff the same modified-duty accommodation informally extended to Figueredo is Brent Wong — the same individual whose sexual harassment Plaintiff reported to management on July 13, 2023, sixty-seven days before the first retaliatory disciplinary action. The intersection of ADA pretext, retaliation for harassment reporting, and selective accommodation denial under the same supervisor is not coincidence; it is a pattern. Four months after Plaintiff's termination, Brent Wong was promoted to a 100% remote, organization-wide problem-solving role — the same type of modified-duty arrangement Plaintiff had formally requested and been denied. (Exhibit K.) Plaintiff and Brent Wong share the same disability (ADHD); the opposite outcomes — termination for Plaintiff, promotion for Wong — constitute direct comparator evidence of sex and disability-based disparate treatment under the same supervisory structure.

This factor weighs in favor of appointment.

**D. Plaintiff's Ability to Litigate Without Counsel (Limited by Disability and Imminent Case Demands)**

**Medical documentation (Exhibit A):** Plaintiff submits excerpts of medical evaluations establishing diagnoses and functional limitations relevant to litigation capacity and to the requested accommodations and appointment of counsel.

**1. Workplace accommodation vs. litigation barriers (core distinction)**

Plaintiff contends the demands of federal litigation are categorically different from IT support work and that her disability-related access needs are specific to litigation participation. Research on autistic camouflaging establishes that high-functioning autistic individuals sustain significant psychological depletion in the course of producing neurotypical-appearing written work—depletion that is invisible to observers but substantially reduces cognitive resources available for real-time, adversarial demands. *See* Turnock et al., *supra*. Plaintiff's ability to produce polished written filings does not reflect her capacity to manage simultaneous, real-time adversarial litigation while processing PTSD triggers and operating at a documented 5-8x cognitive inefficiency ratio. *See* Exhibit D-2 (Twice-Exceptional Framework Analysis).

**2. Complexity and resource imbalance independently prevent effective pro se litigation (Factor 4)**

Plaintiff cites: (a) Rule 26(f) and early case-management obligations tied to the March 25, 2026 ISC, (b) multiple sophisticated defense teams, (c) real-time strategy demands, (d) corporate-entity and sovereign-immunity issues likely to be raised early, and (e) deadline volatility from authorized motions to dismiss that can be filed without

a set deadline.

Conclusion (Factor 4): Plaintiff contends her ability to effectively present this case without counsel is substantially limited, and Factor 4 weighs strongly in favor of appointment (or, at minimum, the bounded accommodations requested).

**E. Summary of Balancing**

All four *Gonzalez* factors now favor appointment, reflecting a decisive shift since November 13.

**V. SPECIFIC DISABILITY ACCOMMODATIONS REQUESTED**

In the alternative to appointment of counsel, or in addition thereto, Plaintiff respectfully requests the following specific disability accommodations for all Court proceedings in this matter, including but not limited to the March 25, 2026 Initial Scheduling Conference:

**1. Remote Appearance by Video or Telephone**

Plaintiff requests permission to appear remotely by video conference (preferred) or telephone for all hearings, conferences, and proceedings, including the Initial Scheduling Conference on March 25, 2026. Remote appearance reduces travel-related sensory and executive function demands and allows Plaintiff to participate from a familiar, controlled environment.

**2. Written Agenda in Advance of Proceedings**

Plaintiff requests that a written agenda or list of topics to be addressed be provided to Plaintiff at least three (3) business days before any conference, hearing, or scheduled proceeding. Advance written notice allows Plaintiff to prepare organized written responses and reduces barriers caused by real-time processing and working memory

limitations.

**3. Scheduled Breaks During Proceedings**

Plaintiff requests that proceedings exceeding thirty (30) minutes in duration include a scheduled break at intervals not exceeding forty-five (45) minutes. Uninterrupted extended oral proceedings create significant barriers due to ADHD and autism-related attention and sensory regulation needs.

**4. Written Confirmation of All Deadlines, Orders, and Instructions**

Plaintiff requests written confirmation — by email or written order — of all deadlines, rulings, and procedural instructions communicated during or after any proceeding, within two (2) business days. Plaintiff's disabilities substantially limit short-term auditory recall and oral information processing. Written confirmation prevents errors arising from missed or misunderstood verbal communications.

**5. Written Conferral Process Where Permitted**

Plaintiff requests that meet-and-confer obligations with opposing counsel be conducted by written communication (email) rather than by telephone or in-person meeting, to the extent permitted by the Federal Rules and this Court's local rules and practices. Written conferral allows Plaintiff to communicate effectively and to document agreements and disagreements.

