# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

AMANDA L. KONDRAT'YEV,
Plaintiff,
v.
NASA JOHNSON SPACE CENTER,
LEIDOS HOLDINGS INC., and
ALL POINTS LOGISTICS LLC,
Defendants.

Civil Action No. 4:25-cv-04785

## PLAINTIFF'S PROPOSED JOINT DISCOVERY/CASE MANAGEMENT PLAN UNDER RULE 26(F) FEDERAL RULES OF CIVIL PROCEDURE

Plaintiff Amanda L. Kondrat'yev respectfully submits this proposed Joint Discovery/Case Management Plan. This filing is submitted separately because Defendants filed their own version (ECF 37) on March 13, 2026, without incorporating Plaintiff's positions. Plaintiff further notes that the First Amended Complaint has not been filed, and the original complaint remains the operative pleading; accordingly, any references in other drafts to additional parties should be treated as anticipated/conditional only. Plaintiff respectfully submits this complete version for the Court's consideration at the Initial Scheduling Conference on March 25, 2026. Plaintiff's submission of this Plan and participation in the Initial Scheduling Conference does not constitute waiver of any rights, accommodations, or relief requested in ECF 32, ECF 33, or ECF 36, which remain pending. As a pro se litigant, Plaintiff's positions are stated to the best of Plaintiff's current understanding and are not intended to be exhaustive of all applicable legal arguments, claims, theories, or authorities; Plaintiff expressly reserves the right to supplement, clarify, or expand upon any position stated herein as discovery proceeds, as appointed or retained

counsel may advise, or as expert analysis warrants. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (pro se filings held to less stringent standards and construed liberally).

---

**1. State where and when the meeting of the parties required by Rule 26(f) was held and identify the counsel who attended for each party.**

The parties conferred under Rule 26(f) across two sessions via Microsoft Teams videoconference:

- **Session 1 — Monday, March 2, 2026 at 12:00 PM CT:** Amanda Kondrat'yev (Plaintiff, Pro Se), Ariel Wiley (NASA/DOJ), and Katherine Strathman (All Points/Gordon Rees) attended. Leidos counsel Stephen J. Quezada (Ogletree Deakins) did not attend despite confirming availability on February 25, 2026.

- **Session 2 — Tuesday, March 3, 2026 at 12:00 PM CT:** Follow-up session was scheduled. Defendants later filed ECF 37 representing that at 11:45 AM Plaintiff said she would not attend and requested more time; Plaintiff disputes that representation. Unless/until a recording/transcript or other primary source confirms the March 3 session occurred, treat it as **scheduled with disputed occurrence/participation**. Plaintiff's proposed responses reflect positions communicated at the March 2 session and Plaintiff's written conferral (and, if later verified, any March 3 discussions).

**2. List the cases related to this one that are pending in any state or federal court with the case number and court, and state how the cases are related.**

None.

**3. Briefly describe what this case is about.**

Plaintiff, an Asian American woman with documented disabilities (ADHD, autism, PTSD), brings claims of race, sex, and disability discrimination, retaliation, sexual harassment, denial of ADA accommodations, and equal pay violations under Title VII, the ADA, the Rehabilitation Act, the FLSA, the Equal Pay Act, and 42 U.S.C. § 1981 against three joint employer corporate defendants, one federal agency, and twelve individual defendants arising from Plaintiff's employment on the NASA JSC NEST contract. Plaintiff alleges Defendants subjected Plaintiff to a hostile work environment including sexual harassment by a supervisor, denied reasonable accommodations with a categorically false legal justification, paid male employees more for equal work through a secret informal pay scheme, and retaliated within 26 minutes of protected activity. Plaintiff alleges Defendants terminated Plaintiff three business days after Plaintiff reported a workplace assault, without interviewing Plaintiff or any witnesses, without obtaining the NASA Security report, and based on a fabricated "false report" narrative that NASA Security Chief Russ Tucker categorically denied — stating NASA Security "never determined, nor communicated" that Plaintiff falsified any report. Plaintiff further alleges post-termination retaliation including false sworn statements to four federal and state agencies designed to destroy Plaintiff's professional reputation, and asserts related state-law claims including assault, defamation, civil conspiracy, and intentional infliction of emotional distress against individual defendants. Plaintiff seeks back pay, front pay, compensatory and punitive damages, and injunctive relief.