**6. Permission for Support Person**

Plaintiff requests permission to have a support person present during hearings and conferences to assist with real-time processing, note-taking, and procedural tracking. The support person would not participate as counsel or advocate. This accommodation is consistent with Plaintiff's prior experience at the TWC unemployment hearing (see

Exhibit B), where a support person's presence was necessary for meaningful participation.

Plaintiff is willing to discuss any of the foregoing accommodations with the Court or with opposing counsel and to modify or substitute accommodations as appropriate to meet the Court's administrative needs while ensuring meaningful access to these proceedings.

## CONCLUSION AND PRAYER FOR RELIEF

For the foregoing reasons, Plaintiff Amanda L. Kondrat'yev respectfully requests that this Court:

1. **GRANT** Plaintiff's Renewed Motion for Appointment of Counsel pursuant to 42 U.S.C. § 2000e-5(f)(1) and 42 U.S.C. § 2000e-16(d);

2. In the alternative, **GRANT** the specific disability accommodations set forth in Section V for all proceedings in this matter, including the March 25, 2026 Initial Scheduling Conference;

3. In the further alternative, **SET** a short status conference to allow Plaintiff to address the Court's concerns and ensure meaningful access to these proceedings; and

4. **GRANT** such other and further relief to which Plaintiff may be justly entitled.

Respectfully submitted,
/s/ Amanda L. Kondrat'yev
AMANDA L. KONDRAT'YEV
*Plaintiff, Pro Se*
1102 Buoy Rd
Houston, Texas 77062
Telephone: 346-366-0787
Email: amandakondratyev@gmail.com
Dated: February 25, 2026

CERTIFICATE OF CONFERENCE

**NASA Johnson Space Center counsel (Ariel Nicole Wiley, DOJ):** Plaintiff sent conferral email February 4, 2026 at 9:59 AM requesting position on this Renewed Motion. NASA counsel responded February 4, 2026 at 12:18 PM stating NASA **opposes** this motion for appointment of counsel and disability accommodations. Given the substantial change in case posture since November 13 (all defendants now represented by sophisticated counsel, pending MTDs, imminent ISC requiring Rule 26(f) conferral), Plaintiff respectfully proceeds with this Renewed Motion addressing the Court's specific concerns from ECF No. 13.

**Leidos Holdings Inc. counsel (Stephen J. Quezada, Ogletree Deakins):** Plaintiff sent conferral email February 4, 2026 at 9:59 AM requesting their position on this Renewed Motion. Leidos counsel did not respond to this specific request for position on appointment of counsel and accommodations. Given that Leidos has received permission to file a motion to dismiss on corporate entity grounds (a complex legal issue that supports the need for appointed counsel), immediate filing is appropriate.

**All Points counsel (Laura E. De Santos and Katherine Strathman, Gordon Rees):** Conferral email sent February 4, 2026 at 9:59 AM CT to ldesantos@grsm.com and kstrathman@grsm.com requesting response by 5:00 PM same day. Response received February 4, 2026 in afternoon: **All Points opposes this Motion** for appointment of counsel and disability accommodations.

Plaintiff made good faith efforts to confer. NASA and All Points oppose this Motion; Leidos did not respond to request for position. Given that two defendants have received permission to file motions to dismiss that could be filed at any time

(triggering 21-day response deadlines), the Initial Scheduling Conference is set for March 25, 2026 (28 days away), and appointment of counsel requires time for counsel to review the case and become effective, immediate filing is necessary and appropriate. Defendants' opposition reinforces the resource imbalance this Motion seeks to remedy: three sophisticated firms oppose accommodations that would level the playing field.

Dated: February 25, 2026
/s/ Amanda L. Kondrat'yev
**AMANDA L. KONDRAT'YEV**
*Plaintiff, Pro Se*

## CERTIFICATE OF SERVICE

I certify that on the date of filing, a true and correct copy of this motion was served via CM/ECF on all counsel of record:

- Stephen J. Quezada, Ogletree Deakins, for Defendants Leidos Holdings Inc., Leidos, Inc., and Leidos Innovations Corp.

- Ariel Nicole Wiley, Assistant United States Attorney, for Defendant NASA Johnson Space Center

- Laura E. De Santos and Katherine Strathman, Gordon Rees Scully Mansukhani, LLP, for Defendant All Points Logistics LLC

/s/ Amanda L. Kondrat'yev
**AMANDA L. KONDRAT'YEV**
*Plaintiff, Pro Se*