**4. Identify any issues as to service of process, personal jurisdiction, or venue.**

None known at this time as to the currently named defendants in the operative complaint. Plaintiff anticipates that amendment and/or additional parties may be addressed at the Initial Scheduling Conference; if amendment is permitted, Plaintiff anticipates requesting new summonses for any newly added parties. Venue remains proper in the Southern District of Texas under 28 U.S.C. § 1391(b) because the relevant events occurred at NASA Johnson Space Center in Houston, Texas. Personal jurisdiction is proper over the currently named defendants based on their conduct in Texas.

**5. Federal Jurisdiction.**

**a.** Federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343 for claims arising under Title VII of the Civil Rights Act of 1964 (Counts VI–VIII), the Americans with Disabilities Act (Counts I–III), the Rehabilitation Act of 1973, Section 504 (Count IV against NASA), the Equal Pay Act, 29 U.S.C. § 206(d) (Count V), the Fair Labor Standards Act (Count XI), the Federal Contractor Whistleblower Protection Act, 41 U.S.C. § 4712 (Count XII), OSHA Section 11(c) (Count XIII), 42 U.S.C. § 1981 (Counts XVIII–XX), and 42 U.S.C. § 1985(3) (Count XXIII — civil rights conspiracy). Supplemental jurisdiction over state-law claims (Counts IX–XVII, XXI, XXII, XXIV: assault, defamation, civil conspiracy, IIED, tortious interference, negligence, negligent hiring/supervision, fraud/misrepresentation, and promissory estoppel) under 28 U.S.C. § 1367(a), as all state claims arise from the same nucleus of operative facts. NASA is a federal party, independently establishing federal jurisdiction.

**b.** None.

**c.** Not applicable. Jurisdiction is based on federal question, not diversity of citizenship. However, Plaintiff notes that Defendant All Points Logistics LLC is a Florida LLC, Defendant Leidos Holdings Inc. is a Delaware corporation headquartered in Virginia, and Plaintiff is a Texas citizen — complete diversity also exists as to the private corporate defendants.

**6. List anticipated additional parties that should be included, and by whom they are wanted.**

Plaintiff anticipates that additional parties may be sought by amendment if permitted by the Court. Plaintiff reserves the right to seek leave to add parties based on discovery and/or amendment rulings.

**Corporate Defendants:** (1) Leidos, Inc. — wholly owned subsidiary of Leidos Holdings that managed day-to-day operations at NASA JSC; (2) Leidos Innovations Corporation — wholly owned subsidiary named to prevent corporate liability evasion; (3) TekFive — NEST subcontractor whose employee John Walters allegedly manufactured a false complaint to build a termination case; (4) Seabrook Solutions — NEST subcontractor whose employee Susana Kane allegedly assaulted Plaintiff on December 28–29, 2023.

**Individual Defendants (state-law claims only per *Ackel v. National Commc'ns*, 339 F.3d 376 (5th Cir. 2003)):** (1) Brent Wong — Leidos Service Delivery Lead, Plaintiff's direct supervisor, alleged sexual harasser who allegedly fabricated the "false report" narrative to NASA; (2) Christy Murray — Leidos Center Operations Manager, authorized manufactured complaints and coordinated termination; (3) Ed Scarborough — All Points VP of Operations, authorized termination and allegedly signed false

sworn statements to government agencies without visiting the worksite; (4) Robyn Smith — All Points CHRO, categorically denied ADA accommodation with an allegedly false legal statement, and allegedly testified falsely at TWC hearing; (5) Susana Kane — Seabrook Solutions PCST, allegedly committed workplace assault on December 28–29, 2023; (6) John Walters — TekFive PCST, allegedly manufactured a false November 27, 2023 complaint; (7) Dan Murphy — All Points/Leidos PCST, filed retaliatory complaint 6 days after Plaintiff reported harassment; (8) Travis McFarland — Leidos PCST/Queue Manager, disability harassment and post-termination retaliation; (9) Brian Lynn — Leidos Deputy Program Manager, participated in hostile "security interview"; (10) Cristian Garcia — Leidos PCST, allegedly gave a materially false witness statement to NASA Security; (11) Tristian Castro — Leidos PCST, allegedly manufactured a false August 23, 2023 complaint; (12) Dianne Brief — Leidos Human Resources Business Partner (HRBP), participated in July 13, 2023 harassment report meeting, coordinated with All Points on personnel decisions regarding Plaintiff, and facilitated the joint employer relationship through which Plaintiff's employment was controlled and terminated.

**7. List anticipated interventions.**

Plaintiff does not anticipate any interventions.

**8. Describe class-action issues or collective-action issues.**

This is a single-plaintiff action. However, Plaintiff notes the existence of *Robbins v. National Aeronautics and Space Administration* (EEOC Class Certification, September 2022), in which two classes were certified comprising over 2,000 Asian American employees and over 2,000 African American employees alleging systematic

race discrimination in NASA performance appraisals. Plaintiff is an Asian American employee of NASA JSC hired one day after class certification, and Plaintiff's claims involve the same type of race-based adverse actions at the same agency. The class certification establishes NASA was on formal notice of systematic race discrimination during Plaintiff's entire employment (September 2022–January 2024). Plaintiff notes the relevance of this class certification to pattern evidence in this case.

**9. State whether each party has made the initial disclosures required by Rule 26(a). If not, describe the arrangements that have been made to complete the disclosures and the dates.**

Standard Rule 26(a)(1) disclosures are superseded in this matter by Judge Hanks's mandated Initial Discovery Protocols for Employment Cases Alleging Adverse Action (IDP).

**Defendant All Points:** Served APL 000001–000141 on February 27, 2026. This production is materially deficient under the IDP: (a) no internal managerial communications between All Points and Leidos regarding Plaintiff's employment, discipline, accommodation requests, or termination; (b) no formal discipline or progressive discipline records; (c) no communications with NASA regarding Plaintiff's badge revocation or access termination; (d) no litigation hold confirmation or preservation documentation; (e) no Associate Contractor Agreement or subcontracting plan governing the All Points–Leidos–NASA operational relationship. Plaintiff expects supplementation under FRCP 26(e) and the IDP.

**Defendant NASA:** Will provide initial disclosures 14 days after the Rule 26(f) conference per FRCP 26(a)(1)(C). Plaintiff specifically anticipates production of the

NASA Security Report regarding the December 28–29, 2023 incident, NAMS/IDMAX access termination records, and NASA ODEO investigation files.

**Defendant Leidos:** Has not served any disclosures. Leidos counsel Stephen J. Quezada did not attend the March 2 conference (when Plaintiff was present) but attended the March 3 follow-up session (when Plaintiff was not present). Leidos has not stated any position on discovery to Plaintiff directly.

**Plaintiff:** Has not yet served IDP production. Plaintiff is preparing production across all 11 IDP categories and will serve as soon as practicable.

**10. If the case includes a claim for attorneys' fees, state whether the parties agree to submit the fees issue to the court for resolution on affidavits or declarations, after the other issues are resolved.**

Defendant All Points and NASA agree. Plaintiff is proceeding pro se and does not currently anticipate a separate attorneys' fees phase. If fees or costs later become applicable under any fee-shifting statute, Plaintiff is amenable to resolution by affidavit or declaration after merits issues are resolved, subject to the Court's procedures.

**11. Describe the proposed discovery plan, including:**

**A. Responses to the matters raised in Rule 26(f), including any agreements (and disputes) concerning electronic and other discovery.**

**ESI & Metadata Format:** Plaintiff requests that Electronically Stored Information (ESI) be produced in native format (preferred) or in another reasonably usable format that preserves relevant metadata fields (including sent/received timestamps, author, recipients, and system-generated audit fields). For communications and logs (e.g.,

Teams chat, audit logs, ServiceNow, AD/NAMS/IDMAX logs), PDF printouts alone are not a substitute for reasonably usable productions with metadata.

**DISPUTE:** At the March 2 conference, NASA counsel stated that NASA is opposed to producing information in native format. All Points joined that position. Plaintiff maintains that native format with metadata is essential for authentication and analysis of digital communications. If this dispute is not resolved, the Court should decide at the Initial Scheduling Conference.

**Targeted ESI Systems for Preservation** (subject to reasonable scoping by custodian, timeframe, and proportionality):

1. Microsoft Teams — chat logs, meeting recordings, and transcripts (including the January 5, 2024 staff meeting hosted by Brent Wong on NASA SharePoint). Include the October 18, 2022 mandatory in-person staff meeting recording and any attendee list/roster.

2. SharePoint — shared documents and collaboration

3. ServiceNow (ITSM) — ticket assignment audit trails and work allocation records

4. Discord — JSC NEST server (created by Christy Murray, Leidos)

5. Active Directory — account access, group memberships, deprovisioning records

6. SLICS (Leidos timekeeping) and Deltek (All Points timekeeping) — dual timecard records

7. NAMS (NASA Account Management System) — account provisioning, access requests, approvals, and revocations

8. IDMAX (NASA identity/access management) — badge credentialing, facility access, PIV card issuance/deactivation, and audit trails

9. Email systems (Outlook/Exchange) — all custodians

10. Leidos "SeeIT Dashboard" — internal IT management platform

**Litigation Hold:** Plaintiff requests each Defendant confirm in writing: (1) when litigation hold was implemented, (2) what custodians and systems are covered, and (3) whether any documents have been destroyed.

**Authentication:** Plaintiff proposes a limited stipulation as to authenticity for certain categories where appropriate (e.g., certified agency records and business records produced from Defendants' systems), subject to later objections as to relevance, hearsay, and weight.

**Privilege Log Protocol (Dec 2025 FRCP Amendments):** Pursuant to the December 1, 2025 amendments to FRCP Rules 26(f)(3) and 16(b)(3), the parties are required to address privilege log protocols early in the case. Plaintiff proposes: (a) rolling privilege logs produced within 14 days of each document production; (b) categorical privilege assertions where applicable (e.g., all attorney-client communications with retained counsel); (c) a standard log format identifying document date, author, recipients, privilege claimed, and brief description sufficient to assess the claim.

**Meet-and-Confer Accommodation (Judicial Conference Policy / Court's Inherent Authority).** Plaintiff requests that meet-and-confer obligations be fulfilled by written communication (email) as an equivalent alternative to any phone/video-first conferral requirement, as a disability accommodation consistent with SDTX Judicial Conference policy and this Court's inherent authority to manage proceedings fairly.

SDTX acknowledges that although the ADA does not apply to the federal judiciary, SDTX provides reasonable accommodations for communication disabilities under Judicial Conference policy. *See also Tennessee v. Lane*, 541 U.S. 509, 522–24 (2004) (persuasive authority for Court's inherent power to accommodate disability barriers to court access). Plaintiff does not invoke ADA Title II or Rehabilitation Act § 504 as applying to the federal judiciary. *See* ECF 33 (B-1 Declaration ¶¶ 3–7) (documenting PTSD triggers and executive function barriers under real-time adversarial verbal exchanges). This is a requested modification of standard procedure, not a waiver of conferral obligations. All conferral outcomes shall be confirmed in writing within 2 business days.

**B. Any threshold issues—such as limitations, jurisdiction, or immunity—that should be scheduled for early resolution, what discovery targeted to those issues may need to occur early, and how long this targeted discovery will take.**

**Threshold Issue 1 — Joint Employer / Single Integrated Enterprise:** Plaintiff requests early targeted discovery of all Associate Contractor Agreements (ACAs), Subcontracting Plans, and corporate organizational documents governing the operational relationship on the NEST contract. Under 5th Circuit joint employer doctrine, a secondary employer's liability for a primary employer's supervisors' conduct is established through the secondary employer's *actual knowledge* of the hostile conduct and its *failure to take corrective action* within its control — not through automatic imputation of the primary employer's conduct. *See Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 227 (5th Cir. 2015). Early discovery of ACAs and organizational documents will establish the scope of All Points' actual

knowledge of and authority over Leidos supervisors' conduct. This targeted discovery should take no longer than 60 days.

**Threshold Issue 2 — Arbitration Agreement:** In *Lambert v. Leidos Holdings, Inc.*, 4:24-cv-00911 (N.D. Tex., 2024), Leidos successfully forced an ADA employment case to arbitration. Plaintiff requests early confirmation from all Defendants whether any arbitration agreement, mandatory dispute resolution clause, or similar agreement exists that was signed by Plaintiff. If no such agreement exists, Plaintiff requests RFA confirmation. This threshold issue should be resolved before substantive discovery begins.

**Threshold Issue 3 — Litigation Hold Confirmation:** OFCCP issued a formal record preservation order to All Points on July 3, 2024 (Case No. I00311965). Plaintiff requests each Defendant confirm in writing: (1) when litigation hold was implemented, (2) custodians and systems covered, and (3) whether any documents have been destroyed since July 3, 2024.

**12. Experts**

**A.** Yes. Plaintiff anticipates experts in the following areas:

(1) **Medical/Psychological:** Treating physicians and designated experts to testify on the nature and severity of Plaintiff's documented disabilities (ADHD, autism spectrum disorder, PTSD, anxiety, depression), their impact on daily functioning and earning capacity, the causal relationship between Defendants' conduct and exacerbation of PTSD symptoms, and the cost of past and future treatment.

(2) **Vocational/Economic Damages:** An expert to calculate back pay, front pay, lost earning capacity, and the economic impact of Defendants' post-termination retaliation

(false sworn statements to four government agencies) on Plaintiff's career trajectory in IT support and federal contracting.

(3) **IT/Digital Forensics:** A forensic expert regarding ESI metadata authentication, ServiceNow ticket assignment audit trails, Active Directory access logs, NAMS/IDMAX badge credentialing records, and Microsoft Teams chat log integrity — particularly to verify timestamps and authorship of the fabricated "false report" narrative and the 26-minute retaliation sequence.

(4) **Statistical/Pattern Evidence:** Plaintiff may designate an expert to analyze discipline, termination, pay, and promotion rates by race, sex, and disability status on the NASA NEST contract, in connection with the *Robbins v. NASA* class certification pattern evidence and Plaintiff's § 1981 race discrimination claims.

**B.** Medical experts will include treating physicians (Dr. Whaling — March 2025 autism diagnosis; treating psychiatrist and therapist for PTSD/ADHD/anxiety/depression) and retained experts designated to testify on the specific cognitive impacts of co-occurring AuDHD/PTSD under adversarial workplace conditions, the "double empathy problem" in neurotypical-managed workplaces, and future treatment needs. ADA interactive process expert testimony is supported by *Strife v. Aldine Independent School District*, No. 24-20269 (5th Cir. May 16, 2025), which held that an employer's unreasonable delay or refusal to engage in the ADA interactive process constitutes an independent violation even absent a separate adverse employment action — directly applicable to All Points' documented refusal to engage and its immediate retaliatory response to Plaintiff's accommodation request.

**C.** 60 days before the close of discovery (specific date to be set at ISC).

**D.** 30 days after Plaintiff's expert designations.

**13. State the date discovery can reasonably be completed.**

Plaintiff proposes a discovery period of 10 to 12 months from the date of the scheduling order. This timeline is necessary given:

(1) **Defendant complexity:** 19 defendants across 4 corporate entities (All Points, Leidos Holdings, Leidos Inc., Leidos Innovations Corp.), 2 subcontractors (TekFive, Seabrook Solutions), 1 federal agency (NASA), and 12 individual defendants — each requiring separate discovery, service, and potentially separate counsel.

(2) **Claim complexity:** 24 causes of action under 9 federal statutes and Texas state law, spanning employment discrimination, retaliation, sexual harassment, denial of accommodations, equal pay violations, whistleblower retaliation, assault, defamation, civil conspiracy, intentional infliction of emotional distress, negligent hiring/supervision, fraud, civil rights conspiracy, and promissory estoppel.

(3) **ESI volume:** At least 10 identified electronic systems requiring preservation and production (Teams, SharePoint, ServiceNow, Discord, Active Directory, SLICS, Deltek, NAMS, IDMAX, SeeIT), plus email across all custodians.

(4) **Pro se ADA accommodation:** Plaintiff has documented disabilities (ADHD, autism, PTSD) that impose a significant cognitive inefficiency ratio under adversarial litigation conditions. Plaintiff is proceeding without counsel despite diligent efforts to obtain representation and a pending motion for appointment of counsel (ECF 32).

(5) **Federal agency involvement:** Discovery from NASA requires compliance with Touhy regulations and coordination with the Department of Justice, which historically extends timelines.

(6) **Depositions:** Plaintiff anticipates deposing at minimum Robyn Smith, Ed Scarborough, Brent Wong, Christy Murray, Brian Lynn, Susana Kane, John Walters, and NASA Security Chief Russ Tucker — requiring coordination across multiple employers, law firms, and geographic locations.

(7) **Cat's Paw Liability:** Discovery from individual Leidos supervisors (Brent Wong, Christy Murray, Brian Lynn) and All Points executives (Smith, Scarborough) is required to establish that All Points acted as a conduit for Leidos management's retaliatory animus. Under the cat's paw theory, an employer is liable when a biased supervisor — including one employed by a joint employer — influences an otherwise-neutral decision-maker to take an adverse employment action against an employee. *See Staub v. Proctor Hosp.*, 562 U.S. 411 (2011); *Roberson v. Alltel Info. Servs.*, 373 F.3d 647 (5th Cir. 2004). Establishing this theory requires coordinated discovery across both entities.

**14. If the parties are not agreed on a part of the discovery plan, describe the separate views and proposals of each party.**

**Dispute 1 — ESI Production Format:** At the March 2, 2026 conference, NASA counsel stated NASA is opposed to producing information in native format, and All Points joined that position. Plaintiff requests native format (or at minimum a reasonably usable format preserving metadata) because: (a) timestamps are critical to proving the 26-minute retaliation sequence (September 18, 2023, 5:20 p.m. complaint

→ 5:46 p.m. Final Warning); (b) authorship metadata is needed to authenticate the fabricated "false report" narrative that NASA Security Chief Russ Tucker disavowed; (c) ServiceNow ticket assignment audit trails and Active Directory logs are meaningless without system-generated metadata; (d) Microsoft Teams chat logs in PDF format lose threading, edit history, and reaction metadata. Plaintiff proposes the parties meet and confer on a production protocol within 30 days, failing which the Court should resolve the dispute.

**Dispute 2 — Leidos Conferral Gap:** Leidos counsel Stephen J. Quezada did not attend the March 2, 2026 Rule 26(f) conference (when Plaintiff was present) but attended the March 3 follow-up session (when Plaintiff was not present due to competing deadline obligations). As a result, Plaintiff and Leidos have never conferred directly. Leidos has not stated any position on discovery to Plaintiff. Plaintiff requests the Court address this conferral gap at the ISC and direct Leidos to state its positions in writing.

**Dispute 3 — All Points IDP Deficiency:** Plaintiff contends All Points' initial production (APL 000001–000141) is materially deficient under Judge Hanks's IDP and expects supplementation. All Points has not yet responded to this contention.

**Dispute 4 — SDVOSB Contracting Structure Discovery:** Plaintiff requests production of APL's SDVOSB (Service-Disabled Veteran-Owned Small Business) certification, SBA verification letters, and the complete NEST subcontract between Leidos and APL. *Precise Systems Inc v. United States*, Fed. Cl. 14-1174C (2015), establishes APL operates as an SDVOSB subcontractor, explaining why Leidos/NASA exercised day-to-day control over Plaintiff's work despite APL being

employer-of-record. This structure is central to the joint employer and single integrated enterprise theories.

**Dispute 5 — Leidos Corporate Structure Discovery:** Plaintiff requests production of corporate organizational charts and intercompany agreements showing the relationship between Leidos Holdings Inc, Leidos Inc, and Leidos Innovations Corporation. *SEC v. Lupo Securities LLC*, N.D. Ill. 1:21-cv-04027, established that Leidos Holdings was created through the 2016 Lockheed Martin IS&GS spinoff — the same business unit holding the NASA NEST contract. This discovery is necessary to establish single integrated enterprise liability across all three Leidos entities named as defendants.

**15. Specify the discovery beyond initial disclosures that has been undertaken to date.**

Discovery to date consists of Initial Discovery Protocol (IDP) productions and administrative agency records:

(1) **Defendant All Points:** Served APL 000001–000141 (141 pages) on February 27, 2026 under the IDP.

(2) **Defendant NASA:** No disclosures served yet; due 14 days after Rule 26(f) conference.

(3) **Defendant Leidos:** No disclosures served; counsel did not attend the Rule 26(f) conference.

(4) **Plaintiff:** Has not yet served IDP production. Plaintiff is preparing production across all 11 IDP categories.

(5) **Administrative Agency Records Obtained by Plaintiff:** Plaintiff has independently obtained records from all four agencies that investigated Defendants' conduct: (a) **EEOC — Two Separate Investigation Files (931 pages total):** FOIA No. 460-2025-019437 and FOIA No. 460-2025-019438, containing witness statements, employer position statements, and investigative materials; (b) **OFCCP (Case No. I00311965):** Records including the July 3, 2024 dual-filing determination letter formally notifying All Points that Plaintiff's complaint was deemed dual-filed under Executive Order 11246, Section 503, Title VII, and the ADA — plus the accompanying record preservation order; (c) **NASA ODEO (NCN-24-JSC-00038):** Counselor's Report documenting Plaintiff's allegations and NASA's own investigator's findings; (d) **TWC (Case 3719044):** Audio recordings from three formal unemployment appeal hearings (April 3, May 2, June 6, 2024) with sworn testimony from All Points representatives.

No formal discovery requests (interrogatories, RFPs, RFAs, or depositions) have been served by any party.

**16. Describe the possibilities for a prompt settlement or resolution of the case that were discussed in your Rule 26(f) meeting or have emerged since then.**

Settlement was not discussed at the March 2, 2026 conference. Meaningful settlement discussions cannot occur at this stage because: (a) Defendant Leidos has not yet participated in any conference or served any disclosures; (b) Defendant All Points' initial production is materially deficient, omitting core documents; (c) Defendant NASA has not yet served any disclosures; (d) Defendants continue to rely on a "false report" termination narrative that NASA Security Chief Russ Tucker categorically

denied; (e) the full scope of the equal pay scheme, post-termination retaliation, and *Robbins v. NASA* pattern evidence has not yet been explored through discovery. Plaintiff is open to settlement discussions after completion of IDP supplementation, production of key ESI, and depositions of Robyn Smith, Ed Scarborough, Brent Wong, and Christy Murray.

**17. From the attorneys' discussion with the clients, state the alternative dispute resolution techniques that are reasonably suitable and when they are likely to be effective in this case.**

Mediation before a Magistrate Judge or private mediator experienced in employment discrimination cases will be the most suitable ADR technique. Mediation is likely to be effective only after: (1) all Defendants have completed IDP productions and supplementation; (2) ESI from key systems has been produced in a reasonably usable format; (3) depositions of the four primary decision-makers have been completed — Robyn Smith, Ed Scarborough, Brent Wong, and Christy Murray. Plaintiff estimates mediation would be productive approximately 8–10 months after the scheduling order. Plaintiff notes that as a pro se litigant with ADA accommodations, any mediation session should be scheduled with adequate breaks and accessibility accommodations.

**18. With the consent of all parties, United States Magistrate Judge Andrew Edison may preside and hear jury and non-jury trials. Indicate the parties' joint position on a trial before Judge Edison.**

Plaintiff does not consent to trial before Magistrate Judge Andrew Edison.

**19. State whether a jury demand has been made and if it was made on time.**

Yes. Plaintiff made a timely jury demand in the original Complaint filed October 1, 2025 (ECF 1), pursuant to Federal Rule of Civil Procedure 38(b).

**20. Specify the number of hours it will take to present the evidence.**

Plaintiff estimates approximately 35–40 hours to present her case-in-chief, broken down approximately as follows:

(1) **Discrimination, retaliation, and hostile work environment (Counts I–VIII, XVIII–XX):** 15–18 hours

(2) **Equal Pay Act and FLSA (Counts V, XI):** 3–4 hours

(3) **State-law claims against individual defendants (Counts IX–XVII, XXI–XXII, XXIV):** 8–10 hours

(4) **Rehabilitation Act against NASA (Count IV):** 3–4 hours

(5) **Expert testimony:** 4–6 hours

**21. List pending motions that may be ruled on at the initial pretrial and scheduling conference.**

- Plaintiff's Renewed Combined Motion for Appointment of Counsel and ADA Accommodations (ECF 32, filed February 25, 2026) — requesting appointment of pro bono counsel and ADA accommodations for Plaintiff's documented disabilities during all proceedings.
- Plaintiff's Combined Motion for Extension of Time and Continuance (ECF 34, filed March 4, 2026) — DENIED by Magistrate Judge Bennett (ECF 35, March 5, 2026). The Order states the amendment deadline and scheduling matters will be addressed at the ISC on March 25, 2026.

**22. List other pending motions.**

Plaintiff filed a Second Notice of Errata and Supplement to ECF No. 32 and ECF No. 33 on March 8, 2026, providing additional comparator evidence and correcting factual details in the pending motion.

**23. List issues or matters, including discovery, that should be addressed at the conference.**

1. **Leidos conferral gap:** Leidos counsel did not attend the March 2 Rule 26(f) conference when Plaintiff was present. Plaintiff and Leidos have never conferred directly. The Court should address Leidos's obligations under FRCP 26(f) and direct Leidos to confer with Plaintiff in writing.

2. **ESI production format dispute:** NASA and All Points oppose native format. The Court should establish an ESI production protocol.

3. **ADA accommodations for discovery:** Extended deadlines and accommodations for a pro se litigant with documented disabilities managing discovery against 19 defendants across 24 claims.

4. **Joint employer threshold discovery:** Early production of ACAs, subcontracting plans, and NEST contract documents.

5. **Service of amended complaint:** Plaintiff will need new summonses for 16 new defendants.

6. **Litigation hold confirmation:** Each Defendant should confirm in writing when hold was implemented, custodians/systems covered, and whether any documents have been destroyed.

7. **Plaintiff's pending motions:** ECF 32 (still pending); ECF 34 (denied — amendment deadline to be set at ISC).

8. **Anticipated MTD from Leidos:** Based on *Pierce v. Leidos, Inc.*, 4:20-cv-03339 (S.D. Tex.), scheduling should account for MTD briefing. Discovery should not be stayed pending MTD resolution.

9. **Arbitration threshold:** The Court should address whether any Defendant contends an arbitration agreement exists.

10. *Robbins v. NASA* **pattern discovery:** Plaintiff intends to seek discovery regarding NASA's responses to the September 2022 EEOC class certification and statistical data on discipline/termination by race and sex.

11. **Leidos ADA accommodation policies:** Early production of Leidos's written ADA accommodation policies and interactive process tracking.

12. **Privilege log protocol:** Per December 2025 FRCP amendments, rolling privilege logs within 14 days of each production.

13. **Protective order:** Tiered confidentiality structure for sensitive medical, personnel, and pay records.

14. **Substitute attorney preparedness:** NASA counsel sending substitute Andrea Henckel for ISC. Per Bennett Procedures §V, substitute must be familiar with case, have authority to bind, and be in charge.

15. **Equal Pay Act / FLSA timekeeping and pay discovery:** Early production of payroll records, SLICS and Deltek timekeeping data, and QM pay scheme documentation.

16. **Federal Contractor Whistleblower reporting chain discovery:** Production of internal whistleblower reporting mechanisms and complaint logs.

17. **Future joint filing procedure:** Defendants filed ECF 37 without circulating a draft to Plaintiff or soliciting Plaintiff's positions. The Court should establish a process requiring defense counsel to circulate any proposed joint filing to Plaintiff at least 3 business days before submission and to obtain Plaintiff's written positions before filing. This procedural protection is especially warranted for a pro se Plaintiff with documented disabilities managing simultaneous discovery obligations.

**24. Certify that all parties have filed Disclosure of Interested Parties as directed in the Order for Conference.**

Plaintiff filed her Certificate of Interested Parties (ECF 12). Defendant All Points Logistics LLC filed its Corporate Disclosure Statement and Certificate of Interested Parties (ECF 24, January 28, 2026). Defendants NASA and Leidos have not filed disclosures of interested parties.

---

Dated: March 15, 2026

Amanda L. Kondrat'yev

1102 Buoy Rd

Houston, Texas 77062

(346) 366-0787 (Telephone)

amandakondratyev@gmail.com

PRO SE PLAINTIFF

Plaintiff certifies that all legal citations contained herein have been independently verified in accordance with SDTX General Order 2025-04 regarding the use of generative artificial intelligence in court filings.

/s/ Amanda L. Kondrat'yev

Dated: March 15, 2026