# EXHIBIT 1

EEOC Right-to-Sue Notice · All Points (EV-012)

Kondrat'yev v. NASA Johnson Space Center, et al.

Civil Action No. 4:25-cv-04785 (S.D. Tex.)

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Houston District Office**
1919 Smith Street, 6th Floor
Houston, TX 77002
(346) 327-7700
Website:  www.eeoc.gov

## <u>DETERMINATION AND NOTICE OF RIGHTS</u>

(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 07/03/2025

**To:** Mrs. Amanda L. Kondrat'yev

HOUSTON, TX 77058
Charge No: 460-2024-04943

EEOC Representative and email:     DEIRDRE ARTHUR-REED
Federal Investigator
deirdre.arthur-reed@eeoc.gov

---

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign in to the EEOC Public Portal and upload the court complaint to charge 460-2024-04943.

On behalf of the Commission,

Digitally Signed By:Rayford O. Irvin
07/03/2025

Rayford O. Irvin
District Director

**Cc:**


Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method).  You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 460-2024-04943 to the

Enclosure with EEOC Notice of Closure and Rights (01/22)

District Director at Rayford O. Irvin, 1919 Smith Street 6th Floor, Houston, TX 77002.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 460-2024-04943 to the District Director at Rayford O. Irvin, 1919 Smith Street 6th Floor, Houston, TX 77002.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

### NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at: http://www.eeoc.gov/laws/types/disability_regulations.cfm.

**"Actual" disability or a "record of" a disability**

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

- **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.

- In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system**.**

- **Only one** major life activity need be substantially limited.

- Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.

Enclosure with EEOC Notice of Closure and Rights (01/22)

 An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or "**in remission**" (e.g., cancer) is a disability if it **would be substantially limiting when active**.

 An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage**

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

 "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

 The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.

 A person is not able to bring a failure to accommodate claim **if** the individual is covered only under the "regarded as" definition of "disability".

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

# EXHIBIT 2

EEOC Right-to-Sue Notice · Leidos (EV-014)

Kondrat'yev v. NASA Johnson Space Center, et al.

Civil Action No. 4:25-cv-04785 (S.D. Tex.)

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Houston District Office**
1919 Smith Street, 6th Floor
Houston, TX 77002
(346) 327-7700
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 07/11/2025

**To:** ▮▮▮▮▮▮▮▮▮▮▮▮▮ 'yev
▮▮▮▮▮▮▮▮▮▮▮▮▮

Charge No: 460-2024-09354

EEOC Representative and email:   JESSICA DESHOTEL
INVESTIGATOR
JESSICA.DESHOTEL@EEOC.GOV

## DETERMINATION AND NOTICE OF RIGHTS

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 460-2024-09354

On behalf of the Commission,

Digitally Signed By: Rayford O. Irvin
07/11/2025

Rayford O. Irvin
District Director

**cc:**
Paul Kehoe
Leidos Holdings Inc HQ
1750 Presidents St
Reston, VA 20190

Please retain this Notice for your records.

Enclosure with EEOC Notice of Closure and Rights (05/25)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* EEOC's official notice of dismissal**. You should **keep a record of the date you received EEOC's official notice of dismissal**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving EEOC's official notice of dismissal (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA, or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of your receipt of EEOC's official notice of dismissal and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of EEOC's official notice of dismissal, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method).  You may also submit a

FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 460-2024-09354 to the District Director at Rayford O. Irvin, 1919 Smith Street 6th Floor, Houston, TX 77002.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 460-2024-09354 to the District Director at Rayford O. Irvin, 1919 Smith Street 6th Floor, Houston, TX 77002.

You may request the charge file up to 90 days after receiving EEOC's official notice of dismissal. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)**

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at: http://www.eeoc.gov/laws/types/disability_regulations.cfm.

**"Actual" disability or a "record of" a disability**

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

- ✓ **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.

- ✓ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.

- ✓ **Only one** major life activity need be substantially limited.

- ✓ Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications)

Enclosure with EEOC Notice of Closure and Rights (05/25)

**are not considered** in determining if the impairment substantially limits a major life activity.

✓ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.

✓ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage**

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

✓ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

✓ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.

✓ A person is not able to bring a failure to accommodate claim **if** the individual is covered only under the "regarded as" definition of "disability."

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

# EXHIBIT 3

EEOC Signed Charge of Discrimination · All Points

(EEOC Charge No. 460-2024-04943, signed Oct. 10, 2024)

Kondrat'yev v. NASA Johnson Space Center, et al.

Civil Action No. 4:25-cv-04785 (S.D. Tex.)

EEOC Form 5 (07/24)

Exhibit A

# CHARGE OF DISCRIMINATION

Case No.: 4:25-mc-01874

This form is affected by the Privacy Act of 1974.

See attached Privacy Act Statement and other information before completing this form.

| CHARGE PRESENTED TO: | AGENCY CHARGE NO. |
|---|---|
| EEOC | 460-2024-04943 |
| Texas Workforce Commission Civil Rights Division | |

Name *(indicate Mr., Ms., Mrs., Miss, Mx., Dr., Hon., Rev.)*: Mrs. Amanda L. Kondrat'yev

Home Phone: █████████

Year of Birth:    1984

Street Address: ██████████████████

HOUSTON, TX 77058

Named below is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency that I believe discriminated against me or others.

Name: ALL POINTS LOGISTICS  LLC

No. Employees, Members: 201 - 500 Employees

Phone No.:

Street Address:    190 S SYKES CREEK PKWY STE 4

MERRITT ISLAND, FL 32952

Name:

No. Employees, Members:

Phone No.:

Street Address:

DISCRIMINATION BASED ON:

Disability, Retaliation, Sex

DATE(S) DISCRIMINATION TOOK PLACE

Earliest: 01/04/2024

Latest: 01/04/2024

THE PARTICULARS ARE:

I was hired as a PC Support Technician on the NEST contract at NASA JSC and started work Sept 2022.

I experienced sexual harassment. It was an extremely misogynistic environment. At least two other females on the contract now have also reported. My supervisor, Brent Wong, and many techs would go to Twin Peaks during lunch for the lingerie day on Wednesday. The workplace was misogynistic, but especially bad these days.

The workplace is missing required worker safety and legal rights posters. Brent would often request to be alone. He would stand close and regularly focused on me specifically over any of the male technicians. He would make inappropriate jokes and comments about sex, masturbation, and going to massage parlors with happy endings. He often accepted gifts from subordinates. Susana Kane was approved for extended travel and telework and would bring him coffee bags from her farm in Honduras. He also treated her nicer and approved her requests more after she got a divorce. He hired his male friends regularly. They received promotions and direct Leidos contractor positions over others. They got overtime and advance notice when they were going to be on the neglected ticket list. I was singled out, followed around, and set up to fail. The rules were different for me and constantly changing or selectively enforced.

EEOC Form 5 (07/24)

In Jan 2023, I had the responsibility of a 3-technician deployment team. I was still receiving unfair work distribution for deployments in April 2023. I included Leidos management, but no changes or audits occurred.

July 2023, QM, John Barker, had followed Brent to the Spacebar without him noticing and witnessed him verbally abusing me while he thought we were alone. Formally reported to Leidos through Christy Murray. There was a meeting with Leidos and All Points. Brent admitted to the abuse and harassment and apologized profusely. Part of the resolution was that he was no longer to request 1-on-1 meetings with me but continued to do so.

He made me feel uncomfortable about requesting help. He continued to be inappropriate if he showed up at all. All Points restricted me from making formal reports to Leidos saying they would help me. I continued working and receiving adverse actions. Brent tried to start a paper trail to fire me including reporting to subcontractor about meetings he usually did not even show up for, having his friend, Dan Murphy, write a complaint email to All Points about me. He would call me out for mistakes that I did not make and refuse to assist when I'd bring his attention to problems.

While I was working the Spacebar, I requested to Christy that cameras be installed after a male employee from NASA HQ shoved equipment across the counter at me. There had been another incident not long before that where an irate customer threatened another tech and managers and needed to be escorted off site repeatedly. It felt unsafe especially with expensive equipment and no cameras. She told me she would request them for the Spacebar only but that they would not record sound.

Disparate treatment for accommodation of disability - male coworker, William Figueredo, that had repeatedly failed to meet the expectations for the job and moved to the Spacebar so that he would only need to keep up with one thing. I went to Spacebar temporarily when I had a lifting restriction for a back injury. I was too afraid to get it renewed despite still being medically necessary. After it was removed when I requested the other accommodations, I was intentionally given large deployments and couldn't change with another tech, and it was a big issue.

The very next day another male tech, Spencer Adams, was allowed to trade assignments without any issue. Once I reached out about an ongoing issue via Teams chat. Brent called, spoke extremely fast, and when I requested for him to please respond in writing, he told me that if I needed things in writing to write it myself. I eventually put him on speakerphone so the other technicians could hear him yelling.

In Sept 2023, I report the continued problems to All Points. I mentioned I had to work off the clock to meet the unreasonable demands and understaffing. Rather than receive aid for the problems or compensation for the hours, I was told that I was hard to work with despite always praising me in the past about my glowing customer kudos helping them with their investors.

I requested ADA accommodations in writing and offered medical documentation. I was told the ADA is only for significant life activities and they would not provide any accommodations. I found reasonable accommodations online and called directly to disclose my specific diagnoses. I was interrupted and told that this is exactly my problem, I won't just be quiet and listen. I have to keep asking. Robyn said if I couldn't just stop asking questions and do my job then I wouldn't have one anymore. Male techs weren't called combative or reprimanded even when screaming at management calling them useless and incompetent or during meetings.

I reached out to NASA ODEO via email to see if they could help. I was told that there was not much they could do at that time since it was a contractor issue. Brian Lynn from Leidos came to JSC in Oct 2023 and told us that a tech position would be lost to meet the contract.

12/29/23 Susana Kane assaulted me by pushing boxes onto me after referring to herself as "my new Brent." I reached out to Christy on Teams who I saw was online and had been present when Susana had yelled at me the day before. Christy did not respond to me and instead contacted Ed Scarborough. I emailed Robyn and Ed before making a formal report about the incident with NASA Security at the request of the QM, John Walters, who said employee disputes are above his pay grade. Leidos repeatedly has lied about the events of the day.

Neither Brent nor Christy was on site during the assault, but I have an email from Ed that said that Christy told them nothing happened. NASA security officials took 3 statements. Susana admits she touched the boxes, Cristian Garcia says that he had his back turned when it happened, and my statement included information that I had been making a call that went to voicemail so there was evidence. NASA security asked me if I would like to start an investigation and both of us turn in our badges and

EEOC Form 5 (07/24)

be unable to work or if I thought that we could go home early and work it out with management after New Years holiday. I chose not to have an investigation. Ed called said not return to site until NASA could complete an investigation. The assailant returned without any delay.

On 1/4/24 Ed said I was terminated for making a false report and that NASA no longer could have me working on site. I filed for unemployment with the Texas Workforce Commission and All Points denied due to NASA security saying that I made a false report.

I notified NASA ODEO to begin an investigation because of the implication of NASA in my termination. I received a Counselor's Report from the findings of the ODEO informal investigation which show that NASA never investigated nor stated no assault occurred, no police report was reviewed, Leidos repeatedly misrepresented the facts and evidence and failed to meet to resolve the issue as they had told security.

Both companies have made false statements to and about me. I've been unable to find work due to the damage to my reputation and defamation of character. My family and I have suffered tremendously. I would like to pursue all legal actions and remedies available under federal and state, both punitory and compensatory, for all the injustices that have occurred.

I believe I was sexually harassed, subjected to different terms and conditions, denied reasonable accommodations, retaliated against and terminated based on my Sex, Female, disability and participating in a protected activity, in violation of the Americans with Disabilities Act of ADA 1990 (ADA) and Title VII of the Civil Rights Act of 1964.

---

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

Digitally Signed By: Mrs. Amanda L. Kondrat'yev
10/10/2024
_____

Charging Party Signature & Date

---

NOTARY – When necessary for State and Local Agency Requirements

_____

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information, and belief.

_____

Signature of Complainant

Subscribed and sworn to before me this date: _____

CP Enclosure with EEOC Form 5 (06/24)

## PRIVACY ACT STATEMENT

Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1.  **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (06/24).

2.  **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3.  **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4.  **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5.  **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

## NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so *within 15 days* of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA, Section 207(f) of GINA, and 42 USC 2000gg-2(f)(1) of the PWFA it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

# EXHIBIT 4

EEOC Signed Charge of Discrimination · Leidos

(EEOC Charge No. 460-2024-09354, signed Oct. 30, 2024)

Kondrat'yev v. NASA Johnson Space Center, et al.

Civil Action No. 4:25-cv-04785 (S.D. Tex.)

Exhibit B

Case No.: 4:25-mc-01874

EEOC Form 5 (07/24)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974.
See attached Privacy Act Statement and other information before completing this form.

| CHARGE PRESENTED TO: | AGENCY CHARGE NO. |
|---|---|
| EEOC | 460-2024-09354 |
| Texas Workforce Commission Civil Rights Division | |

Name *(indicate Mr., Ms., Mrs., Miss, Mx., Dr., Hon., Rev.)*: Mrs. Amanda L. Kondrat'yev

Home Phone: ███████

Year of Birth:     1984

Street Address:   ████████████████

HOUSTON, TX 77058

Named below is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency that I believe discriminated against me or others.

Name: LEIDOS INNOV WEBSTER TX 7085

No. Employees, Members: 101 - 200 Employees

Phone No.: (520) 616-2494

Street Address:    555 FORGE RIVER RD

Webster, TX 77598

Name:

No. Employees, Members:

Phone No.:

Street Address:

DISCRIMINATION BASED ON:

Disability, Retaliation, Sex

DATE(S) DISCRIMINATION TOOK PLACE

Earliest: 01/04/2024

Latest: 01/04/2024

THE PARTICULARS ARE:

I was hired as a PC Support Technician on the NEST contract at NASA JSC and started work Sept 2022.

I experienced sexual harassment. It was an extremely misogynistic environment. At least two other females on the contract now have also reported. My supervisor, Brent Wong, and many techs would go to Twin Peaks during lunch for the lingerie day on Wednesday. The workplace was misogynistic, but especially bad these days.

The workplace is missing required worker safety and legal rights posters. Brent would often request to be alone. He would stand close and regularly focused on me specifically over any of the male technicians. He would make inappropriate jokes and comments about sex, masturbation, and going to massage parlors with happy endings. He often accepted gifts from subordinates. Susana Kane was approved for extended travel and telework and would bring him coffee bags from her farm in Honduras. He also treated her nicer and approved her requests more after she got a divorce. He hired his male friends regularly. They received promotions and direct Leidos contractor positions over others. They got overtime and advance notice when they were going to be on the neglected ticket list. I was singled out, followed around, and set up to fail. The rules were different for me and constantly changing or selectively enforced.

EEOC Form 5 (07/24)

In Jan 2023, I had the responsibility of a 3-technician deployment team. I was still receiving unfair work distribution for deployments in April 2023. I included Leidos management, but no changes or audits occurred.

July 2023, QM, John Barker, had followed Brent to the Spacebar without him noticing and witnessed him verbally abusing me while he thought we were alone. Formally reported to Leidos through Christy Murray. There was a meeting with Leidos and All Points. Brent admitted to the abuse and harassment and apologized profusely. Part of the resolution was that he was no longer to request 1-on-1 meetings with me but continued to do so.

He made me feel uncomfortable about requesting help. He continued to be inappropriate if he showed up at all. All Points restricted me from making formal reports to Leidos saying they would help me. I continued working and receiving adverse actions. Brent tried to start a paper trail to fire me including reporting to subcontractor about meetings he usually did not even show up for, having his friend, Dan Murphy, write a complaint email to All Points about me. He would call me out for mistakes that I did not make and refuse to assist when I'd bring his attention to problems.

While I was working the Spacebar, I requested to Christy that cameras be installed after a male employee from NASA HQ shoved equipment across the counter at me. There had been another incident not long before that where an irate customer threatened another tech and managers and needed to be escorted off site repeatedly. It felt unsafe especially with expensive equipment and no cameras. She told me she would request them for the Spacebar only but that they would not record sound.

Disparate treatment for accommodation of disability - male coworker, William Figueredo, that had repeatedly failed to meet the expectations for the job and moved to the Spacebar so that he would only need to keep up with one thing. I went to Spacebar temporarily when I had a lifting restriction for a back injury. I was too afraid to get it renewed despite still being medically necessary. After it was removed when I requested the other accommodations, I was intentionally given large deployments and couldn't change with another tech, and it was a big issue.

The very next day another male tech, Spencer Adams, was allowed to trade assignments without any issue. Once I reached out about an ongoing issue via Teams chat. Brent called, spoke extremely fast, and when I requested for him to please respond in writing, he told me that if I needed things in writing to write it myself. I eventually put him on speakerphone so the other technicians could hear him yelling.

In Sept 2023, I report the continued problems to All Points. I mentioned I had to work off the clock to meet the unreasonable demands and understaffing. Rather than receive aid for the problems or compensation for the hours, I was told that I was hard to work with despite always praising me in the past about my glowing customer kudos helping them with their investors.

I requested ADA accommodations in writing and offered medical documentation. I was told the ADA is only for significant life activities and they would not provide any accommodations. I found reasonable accommodations online and called directly to disclose my specific diagnoses. I was interrupted and told that this is exactly my problem, I won't just be quiet and listen. I have to keep asking. Robyn said if I couldn't just stop asking questions and do my job then I wouldn't have one anymore. Male techs weren't called combative or reprimanded even when screaming at management calling them useless and incompetent or during meetings.

I reached out to NASA ODEO via email to see if they could help. I was told that there was not much they could do at that time since it was a contractor issue. Brian Lynn from Leidos came to JSC in Oct 2023 and told us that a tech position would be lost to meet the contract.

12/29/23 Susana Kane assaulted me by pushing boxes onto me after referring to herself as "my new Brent." I reached out to Christy on Teams who I saw was online and had been present when Susana had yelled at me the day before. Christy did not respond to me and instead contacted Ed Scarborough. I emailed Robyn and Ed before making a formal report about the incident with NASA Security at the request of the QM, John Walters, who said employee disputes are above his pay grade. Leidos repeatedly has lied about the events of the day.

Neither Brent nor Christy was on site during the assault, but I have an email from Ed that said that Christy told them nothing happened. NASA security officials took 3 statements. Susana admits she touched the boxes, Cristian Garcia says that he had his back turned when it happened, and my statement included information that I had been making a call that went to voicemail so there was evidence. NASA security asked me if I would like to start an investigation and both of us turn in our badges and

EEOC Form 5 (07/24)

be unable to work or if I thought that we could go home early and work it out with management after New Years holiday. I chose not to have an investigation. Ed called said not return to site until NASA could complete an investigation. The assailant returned without any delay.

On 1/4/24 Ed said I was terminated for making a false report and that NASA no longer could have me working on site. I filed for unemployment with the Texas Workforce Commission and All Points denied due to NASA security saying that I made a false report.

I notified NASA ODEO to begin an investigation because of the implication of NASA in my termination. I received a Counselor's Report from the findings of the ODEO informal investigation which show that NASA never investigated nor stated no assault occurred, no police report was reviewed, Leidos repeatedly misrepresented the facts and evidence and failed to meet to resolve the issue as they had told security.

Both companies have made false statements to and about me. I've been unable to find work due to the damage to my reputation and defamation of character. My family and I have suffered tremendously. I would like to pursue all legal actions and remedies available under federal and state, both punitory and compensatory, for all the injustices that have occurred.

I believe I was sexually harassed, subjected to different terms and conditions, denied reasonable accommodations, retaliated against and terminated based on my Sex, Female, disability and participating in a protected activity, in violation of the Americans with Disabilities Act of ADA 1990 (ADA) and Title VII of the Civil Rights Act of 1964.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

Digitally Signed By: Mrs. Amanda L. Kondrat'yev

10/30/2024

_____

Charging Party Signature & Date

NOTARY – When necessary for State and Local Agency Requirements

_____

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information, and belief.

_____

Signature of Complainant

Subscribed and sworn to before me this date: _____

CP Enclosure with EEOC Form 5 (06/24)

## PRIVACY ACT STATEMENT

Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (06/24).

2. **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3. **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

## NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so *within 15 days* of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA, Section 207(f) of GINA, and 42 USC 2000gg-2(f)(1) of the PWFA it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

# EXHIBIT 5

OFCCP Dual-Filing Confirmation

(OFCCP Charge No. I00311965)

Kondrat'yev v. NASA Johnson Space Center, et al.

Civil Action No. 4:25-cv-04785 (S.D. Tex.)

**U.S. Department of Labor**     Office of Federal Contract Compliance Programs
Southwest and Rocky Mountain Regional Office
525 South Griffin Street, Suite 840
Dallas, TX 75202



July 3, 2024

Via Electronic Mail: amandakondratyev@gmail.com

███████████████

Re: Complaint Reference Number I00311965

Dear Amanda Leigh Kondrat'yev:

The Office of Federal Contract Compliance Programs (OFCCP) acknowledges receipt of your complaint filed on February 13, 2024, against All Points Logistics LLC, 190 S. Sykes Creek Pkwy., Suite 4, Merritt Island, FL 32952. The location where the alleged discrimination occurred is NASA Johnson Space Center, 2101 E. NASA Pkwy, Houston, TX 77058. You provided supplemental information regarding the complaint to OFCCP on April 22-23, 2024. The complaint alleges violations of Executive Order 11246, as amended (EO 11246); and Section 503 of the Rehabilitation Act of 1973, as amended (Section 503). EO 11246 requires that complaints must be filed within 180 days from the date of the alleged discrimination violation; while complaints filed under Section 503 must be filed within 300 days from the date of the alleged discrimination violation, unless the respective time for filing is extended for good cause shown.

Under the provisions of a Memorandum of Understanding between OFCCP and the U.S. Equal Employment Opportunity Commission (EEOC) effective November 3, 2020, and/or regulations at 41 CFR Part 60-742, the complaint is deemed simultaneously dual filed as a charge under Title VII of the Civil Rights Act of 1964, as amended (Title VII); and/or Title I of the Americans with Disabilities Act, as amended (ADA).

Title VII and the ADA require that OFCCP provide the employer against whom a complaint is filed with a notice of filing within ten (10) calendar days of our receipt of a complaint. Enclosed is a copy of the notice forwarded to the employer concerning your complaint.

According to the supplemental information you provided to our office, you stated you filed the same or similar discrimination allegations, that are included in the OFCCP complaint, with the following agencies:

| U.S. Equal Employment Opportunity Commission (EEOC) | Texas Workforce Commission (TWC) | NASA Office of Diversity and Equal Opportunity |
|---|---|---|
| Date filed: April 17, 2024 | Date filed: January 23, 2024 | Dates filed: September 2023 and February 2024 |
| Charge Number: 460-2024-04943 | Charge Number: 3719044 | Case Number: NCN-24-JSC-00038 |

The complaint is deemed dual filed. To promote efficiency and eliminate a duplication of effort among government agencies and resources, OFCCP referred your complaint to EEOC. Please direct all future inquiries to the aforementioned agencies/office with whom you previously filed complaints (i.e. EEOC, TWC, and the Office of Diversity and Equal Opportunity at NASA).

Concerns regarding health and safety violations should be directed to the Occupational Safety and Health Administration (OSHA) at:

Occupational Safety and Health Administration
Houston South Area Office
17625 El Camino Real, Suite 400
Houston,  TX 77058
Tel:  (281) 286-0583
Fax: (281) 286-6352
Website: https://www.osha.gov/workers/file-complaint

Please note questions regarding overtime pay may be directed to the U.S. Department of Labor's Wage and Hour Division at 1-866-487-9243.

OFCCP will take no further action with regard to the complaint. Should you have questions regarding this correspondence, please contact Deputy Regional Director LaQuandra Adebajo at 972-850-2550.

Sincerely,

Ronald W. Sullivan, II
Regional Director

Enclosure: Notice to Employer

2

**U.S. Department of Labor**     Office of Federal Contract Compliance Programs
Southwest and Rocky Mountain Regional Office
525 South Griffin Street, Suite 840
Dallas, TX 75202



July 3, 2024

Via First Class U.S. Mail - USPS

Attention:  Human Resources Manager
All Points Logistics LLC
190 S. Sykes Creek Pkwy., Suite 4
Merritt Island, FL 32952

Complaint Reference Number I00311965

Dear Human Resources Manager:

This is to notify you that on February 13, 2024, the Office of Federal Contract Compliance Programs (OFCCP) received a complaint from Amanda Leigh Kondrat'yev alleging violations of Executive Order 11246, as amended (EO 11246), and Section 503 of the Rehabilitation Act of 1973, as amended (Section 503).

Under the provisions of a Memorandum of Understanding between OFCCP and the U.S. Equal Employment Opportunity Commission (EEOC) effective November 3, 2020, and/or regulations at 41 CFR Part 60-742, the complaint is deemed simultaneously dual filed as a charge under Title VII of the Civil Rights Act of 1964, as amended (Title VII); and/or Title I of the Americans with Disabilities Act, as amended (ADA).

Title VII and the ADA require that OFCCP send you notice of the filing within ten (10) calendar days of our receipt of a complaint.

The complaint alleged All Points Logistics LLC, located at NASA Johnson Space Center, 2101 E. NASA Pkwy, Houston, TX 77058, discriminated against the complainant, on or about January 4, 2024, October 2, 2023, and August 1, 2023, based on race, sex, disability, and retaliation.

OFCCP closed the complaint because it is better suited for investigation and resolution by the U.S. Equal Employment Opportunity Commission (EEOC) and/or the Texas Workforce Commission (TWC).

Please be advised that the OFCCP and EEOC regulations require you to retain all records pertinent to this complaint and ensure that there is no retaliation because of this complaint. You may have received a similar ten (10) day notice from EEOC.

Should you have questions regarding this correspondence, please contact Deputy Regional Director LaQuandra Adebajo at 972-850-2550.

Sincerely,

for

Ronald W. Sullivan, II
Regional Director

# EXHIBIT 6

NASA OIG Whistleblower Complaint

(41 U.S.C. § 4712 · Submitted Apr. 24, 2026, with Receipt)

Kondrat'yev v. NASA Johnson Space Center, et al.

Civil Action No. 4:25-cv-04785 (S.D. Tex.)

# NASA OIG Whistleblower Complaint · Submission Receipt

Submitted via NASA Office of Inspector General Federal Acquisition Regulation (FAR) Mandatory Contractor Disclosure Form · 41 U.S.C. § 4712 / FAR 52.203-13

---

**EMAIL CONFIRMATION RECEIVED:**

| | |
|---|---|
| **From:** | donotreply@wpvip.com |
| **To:** | amandakondratyev@gmail.com |
| **Date / Time:** | April 24, 2026, 11:06 PM Central Time (April 25, 2026, 04:06 UTC) |
| **Subject:** | Mandatory Contractor Disclosure Form Confirmation |
| **Gmail Thread ID:** | 19dc2d19150e03e3 |

---

**CONFIRMATION TEXT (verbatim opening of confirmation email):**

*"Thank you for submitting the Federal Acquisition Regulation disclosure form. Below is the information that you submitted to our office.*

*Name: Amanda Kondrat'yev*
*Title: Ms*
*Email: amandakondratyev@gmail.com*
*...*

---

**STATUTORY ANCHOR:**

41 U.S.C. § 4712(b)(2)(A) · Inspector General has 180 days from receipt of complaint to investigate and submit report to agency head.

41 U.S.C. § 4712(c)(2) · If no order denying relief issues within 210 days of complaint submission (or 30 days after notice of an extension), the complainant may bring a de novo action in U.S. District Court.

FAR 3.904-1 · Outer filing limit is three years from the alleged reprisal; Plaintiff's January 4, 2024 termination places that outer limit at January 4, 2027.

The submission documented above is the operative § 4712 complaint preserving Plaintiff's administrative-exhaustion pathway pleaded at FAC ¶ 524.

---

**ATTACHED:**

The complaint as submitted to NASA OIG follows this confirmation page.

## WHISTLEBLOWER REPRISAL COMPLAINT UNDER 41 U.S.C. § 4712

**Date:** April 24, 2026

**To:** NASA Office of Inspector General — Hotline / Whistleblower Form

**From:** Amanda L. Kondrat'yev 1102 Buoy Rd Houston, TX 77062 █████████

amandakondratyev@gmail.com

**Subject:** Whistleblower Reprisal Complaint Under 41 U.S.C. § 4712 — Contractor Fraud, Gross Mismanagement, and Retaliation on NEST Contract No. 80NSSC19D0001

**Related Litigation:** Kondrat'yev v. NASA Johnson Space Center, et al., Case No. 4:25-cv-04785 (S.D. Tex.)

---

### I. Introduction

I am a former PC Support Technician who worked at NASA Johnson Space Center from September 19, 2022 through January 4, 2024, employed by All Points Logistics LLC (subcontractor) under the supervision and control of Leidos Holdings Inc. (prime contractor) on the NASA End-user Services and Technologies (NEST) contract, Contract No. 80NSSC19D0001.

I submit this complaint pursuant to 41 U.S.C. § 4712 because I was subjected to reprisal — including termination — for making protected disclosures of information I reasonably

believed constituted evidence of (A) gross mismanagement of a federal contract, (B) gross waste of federal funds, (C) abuse of authority relating to a federal contract, and (D) a substantial and specific danger to public health or safety.

## II. Protected Disclosures

During my employment and after termination, I made protected disclosures to the following authorities:

1. **Supervisors and management** (Brent Wong, Christy Murray, Robyn Smith, Ed Scarborough) — reported sexual harassment, ADA violations, FLSA violations, unsafe working conditions, and workplace violence throughout my employment.

2. **NASA Security (Johnson Space Center)** — reported November 27, 2022 property theft (AirPods), during which I disclosed my ADHD diagnosis to security personnel; and reported December 28–29, 2023 workplace assault by coworker Susana Kane. Deputy Chief Christopher M. Kindred (JSC-JS411) was the investigating officer on both incidents; Kindred responded to the scene of the December 29 assault and took my handwritten voluntary statement on-scene, which was attached to NASA Security Incident Report No. JSC106469. Captain Colin A. Gray authored and signed the written Incident Report but never spoke with me.

3. **Leidos and All Points HR / Management (July 13, 2023 conference call)** — reported supervisor Brent Wong's sexual harassment beginning July 12–13, 2023.

Rather than routing this report to NASA Security — the channel Leidos Center Operations Manager Christy Murray had explicitly identified at the October 18, 2022 mandatory staff meeting as the proper channel for assault and serious workplace misconduct — my harassment report was handled through a July 13, 2023 HR conference call with the following participants: Robyn Smith (All Points Logistics HR Director), Ed Scarborough (All Points Logistics Vice President), Brent Wong (the supervisor against whom I had just reported the harassment), Christy Murray (Leidos Center Operations Manager), and Carolyn Dianne Brief (Leidos HR Business Partner). All Points Logistics admitted Dianne Brief's participation in its own EEOC Position Statement. Retaliation against me began six days later, on July 19, 2023.

4. **All Points Logistics management (December 28–29, 2023 assault reporting)** — reported the workplace assault by Susana Kane to Ed Scarborough (Vice President) and Robyn Smith (HR Director) in addition to NASA Security.

5. **NASA Office of Diversity and Equal Opportunity (ODEO)** — initiated pre-complaint counseling on February 8, 2024 (case NCN-24-JSC-00038); formal complaint filed May 24, 2024, alleging discrimination, harassment, retaliation, and denial of accommodations.

6. **U.S. Department of Labor, OFCCP** — filed complaint Case No. I00311965 on February 13, 2024.

7. **EEOC** — filed Charge No. 460-2024-04943 and Charge No. 460-2024-09354.

8.    **Texas Workforce Commission** — filed charge January 23, 2024; three hearings with sworn testimony (April 3, May 2, June 6, 2024).

---

## III. Gross Mismanagement of a Federal Contract — 41 U.S.C. § 4712(a)(1)(A)

### A. No Written SOPs for Security-Critical IT Operations

Leidos, as prime contractor on the NEST contract, failed to maintain written Standard Operating Procedures for Active Directory/VPN provisioning — a security-critical IT function at NASA Johnson Space Center. Workers were dependent on verbal instructions and institutional memory for operations affecting NASA network security.

I had specifically requested written SOPs as both an ADA reasonable accommodation and an operational necessity. This request was denied. On October 21–22, 2023 (Saturday into Sunday), when the automated VPN provisioning system failed during a weekend shift with no management present, three workers (myself, Ryan Sauer, and Jordan Hollan) were forced to improvise using verbal instructions. This caused a temporary VPN outage — a direct, foreseeable consequence of the lack of written procedures. NASA subsequently conducted its formal OCIO Root Cause Analysis of this incident (Escalation #61) under NASA SOP SMO-2022-003; the selective-targeting retaliation that followed occurred in November 2023.

## B. False Training Certifications to NASA

During NASA's formal Root Cause Analysis (RCA) investigation of the VPN incident (conducted under NASA SOP SMO-2022-003), Leidos managers Christy Murray and Brian Lynn made materially false statements to NASA:

- **Claimed** Leidos held formal AD/VPN trainings — **False.** No such trainings occurred.

- **Claimed** that week's "tech meetup" covered the AD/VPN issue — **Provably false.** Microsoft Teams recordings show the meetup covered Print Services, not VPN/AD procedures.

- **Claimed** I received one-on-one training on the procedure — **False.** No such training ever occurred.

These false statements shifted blame onto workers for a system failure caused by Leidos's own failure to maintain written procedures, while concealing that my accommodation request for written SOPs had been denied.

## C. Selective RCA Targeting

Only I was subjected to the formal RCA process. Comparators Ryan Sauer and Jordan Hollan — who performed identical VPN work on the same shift — were not included in the RCA. This indicates the RCA was used as a retaliatory instrument targeting the employee who had requested accommodations and reported discrimination, not as a legitimate safety review.

## D. Undisclosed Pay Arrangements Violating Federal Contract Requirements

Leidos manager Christy Murray authorized informal "special project pay" arrangements for select male PC Support Technicians — including John Walters (TekFive subcontractor) — resulting in higher effective hourly rates than the standard PCST rate under federal Wage Determination No. 2015-5233, Rev. 25. John Walters told me directly that Christy Murray was authorizing these arrangements. These "Queue Manager" designations and associated pay increases were never posted, announced, or made available to all qualified PCSTs. The exact pay differential amount is unknown to me because Defendants concealed these arrangements.

This scheme constitutes gross mismanagement of a federal contract because: (1) it created undisclosed compensation tiers not reflected in the Wage Determination governing the contract; (2) positions were filled through informal networks rather than posted opportunities, potentially violating OFCCP affirmative action requirements under Executive Order 11246; and (3) it enabled sex-based pay discrimination under a federal contract — I reported this concern to OFCCP in my April 22, 2024 response (Case No. I00311965).

Documentary evidence received on April 24, 2026 (four NASA emails forwarded to me by a former NEST colleague) corroborates the existence and the selective, non-uniform character of these "Queue Manager" arrangements. Those emails include: (i) a June 13, 2024 NASA email from Leidos supervisor Brent Wong describing the Queue Manager role as "a shift in workload billeted to PCST, on-site 100%" — confirming that Queue

Manager designations were billed against the PCST labor category under the NEST contract; (ii) an October 20, 2022 NASA email from Christy Murray documenting a **formal interview process** for the Queue Manager role filled by Jasmine Stevens; and (iii) a November 1, 2022 NASA email from Christy Murray documenting the Queue Manager role subsequently filled by Dan Murphy **without any fresh interview process**. The disparate process — formal interview for one Queue Manager designation, no fresh interview for the next — confirms that these pay-and-role arrangements were not uniformly posted or competitively filled within the billeted PCST workforce, and that access to them turned on informal manager discretion rather than on any documented contract-compliant process. On information and belief, former NEST contractor Tristian Castro was permitted a post-termination remote-work arrangement on the same contract; the mechanism by which that accommodation was authorized — including whether it was approved through any documented process and whether any comparable accommodation was offered to similarly situated contractor employees — is an appropriate subject for NASA OIG inquiry.

### E. Failure to Pay Hazardous Pay Differential Required Under Wage Determination

Wage Determination No. 2015-5233, Rev. 25, which governs the NEST contract, requires an 8% hazardous pay differential for work involving incendiary materials. I was assigned to provide IT support in and around the NASA JSC battery testing facility, where lithium batteries were subjected to destructive/abuse testing. Entry to this facility required NASA-specified hazardous-operations training (including prohibition on

powered cell phones inside the facility) and credentialed access, as reflected in my Leidos Hazardous Access Badge. Neither All Points nor Leidos paid me the required 8% hazardous pay differential for any hours worked in or near this facility.

## IV. Gross Waste of Federal Funds — 41 U.S.C. § 4712(a)(1)(B)

NASA paid Leidos under a contract that required compliance with IT security standards and training requirements. Leidos was not providing the required training, was not maintaining written procedures for security-critical operations, and made false certifications to NASA about training that never occurred. Every invoice submitted while falsely certifying compliance represents waste of federal funds.

## V. Abuse of Authority Relating to a Federal Contract — 41 U.S.C. § 4712(a)(1)(C)

### A. Improper Use of the RCA Process

Leidos management used the VPN incident — which their own failure to provide SOPs caused — as the basis to remove my overtime and conduct an interview characterized internally as a "Tech Meetup." The RCA process was selectively applied only to me, not to the two male comparators who performed identical work.

## B. False "False Report" Narrative

After I reported a workplace assault to NASA Security on December 28–29, 2023, Defendants asserted that I had filed a "false report." All Points HR Director Robyn Smith admitted in writing on March 25, 2024 that "We were not told the actual results of the security investigation" — yet Defendants terminated me citing NASA Security findings they never received. NASA Security Chief Russ Tucker has confirmed that NASA Security "never determined, nor communicated" that I falsified any report.

## C. False Sworn Statements to Federal Agencies

Defendants submitted coordinated false statements to EEOC, TWC, OFCCP, and NASA ODEO claiming NASA Security found I filed a "false report" — while admitting in contemporaneous documents they never obtained NASA Security's findings. These false statements were submitted to federal and state agencies adjudicating my claims for unemployment benefits and discrimination relief.

On January 5, 2024 — the day after my termination — Leidos supervisor Brent Wong convened a staff meeting at which remaining employees were told not to discuss my departure. These instructions to remaining employees not to discuss my departure were delivered using NASA SharePoint recording infrastructure and constitute potential witness tampering under 18 U.S.C. § 1512 — suppressing potential witnesses to the assault, harassment, and retaliatory termination while TWC and EEOC proceedings were foreseeable.

Additionally, on April 24, 2024 — between TWC hearing sessions — All Points HR Director Robyn Smith contacted witnesses David Kremm and Jordan Hollan in a recorded call. During this recorded call, both witnesses described my termination in substantive terms that supported my account: Kremm characterized Brent Wong's conduct over the months preceding my termination as building a record of complaints intended to justify removing me, and Hollan stated that I had been singled out for removal in connection with concerns I had raised at work. This inter-hearing contact with witnesses — both of whom were potential deponents in the then-pending TWC proceedings — constitutes potential witness tampering.

### D. Concealed Cross-Entity HR Coordination

Leidos HRBP Dianne Brief coordinated directly with All Points HR Director Robyn Smith via conference call on July 13, 2023, followed by ongoing verbal conversations from July 13 through September 18, 2023 regarding my "difficulties on the job" (admitted in All Points's EEOC Position Statement). Brief's role was concealed from EEOC and TWC proceedings. This cross-entity HR coordination — between Leidos's own HRBP and All Points's HR Director — demonstrates institutional coordination to build the documentation campaign against me after my protected disclosures.

### E. NASA's False Denial of Knowledge

In April 2024, NASA claimed in its ODEO Contingent Worker Analysis that I was "Unknown by the Government." This statement is demonstrably false. NASA: (a) issued

my Public Trust clearance and JSC badge; (b) conducted a formal OCIO Root Cause Analysis under NASA SOP SMO-2022-003 listing me by name; (c) provided me access to the JSC medical clinic; (d) had NASA Security respond to my assault report via Deputy Chief Christopher M. Kindred, who took my handwritten statement on-scene, with Captain Colin A. Gray authoring and signing the written report though he never spoke with me; and (e) had NASA ODEO independently investigate my discrimination complaint (NCN-24-JSC-00038). The "Unknown by the Government" claim was part of a coordinated effort to deny responsibility for actions taken against a contractor employee over whom NASA exercised direct control.

### F. Leidos Manager's Undisclosed Self-Accommodation While Plaintiff's Formal ADA Request Was Denied

Leidos manager Christy Murray — the same manager who made the materially false training certifications to NASA during the Root Cause Analysis described in Section III.B, and who led the RCA process selectively targeting me — accommodated her own ADHD symptoms on the NASA JSC worksite by consuming large quantities of caffeine (routinely three Trenta-size coffees per shift) as a stimulant substitute, while my formal ADA accommodation requests were denied. The formal written denial of my ADA accommodation request — stating that I was "not covered by the ADA" — was issued by All Points Logistics HR Director Robyn Smith on September 19, 2023.

Ms. Murray also serves in the U.S. Army Reserves. Under DoD Instruction 6130.03 and related Army Reserve medical-retention standards, Reserve members have affirmative,

recurring disclosure obligations regarding diagnosed conditions (including ADHD) and prescription stimulant use on instruments including the annual Periodic Health Assessment (PHA), DD Form 2766 (Adult Preventive and Chronic Care Flowsheet), DD Form 2795 (Pre-Deployment Health Assessment), and SF-600. To the extent Ms. Murray holds or has held a personnel security clearance in connection with her Leidos NEST-contract work and/or her Reserve duty, SF-86 Section 21 and SEAD 4 / Executive Order 12968 impose parallel mental-health and medication-use disclosure obligations.

These facts are within NASA OIG's cognizance in three respects, and I raise them solely for those three purposes:

1. **Abuse of authority and disparate treatment under a federal contract.** Ms. Murray informally self-accommodated her own disability-related symptoms with off-the-shelf stimulants on a federal-contract worksite while a subordinate (me) was denied the formal ADA interactive process, written SOPs as an accommodation, and any accommodation for documented ADHD and PTSD. This is direct evidence that the denial of my ADA request was pretextual and constituted abuse of managerial authority relating to a federal contract within the meaning of 41 U.S.C. § 4712(a)(1)(C).

2. **Contractor integrity and credibility of the false training certifications.** Ms. Murray was the Leidos manager who co-authored the training certifications to NASA during the SMO-2022-003 RCA process that I have demonstrated were materially false (Section III.B). Record evidence of a parallel pattern of non-

disclosure regarding her own medical status on federal instruments is probative of her credibility as the primary Leidos declarant on the NASA RCA, and I respectfully request that OIG consider it in that limited evidentiary capacity.

3. **Referral-only notice of potential independent federal concerns outside NASA OIG jurisdiction.** I am not asking NASA OIG to adjudicate any alleged violation of UCMJ Article 107 (10 U.S.C. § 907 — false official statement), UCMJ Article 83 (10 U.S.C. § 883 — fraudulent appointment/retention), 18 U.S.C. § 1001, or SF-86 / SEAD 4 / EO 12968 disclosure requirements. To the extent any such concerns are warranted, they belong with the DoD Office of Inspector General Hotline, the Army Reserve Inspector General, and/or the Defense Counterintelligence and Security Agency (DCSA). I raise them here only as referral-only notice and because they bear on credibility and pattern of non-disclosure on federal-contract matters squarely within NASA OIG jurisdiction.

Caffeine itself is a lawful, over-the-counter stimulant. The issue is not Ms. Murray's caffeine consumption; the issue is (a) a federal-contract manager self-accommodating an undisclosed medical condition on the worksite while a subordinate's formal ADA request for the same category of condition was denied, and (b) whether that same manager's credibility — as the primary declarant on the NASA RCA that Leidos used to target me — is affected by a parallel pattern of non-disclosure on other federal instruments.

## G. Document Concealment and Selective Production to EEOC

In response to my EEOC charges, All Points Logistics LLC, through HR Director Robyn Smith, submitted a Position Statement to the EEOC accompanied by what was produced as "the Employee Handbook" (Attachment 2). A file comparison of All Points's Attachment 2 against the January 2022 All Points Employee Handbook establishes that Attachment 2 is the January 2022 handbook — not the handbook that governed my employment.

The operative handbook during my employment was the January 2023 All Points Employee Handbook. Robyn Smith distributed the 2023 handbook to employees, including me, on or about January 9, 2023. The 2023 handbook is in my possession; it was not lost or destroyed, and it contains the ADA, anti-retaliation, progressive-discipline, and investigation provisions in force during my employment.

By producing the superseded 2022 handbook to the EEOC while the operative 2023 handbook existed and was in All Points's custody, All Points Logistics concealed from a federal agency material information bearing directly on the anti-retaliation, ADA, and investigation obligations All Points was required to follow. This is a factual predicate implicating 18 U.S.C. § 1001 (concealment of material facts in a matter within the jurisdiction of a federal agency). I disclose it to the NASA OIG as part of my protected disclosures of abuse of authority relating to a federal contract, 41 U.S.C. § 4712(a)(1)(C).

## VI. Substantial and Specific Danger to Public Health or Safety — 41 U.S.C. § 4712(a)(1)(D)

### A. Unsafe IT Operations at a NASA Facility

The absence of written procedures for security-critical IT operations at NASA JSC created a substantial danger to the security and integrity of NASA's network infrastructure. The October 21–22, 2023 VPN outage demonstrated this danger. Rather than fix the systemic problem, Defendants covered it up and punished the employee who had been requesting written procedures.

### B. Workplace Violence Left Unaddressed

I reported a physical assault by coworker Susana Kane. Defendants failed to conduct any meaningful investigation — never interviewed me, never interviewed key witnesses, never obtained the NASA Security Report. The assault victim was terminated; the assailant was returned to the NASA JSC worksite.

### C. Other Safety Reports Ignored

Throughout my employment, I reported: broken vehicle windshield wipers creating unsafe driving conditions during off-site deployments; inadequate equipment; lack of safety cameras in work areas despite incidents of harassment and aggression; and the need for a proper emergency evacuation plan to replace an inadequate "RUN" sticky note. These reports were ignored or used as evidence of being "difficult."

### D. Hazardous Battery Testing Operations Without Required Safety Compliance

I was assigned IT support duties in and around the NASA JSC battery testing facility where lithium batteries were subjected to destructive/abuse testing. Entry required NASA-specified hazardous-operations training, including prohibition on powered cell phones inside the facility, and credentialed access reflected in my Leidos Hazardous Access Badge. Despite these recognized hazards requiring special training and credentials, neither contractor paid the 8% hazardous pay differential required under the governing Wage Determination for work involving incendiary materials.

### VII. Reprisal

After making the above disclosures, I was subjected to the following adverse actions:

1. **September 18, 2023, 5:46 PM** — Final Warning issued 26 minutes after my 5:20 PM email reporting discrimination, FLSA violations, and requesting ADA accommodations.
2. **September 19, 2023** — Categorical written denial of ADA accommodation by All Points Logistics HR Director Robyn Smith with false legal statement ("not covered by the ADA").
3. **November 2023** — Selective overtime cancellation after VPN incident (comparators Sauer and Hollan continued receiving overtime).

4. **November 2023** — Hostile "security interview" disguised as Tech Meetup; selective RCA targeting.

5. **December 29, 2023, 4:39 PM** — Immediate suspension within hours of assault report.

6. **January 4, 2024** — Termination, three business days after the assault report, based on a "false report" assertion that, at the time of termination, was unsupported by any NASA Security finding actually obtained by Defendants.

7. **January 5, 2024** — Hostile equipment return with false badge theft accusation and three-person surveillance.

8. **February–July 2024** — Coordinated false sworn statements to TWC, EEOC, OFCCP, and NASA ODEO.

9. **July 2024 and continuing** — Continued false sworn statements to OFCCP and other agencies AFTER OFCCP's July 3, 2024 formal notice expressly warning: "OFCCP and EEOC regulations require you to retain all records pertinent to this complaint and ensure that there is no retaliation because of this complaint." Despite this warning, Defendants continued submitting statements claiming "NASA Security determined [I] falsified [my] report" — statements they knew were false based on Robyn Smith's March 25, 2024 admission.

10. **January 2024 to present** — Defendants' false statements to TWC, EEOC, OFCCP, and NASA ODEO — that "NASA Security determined [I] falsified a report" and "NASA prohibited [me] from working on-site" — are discoverable in background

checks and have impaired my professional reputation in the federal contractor community. As of April 2026, I remain unemployed after 56+ applications and 27.5+ months of job searching — substantially longer than the typical IT professional job search.

## VIII. Evidence Available

I maintain comprehensive documentary evidence supporting each factual allegation in this complaint, including, without limitation: the NASA OCIO Root Cause Analysis under SOP SMO-2022-003 documenting the false training certifications described in Section III.B; the NASA ODEO counselor's report for case NCN-24-JSC-00038; contemporaneous email correspondence including the March 25, 2024 email chain in which All Points HR Director Robyn Smith admitted she had not received the NASA Security investigation results while Defendants were publicly claiming NASA Security had found a false report; Microsoft Teams recordings disproving the training-certification claims; an audio recording of the April 24, 2024 post-TWC-hearing contact with witnesses David Kremm and Jordan Hollan; the written Final Warning issued September 18, 2023 at 5:46 PM, twenty-six minutes after my 5:20 PM disclosure email; the September 19, 2023 written ADA-denial email from All Points HR Director Robyn Smith stating I was "not covered by the ADA"; the January 2023 operative All Points Employee Handbook (distributed by Robyn Smith and in my possession), together with the January 2022 superseded handbook All Points produced to the EEOC in lieu of the

operative version; my Leidos Hazardous Access Badge credentialing the NASA JSC battery-testing facility; and the four NASA emails received on April 24, 2026 corroborating the Queue Manager pay-and-role arrangements described in Section III.D.

All documentary evidence described above is organized and available for NASA OIG review on request.

## IX. Whistleblower Protection Invoked

I invoke protection under 41 U.S.C. § 4712 for all disclosures described above. I request that the NASA OIG investigate the reprisal described in this complaint and take appropriate action.

I understand that under 41 U.S.C. § 4712(b)(2)(A), the Inspector General has 180 days after receiving this complaint to investigate and submit a report to the head of the agency, and that under § 4712(c)(2), if no order denying relief issues within 210 days after submission of the complaint (or within 30 days after any notice of extension), I may be deemed to have exhausted administrative remedies and may bring a de novo action for relief in the appropriate United States District Court.

## X. Contact Information

Amanda L. Kondrat'yev 1102 Buoy Rd Houston, TX 77062 Phone: ▮▮▮▮▮▮▮▮

Email: amandakondratyev@gmail.com

I declare under penalty of perjury under 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge.

---

Amanda L. Kondrat'yev

Date: April 24, 2026

# EXHIBIT 7

NASA ODEO Notice of Right to File

(NCN-24-JSC-00038)

Kondrat'yev v. NASA Johnson Space Center, et al.

Civil Action No. 4:25-cv-04785 (S.D. Tex.)



Aggrieved Person Notice of Right to File a Formal Complaint – EEO Informal Stage

# NATIONAL AERONAUTICS AND SPACE ADMINISTRATION
### Office of Diversity and Equal Opportunity

NOTICE OF RIGHT TO FILE FORMAL COMPLAINT
TO
Amanda Kondrat'yev
(NCN-24-JSC-00038)

### <u>Via Email or Mail, Receipt Requested:</u>

Date: May 21, 2024

Amanda Kondrat'yev
████████████., Apt. 1606
Houston, TX 77058

RE: Informal EEO Complaint of Amanda Kondrat'yev
Notice of Right to File Formal

Dear Ms. Kondrat'yev,

On May 21, 2024, I advised you of the results of my inquiry regarding your request for EEO counseling dated February 22, 2024. Specifically, you alleged Contingent Worker status and discrimination based on your race (Asian); disability (ADHD, PTSD, BPD, Anxiety, MDD); and sex (Female), when:

1) On February 8, 2024, you were notified by the Texas Workforce Commission that All Points Logistics terminated your employment on January 4, 2024 from NASA Contract No. 80NSSC19D0001 because NASA Johnson Space Center (JSC) Security Officer, Colin A. Gray conducted an assault investigation on December 29, 2023 that determined, "Amanda falsified the report and the assault did not happen."

If you are not satisfied with the results of this inquiry, you have the right to file a formal complaint of discrimination.

To file a formal complaint, you must complete the attached **NASA** Form 1355P and return it to this office within fifteen (15) calendar days of your receipt of this notice. Please note that only the claims raised in pre-complaint counseling may be alleged in the formal complaint. Subsequent issues that are like or related to the claims raised in this complaint may be added to the formal complaint at the discretion of this office. Your formal complaint must be in writing, and it must be legible. It must also contain the telephone number and address where you may be contacted. *See* 29 CFR § 1614.105 (b)(1). You should also state whether you have filed a grievance under the negotiated grievance procedure (*See* 29 CFR § 1614.301(a)) or an appeal to the Merit Systems Protection Board (*See* 29 CFR § 1614.302(b)) on the same matters presented in your complaint.

Your formal complaint may be filed by you or your representative via letter or email to the following address:



**Aggrieved Person Notice of Right to File a Formal Complaint – EEO Informal Stage**

Office of Diversity and Equal Opportunity
NASA
300 E St SW
Washington, DC 20546

Given NASA and the federal government's remote and telework posture, and to ensure your complaint is received and processed in a timely manner, please submit your complaint to: hq-dl-EO-complaints-Programs-Division@mail.nasa.gov. You may contact the Complaints Management Division (CMD) at (202) 358-2180, if you have any questions.

Failure to file NASA Form 1355P within fifteen (15) calendar days of your receipt of this notice will result in dismissal of your formal complaint for untimeliness. If you decide to file a formal complaint, please complete the attached Designation of Representation form. If you do not wish to pursue this matter, no further action is required.

Please contact me at 832-551-6037 if you need further assistance.

Sincerely

Robert Blake
EEO Counselor

Enclosure: NASA Form 1355P
Designation of EEO Complaint Representative

cc:

Regina Neal-Mujahid
Director, JSC Office of Diversity and Equal Opportunity

**Privacy Act Statement**

The information on this form is collected pursuant to 29 U.S.C. 206(d), 633(a), 791 and 194a; 42 U.S.C. 2000e-16; E.O. 11478, 3 CFR, 1969 Comp., p. 133, E.O. 12106, 3 CFR, 1978 Comp., p. 263; and 29 CFR part 1614. The information is used primarily in the processing of Equal Employment Opportunity (EEO) complaints. The information may be disclosed: to appropriate Federal, State, or local agencies when relevant to civil, criminal, or regulatory investigations or prosecutions; in judicial or administrative proceedings; to congressional offices; and to authorized officials involved in investigation or settlement of EEO grievances, complaints, and appeals. The information is given voluntarily. Failure to provide the information may delay or prevent the processing of the complaint.



# EXHIBIT 8

Leidos Position Statement

(EEOC Charge No. 460-2024-09354)

Kondrat'yev v. NASA Johnson Space Center, et al.

Civil Action No. 4:25-cv-04785 (S.D. Tex.)

February 4, 2025



**Paul Kehoe**
**Vice President and Senior Assistant General Counsel**

**VIA EEOC PORTAL**

U.S. Equal Employment Opportunity Commission
Houston District Office
1919 Smith St., 6th Fl.
Houston, TX 77002

> **Re:** *Amanda Kondrat'yev v. Leidos*, **Inc.**
> **EEOC Charge No. 460-2024-09354**

Dear Investigator:

This letter constitutes Leidos, Inc.'s[1] ("Leidos") position statement in response to Amanda Kondrat'yev's ("Kondrat'yev") Charge, which raised allegations of disability and sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act, both as amended. For the reasons set forth below, Leidos denies all allegations and EEOC should dismiss the Charge in its entirety.

## BACKGROUND

### A. Leidos is a Federal Contractor

Leidos is a scientific engineering and technology applications company that helps its government and commercial customers solve problems in the areas of national security, energy and the environment, critical infrastructure, and health. Leidos is an equal employment opportunity ("EEO") employer with approximately 47,000 employees, and EEO is one of the Company's guiding principles. Leidos hires, compensates, and promotes individuals without regard to race, color, religion, creed, age, sex, disability, veteran or marital status, pregnancy, national origin, sexual orientation, or any other category protected by law.

### B. Kondrat'yev's Engagement on the NASA NEST Program

Leidos holds a prime contract at the NASA Johnson Space Center (among other locations) pm the NEST contract. Brent Wong serves as Leidos Service Delivery Lead on the program. Leidos subcontracted

---

[1] The company submits this position statement based on its investigation to date into the allegations raised in the Charge. By submitting this position statement, Leidos does not waive its right to present new or additional facts or arguments based upon subsequently acquired information or evidence. This response does not constitute an affidavit, and may not be used in any manner, including as evidence or for discovery purposes, for impeachment or otherwise, in any subsequent proceeding pursuant to 42 U.S.C. § 2000e-5(b) and Federal Rule of Evidence 408, or in any administrative or judicial proceeding in connection with this charge or any other matter.

out certain work to other vendors, including All Points Logistics, LLC ("All Points") for the program. All Points hired Kondrat'yev to provide PC Support Technician services to the NEST program. At no time did Leidos employ Kondrat'yev.

On December 29, 2023, Kondrat'yev made a claim that a co-worker Susanna Kane (an employee with Seabrook Solutions, not Leidos) assaulted her by pushing boxes onto her. Kondrat'yev contacted JSC Security. JSC Security conducted an investigation and solicited written statements from Kane, Kondrat'yev and a witness, Christian Garcia (a Junior Systems Engineer employed by Leidos). Critically, Garcia informed JSC security that Kane and Kondrat'yev engaged in a verbal altercation, which included both telling each other to "shut up." Garcia confirmed to JSC Security that Kane did not throw any boxes at Kondrat'yev. *See* Ex. 1.

At some point thereafter, Leidos learned that All Points (Ed Scarborough, Vice President and General Manager) had terminated Kondrat'yev. Wong met Kondrat'yev on location to collect NASA's assets in her possession and to return her personal effects left in her cubicle. At no point did Leidos direct her removal. All Points solely made the decision to terminate Kondrat'yev, its employee.

## DISCUSSION

Kondrat'yev alleges that Wong sexually harassed her in July 2023, that Leidos failed to accommodate her shortly thereafter, and that a company (it is unclear which one), unlawfully terminated her on January 4, 2024. Substantively, Leidos denies all allegations in the Charge.

Regardless, Kondrat'yev signed her Charge on November 18, 2024. 300 days prior to that date is January 23, 2024. Kondrat'yev claims that All Points terminated her employment on January 4, 2024 for making a false report to NASA security. Therefore, all of Kondrat'yev's claims are time barred under both Title VII and ADA, and the EEOC must dismiss her claims as a matter of law.

## CONCLUSION

As set forth above, Leidos did not discriminate or retaliate against Kondrat'yev. Her claims fail as a matter of fact and law. Based on these facts and the lack of merit, the Commission should dismiss his Charge in its entirety. Please do not hesitate to contact me with any questions or concerns.

Sincerely,
**Leidos, Inc.**


*/s/ Paul H. Kehoe*


Paul H. Kehoe

Vice President, Senior Assistant General Counsel

# EXHIBIT 9

All Points Logistics Position Statement

(EEOC Charge No. 460-2024-04943; Bates APL_000005·APL_000013)

Kondrat'yev v. NASA Johnson Space Center, et al.

Civil Action No. 4:25-cv-04785 (S.D. Tex.)



November 26, 2024


U.S. Equal Employment Opportunity Commission
Houston District Office
1919 Smith Street, 6th Floor
Houston, TX 77002

RE:    All Points Logistics LLC Position Statement
       EEOC Charge Number:  460-2024-04943


We appreciate the opportunity to respond to the above referenced EEOC charge and provide this Position Statement.

All Points Logistics, LLC (All Points) is a Service-Disabled Veteran Owned Small Business headquartered at 190 S. Sykes Creek Parkway in Merritt Island, Florida, 32952.  Mr. Phil Monkress is the majority owner and Chief Executive Officer (CEO).  There is one minority owner, Robyn Smith, Chief Administrative Officer.  Robyn Smith has been with All Points for over 21 years and is responsible for administrative functions at the corporate level including human resources, policies and compliance, EEOC, Affirmative Action, disciplinary actions, hiring and terminations.  Robyn Smith reports directly to the CEO and is responsible for responding to this Charge of Discrimination.  Robyn Smith's resume has been included in documentation as ***Attachment 1 – Robyn Smith Resume***.

All Points was formed in 1997 and began working with the federal government to provide services to multiple government agencies shortly thereafter.   Over the last 27 years, All Points has expanded its services to encompass engineering, IT and technical services support to multiple customers including NASA, the Air Force, Army, Lockheed Martin, Jacobs Engineering, The Boeing Company, Leidos, the Department of Agriculture, the National Security Agency, the Department of Homeland Defense, and the Defense Information Systems Agency.  All Points currently has 300 employees and operates in 26 states.

All Points is committed to its policy of Equal Opportunity Employment (EEO) for all employees and employment actions.  All Points' EEO policy is below and can be found in our Employee Handbook on Page 6 which has been submitted as a document for this statement as ***Attachment 2 – Employee Handbook.***

> *The Company provides equal employment opportunities to all employees and applicants without regard to race, color, religious creed, sex, national origin, ancestry, citizenship status, pregnancy, childbirth, physical disability, mental disability, age, military status or status as a Vietnam-era or special disabled veteran, marital status, registered domestic partner or civil union status, gender (including sex stereotyping and gender identity or expression), medical condition (including, but not limited to, cancer related or HIV/AIDS related), genetic information, or sexual orientation in accordance with applicable federal, state and local laws. In addition, the Company complies with applicable state and local laws governing nondiscrimination in employment in every location in which the Company has facilities. This policy applies to all terms and conditions of employment, including, but not limited to, hiring, placement, promotion, termination, layoff, recall, transfer, leaves of absence, compensation, and training.*

190 S. Sykes Creek Parkway, Suite 4      Merritt Island, FL 32952


APL_000005

All Points is committed to its policy of Americans with Disabilities Act (ADA) for all employees. All Points ADA policy is below and can be found in our Employee Handbook on Page 6 which has been submitted as a document for the statement as ***Attachment 2 – Employee Handbook***.

> *The Americans with Disabilities Act (ADA) requires an employer to provide reasonable accommodations for individuals with disabilities unless it would cause undue hardship to the Company. Reasonable accommodation may include changes in the work environment or in the way a job is performed that enables a person with a disability to enjoy equal employment opportunities. If you require accommodation, you must inform your manager that there is a need for an adjustment or change at work for a reason related to a disability. We will respond promptly and to the best of our ability to accommodate the needs of all employees.*

The following is a list of personnel related to this response and responsibilities:

1. Robyn Smith – Chief Administrative Officer
2. Charles (Ed) Scarborough – Vice President and General Manager with program management oversight of the NEST contract

The following is All Points response to The Particulars raised by Amanda Kondrat'yev (Amanda):

**I was hired as a PC Support Technician on the NEST contract at NASA JSC and started work Sept 2022.**

Amanda was offered a position as a Personal Computer Support Technician on our NEST contract on August 20, 2022, with a start date of September 19, 2022. Amanda signed and returned her offer letter the same day. Amanda's signed offer is included as ***Attachment 3 – Kondratyev, Amanda signed Offer Letter PCST – NEST JSC.*** Our offer letter states:

"*This offer is not to be considered a contract guaranteeing employment for any specific duration and continued employment will be at-will, which means that both you and the company have the right to terminate your employment at any time.*"

All Points electronically onboards employees through our Human Resource Information System, ADP. During that process, employees complete their personal information and related payroll information. Employees also complete Statutory Compliance information to include Gender, Ethnicity, Race, Veteran Status and Disability Status. A copy of Amanda's Statutory Compliance panel has been included as ***Attachment 4 – Statutory Compliance Panel***. Amanda certified her Disability Status as "No".

**I experienced sexual harassment. It was an extremely misogynistic environment. At least two other females on the contract now have also reported. My supervisor, Brent Wong, and many techs would go to Twin Peaks during lunch for the lingerie day on Wednesday. The workplace was misogynistic, but especially bad these days.**

Brent Wong is a Leidos employee. All Points is a subcontractor to Leidos, the prime on the NEST contract. This contract involves all NASA centers. All Points has a few employees at each NASA center on this contract. All Points employees fall under the day to day management of a Leidos Lead at each center. Brent Wong was the Leidos Lead at JSC and provided day to day instruction and management to All Points employees including Amanda.

All Points has no knowledge of the events written in this paragraph. Amanda never reported to All Points that she was experiencing sexual harassment, nor did she report any of the events written in this paragraph. All Points has one other female employee who works on this contract at JSC. Robyn Smith asked this employee if she has experienced any sexual harassment or felt uncomfortable with any

190 S. Sykes Creek Parkway, Suite 4     Merritt Island, FL 32952

situation in her work environment and the employee stated that she had not.  All Points is unaware of any claims of sexual harassment made against Brent Wong by any other female employees on the contract.

**The workplace is missing required worker safety and legal rights posters.  Brent would often request to be alone.  He would stand close and regularly focused on me specifically over any of the male technicians. He would make inappropriate jokes and comments about sex, masturbation, and going to massage parlors with happy endings.  He often accepted gifts from subordinates.  Susana Kane was approved for extended travel and telework and would bring him coffee bags from her farm in Honduras.  He also treated her nicer and approved her requests more after she got a divorce.  He hired his male friends regularly.  They received promotions and direct Leidos contractor positions over others.  They got overtime and advance notice when they were going to be on the neglected ticket list.  I was singled out, followed around, and set up to fail.  The rules were different for me and constantly changing or selectively enforced.**

NASA maintains the work environment at JSC including safety information and training.  All Points has no physical presence at JSC and no designated space in which to post any information.

Brent Wong is not an All Points employee, nor is Susana Kane and we have no knowledge of the events written in this paragraph.  Amanda never reported this information to All Points.

**In Jan 2023, I had the responsibility of a 3-technician deployment team.  I was still receiving unfair work distribution for deployments in April 2023.  I included Leidos management, but no changes or audits occurred.**

All Points has no knowledge of the information written in this paragraph and Amanda has never reported to All Points that she received unfair work distribution.

**July 2023, QM, John Barker, had followed Brent to the Spacebar without him noticing and witness him verbally abusing me while he thought we were alone.  Formally reported to Leidos through Christy Murray.  There was a meeting with Leidos and All Points.  Brent admitted to the abuse and harassment and apologized profusely.  Part of the resolution was that he was no longer to request 1-on-1 meetings with me but continued to do so.**

John Barker is not an All Points employee, and we have no knowledge of this event.

All Points was asked to attend a meeting via conference call on July 13, 2023, at 3:30 central time.  The meeting was titled "Round Table Discussion Leidos/All Points.  Ed Scarborough, VP and General Manager and Robyn Smith were attendees for All Points.  It was during this call that we were first made aware there were issues between Amanda and Brent Wong.  To our recollection, Amanda stated that Brent had yelled at her several times, and she didn't understand why.  Brent's response was that things get very hectic, and he was just trying to get all the tickets taken care of and getting their metrics accomplished.  We don't recall Brent admitting to abusing or harassing Amanda - only yelling and losing patience.  Ed nor I recall any discussion regarding 1-on-1 meetings and that these meetings were an issue nor is there any recollection of Brent Wong being told that he was to no longer have 1-on-1 meetings with Amanda.  The meeting ended with seemingly all issues discussed and was closed out by Leidos with a statement to everyone involved in the meeting that discussions about the meeting should only be held between parties who were participants in the meeting.

On July 18, 2023, I emailed Amanda to schedule a call with Ed Scarborough and myself as a follow up to the meeting from July 13.  Please see email correspondence included as *Attachment 5 – Follow Up Email* from Meeting 07132023.  A call was held on July 19, 2023, at 4:00 central time.  Ed and I wanted to let Amanda know that she could reach out to us as her employer with any issues she was having so that we could be aware and could help.  Amanda stated she understood and appreciated the call.  We also asked how things had been going since the meeting, and she stated things were much better.

190 S. Sykes Creek Parkway, Suite 4     Merritt Island, FL 32952

**He made me feel uncomfortable about requesting help.  He continued to be inappropriate if he showed up at all.  All Points restricted me from making formal reports to Leidos saying they would help me.  I continued working and receiving adverse actions.  Brent tried to start a paper trail to fire me including reporting to subcontractor about meetings he usually did not even show up for, having his friend, Dan Murphy, write a complaint email to All Points about me.  He would call me out for mistakes that I did not make and refuse to assist when I'd bring his attention to problems.**

All Points never stated Amanda could not make any formal reports to Leidos.  All Points let Amanda know that we were her employer and that she should bring issues to either her manager, Ed Scarborough, or to Human Resources and Robyn Smith.  Without bringing issues to All Points' attention, there would be no way for All Points to help.

All Points has no knowledge of a paper trail to fire Amanda.  Brent Wong did send one email to Amanda on September 20, 2023, and copied All Points regarding not attending Daily Tag-Up Meetings.  This email and Amanda's response is included as *Attachment 6 – Email Regarding Daily Tag Ups*.  Brent noted that Amanda had only attended 2 of the 8 Daily Tag Ups in the last 9 days.  Amanda's response did not indicate that Brent was being unreasonable or untruthful.

Dan Murphy was an All Points employee between June 28, 2022, and September 15, 2023.  All Points is unaware of any personal relationship between Dan Murphy and Brent Wong.  Dan applied through our Career website and there was no indication that Dan or Brent knew each other prior to him being interviewed and hired.  Ed Scarborough became aware of an instance with Dan Murphy and reached out to Dan to provide information regarding the incident.  Dan provided the information included in *Attachment 7 – Email from Dan Murphy*.

**While I was working the Spacebar, I requested to Christy that cameras be installed after a male employee from NASA HQ shoved equipment across the counter at me.  There had been another incident not long before that where an irate customer threatened another tech and managers and needed to be escorted off site repeatedly.  It felt unsafe especially with expensive equipment and no cameras.  She told me she would request them for the Spacebar only but that they would not record sound.**

Christy is not an All Points employee, and we have no knowledge of this request for cameras to be installed and no knowledge of the events written in this paragraph.  Amanda never reported this information to All Points.

**Disparate treatment for accommodation of disability – male coworker, William Figueredo, that had repeatedly failed to meet the expectations for the job and moved to the Spacebar so that he would only need to keep up with one thing.  I went to Spacebar temporarily when I had a lifting restriction for a back injury.  I was too afraid to get it renewed despite still being medically necessary.  After it was removed when I requested the other accommodations, I was intentionally given large deployments and couldn't change with another tech, and it was a big issue.**

William Figueredo is an active All Points employee hired on May 3, 2021.  All Points has never received any accommodation of disability request from William and has never been informed of any performance issues.

Amanda reached out to All Points on May 22, 2023, requesting to speak with someone regarding workplace accommodations.  I reached out to Amanda regarding the request and All Points worked with Brent Wong with Leidos to make the accommodation.  Amanda was placed on light duty by a doctor for 6 to 8 weeks with no lifting heavier than 20 pounds.  Email correspondence is included as *Attachment 8 – Lifting Accommodation Request.*  Amanda did not provide any additional information regarding this light duty restriction nor made any request for continued or additional accommodation.

190 S. Sykes Creek Parkway, Suite 4     Merritt Island, FL 32952

**The very next day another male tech, Spencer Adams, was allowed to trade assignments without any issue. Once I reached out about an ongoing issue via Teams chat. Brent called, spoke extremely fast, and when I requested for him to please respond in writing, he told me that if I needed things in writing to write it myself. I eventually put him on speakerphone so the other technicians could hear him yelling.**

Spencer Adams is not an All Points employee, and we have no knowledge of the events written in this paragraph. Amanda never reported this information to All Points.

**In Sept 2023, I report the continued problems to All Points. I mentioned I had to work off the clock to meet the unreasonable demands and understaffing. Rather than receive aid for the problems or compensation for the hours, I was told that I was hard to work with despite always praising me in the past about my glowing customer judos helping them with their investors.**

Between the period of July 13 and September 18, Robyn Smith and Dianne Brief (Leidos HR) had a couple of verbal conversations regarding Amanda's difficulties on the job. It had been reported that Amanda was having a difficult time taking direction from her Leidos Leads (Brent Wong and Christy Murray) and that she was generally combative when being asked to do something she doesn't want to do or doesn't agree with. All Points was copied on or sent several emails during this time that are included as below:

*Attachment 9 – Flagged*
*Attachment 10 – Issue*
*Attachment 11 – Amanda Kondrat'yev – negative interaction with customer*
*Attachment 12 – Clarification – Adjunct Space*

On Monday, September 18, 2023, at 5:20 pm, Amanda sent an email to Ed Scarborough and Robyn Smith. This email is included as *Attachment 13 – Targeting by Management*. Robyn Smith responded on the same day at 5:46 pm. This response is included in Attachment 13 and addresses the issues that had been brought to All Points' attention regarding Amanda's difficulties on the job.

On Monday, September 18, 2023, at 6:14 pm, Robyn Smith and Ed Scarborough were included in an email from Amanda to Brent Wong. This email correspondence is included as *Attachment 14 – 7 Day Neglected List*. In this email, Amanda states she is "working off the clock after hours and during my lunch." Working off the clock was addressed in Robyn Smith's response that is included in Attachment 13.

**I requested ADA accommodations in writing and offered medical documentation. I was told the ADA is only for significant life activities and they would not provide any accommodations. I found reasonable accommodations online and called directly to disclose my specific diagnoses. I was interrupted and told that this is exactly my problem, I won't just be quiet and listen. I have to keep asking. Robyn said if I couldn't just stop asking questions and do my job then I wouldn't have one anymore. Male techs weren't called combative or reprimanded even when screaming at management calling them useless and incompetent or during meetings.**

The email thread included in *Attachment 13 – Targeting by Management* includes information regarding an inquiry if her "disability/disorder that can make me feel a strong need to ask questions and for things to make sense" can be covered by the ADA. Robyn Smith's response is also included in *Attachment 13*. Upon receiving my response, Amanda called Robyn Smith on September 19th for clarification and began arguing with her. Amanda would interrupt before Robyn could finish her sentences. Robyn Smith did state to her that this exact same kind of behavior is what is perceived by her Leidos management as

190 S. Sykes Creek Parkway, Suite 4     Merritt Island, FL 32952

combative.  Constant arguing with her management is not acceptable and that if she didn't stop this type of behavior it could result in her being formally reprimanded or even terminated.

**I reached out to NASA ODEO via email to see if they could help.  I was told that there was not much they could do at that time since it was a contractor issue.  Brian Lynn from Leidos came to JSC in Oct 2023 and told us that a tech position would be lost to meet the contract.**

Brian Lynn is not an All Points employee, and we have no knowledge of the events written in this paragraph.

**12/29/23 Susana Kane assaulted me by pushing boxes onto me after referring to herself as "my new Brent."  I reached out to Christy on Teams who I saw was online and had been present when Susana had yelled at me the day before.  Christy did not respond to me and instead contacted Ed Scarborough.  I emailed Robyn and Ed before making a formal report about the incident with NASA Security at the request of the QM, John Walters, who said employee disputes are above his pay grade.  Leidos repeatedly has lied about the events of the day.**

On Friday, December 29, 2023, Amanda emailed Ed Scarborough and Robyn Smith stating that she was threatened by another tech, Susana Kane (a Leidos employee) and was assaulted while sitting at her desk.  This email is included as *Attachment 15 – Assaulted at Work*.  Robyn Smith requested her to send a written report of what happened and to go ahead and report to Leidos.  Prior to Amanda reporting this to Ed and Robyn, Brent Wong and Christy Murray had called Ed and stated that what Amanda was claiming was not true and that NASA security was doing an investigation.

**Neither Brent nor Christy was on site during the assault, but I have an email from Ed that said that Christy told them nothing happened.  NASA security officials took 3 statements.  Susana admits she touched the boxes, Christian Garcia says that he had his back turned when it happened, and my statement included information that I had been making a call that went to voicemail so there was evidence.  NASA security asked me if I would like to start an investigation and both of us turn in our badges and be unable to work or if I thought that we could go home early and work it out with management after New Years holiday.  I chose not to have an investigation.  Ed called said not return to site until NASA could complete an investigation.  The assailant returned without any delay.**

As shown in *Attachment 15 – Assaulted at Work*, Ed stated he called Amanda and left her a message to stay home during NASA's investigation.

**On 1/4/24 Ed said I was terminated for making a false report and that NASA no longer could have me working on site.  I filed for unemployment with the Texas Workforce Commission and All Points denied due to NASA security saying that I made a false report.**

On January 4, 2024, at 3:21 pm, Ed Scarborough and Robyn Smith received an email from Brent Wong. This email is included at *Attachment 16 – Amanda Kondrat'yev's Personal Effects.*

All Points received an Unemployment notification from the State of Texas.  All Points dutifully completed the notification with the required information and stated that Amanda Kondrat'yev had been terminated for cause for falsely reporting she had been assaulted at work.  Initially, the State of Texas denied the unemployment request.  Amanda Kondrat'yev appealed and was granted a hearing.  The hearing resulting in Amanda being granted unemployment benefits and All Points did not appeal that decision.

**I notified NASA ODEO to begin an investigation because of the implication of NASA in my termination.  I received a Counselor's Report from the finding of the ODEO informal investigation which show that NASA never investigated nor stated no assault occurred, no police report was**

190 S. Sykes Creek Parkway, Suite 4     Merritt Island, FL 32952

**reviewed, Leidos repeatedly misrepresented the facts and evidence and failed to meet to resolve the issue as they had told security.**

All Points has no knowledge of the events written in this paragraph.

**Both companies have made false statements to and about me. I've been unable to find work due to the damage to my reputation and defamation of character. My family and I have suffered tremendously. I would like to pursue all legal actions and remedies available under federal and state, both punitory and compensatory, for all the injustices that have occurred.**

All Points has made no false statements about Amanda. All Points has received no calls or inquiries regarding Amanda's employment and has received no requests for recommendations for employment. All Points has taken no action that would damage Amanda's reputation, and All Points has taken no action that would prevent Amanda from being employed.

**I believe I was sexually harassed, subjected to different terms and conditions, denied reasonable accommodations, retaliated against and terminated based on my Sex, Female, disability and participating in a protected activity, in violation of the Americans with Disabilities Act of ADA 1900 (ADA) and Title VII of the Civil Rights Act of 1964.**

Amanda Kondrat'yev was not discharged in retaliation for engaging in any protected activity under Title VII of the Civil Rights Act. She was not terminated based on her sex nor her disability. Documentation shows evidence of All Points management and Leidos management attempts to work with Amanda and guide her through acceptable behavior in the workplace. Also included for reference is an email received on November 27 from Christy Murray to Ed Scarborough and Robyn Smith. This email is included as *Attachment 17 – Observed Negative Behavior.*

Amanda Kondrat'yev was terminated because Leidos requested we retrieve her personal belongings and remove her from the contract. Leidos stated NASA security was present while her personal belongings were being gathered. It was All Points understanding that Amanda was being removed from the contract because of the NASA Security investigation regarding the assault claim.

All Points made several requests to Leidos and JSC Security to obtain a copy of the report but was never able to get a copy. Please see emails as attached below:

*Attachment 18 – JSC Security Report regarding Amanda Kondrat'yev*
*Attachment 19 – JSC Security Report regarding Amanda Kondrat'yev 2*
*Attachment 20 - JSC Security Report regarding Amanda Kondrat'yev 3*
*Attachment 21 – Security Incident Report #JSC106469*

A Sworn Attestations have been included in Documentation from Ed Scarborough, Vice President/General Manger.

I certify I am an officer of the company and authorized to speak officially on behalf of All Points Logistics, LLC regarding this matter.

Sincerely,

Robyn Smith
Chief Administrative Officer

190 S. Sykes Creek Parkway, Suite 4    Merritt Island, FL 32952

APL_000011

rsmith@allpointsllc.com
321.735.8642

190 S. Sykes Creek Parkway, Suite 4    Merritt Island, FL 32952

**APL_000012**



November 21, 2024


U.S. Equal Employment Opportunity Commission
Houston District Office
1919 Smith Street, 6th Floor
Houston, TX 77002


RE:    All Points Logistics LLC Position Statement
       EEOC Charge Number:  460-2024-04943


### SWORN ATTESTATION


I, Charles Edwin (Ed) Scarborough, Sr. Vice President and General Manager for the NEST contract do hereby attest to the accuracy of facts presented in All Points Logistics, LLC Position Statement that has been provided in response to EEOC Charge Number: 460-2024-04943.


Signed:


_____          _____
Charles Edwin Scarborough                              Date

21 NOV 2024


190 S. Sykes Creek Parkway, Suite 4    Merritt Island, FL 32952


APL_000013

# EXHIBIT 10

EEOC Notice of Amended Charge of Discrimination · Leidos

(EEOC Charge No. 460-2024-09354, amended Nov. 18, 2024)

Kondrat'yev v. NASA Johnson Space Center, et al.

Civil Action No. 4:25-cv-04785 (S.D. Tex.)



**U.S. Equal Employment Opportunity Commission**
**Houston District Office**
1919 Smith Street, 6th Floor
Houston, TX 77002
(346) 327-7700

## NOTICE OF AMENDED CHARGE OF DISCRIMINATION

(This Notice replaces EEOC FORM 131)

11/18/2024

**To:**  LEIDOS INNOV WEBSTER TX 7085
555 FORGE RIVER RD

Webster, TX 77598

This is notice that a charge of employment discrimination has been filed with the EEOC against your organization by Amanda L Kondrat'yev under: The Americans With Disabilities Act of 1990 (ADA), Title VII of the Civil Rights Act of 1964 (Title VII). The circumstances of the alleged discrimination are based on Disability, Retaliation, Sex, and involve issues of Reasonable Accommodation, Sexual Harassment, Discharge that are alleged to have occurred on or about 01/04/2024.

The Digital Charge System makes investigations and communications with charging parties and respondents more efficient by digitizing charge documents. The amended charge is available for you to download from the EEOC Respondent Portal, EEOC's secure online system.

Please visit the EEOC Respondent Portal (https://arc.eeoc.gov/rsp/login.jsf) to view the amended charge within ten (10) days of receiving this Notice. Once you log into the Portal, you can view and download the amended charge, and electronically submit documents to EEOC. The Portal will also advise you of possible actions or responses and identify your EEOC point of contact for this amended charge.

**<u>Preservation of Records Requirement When a Charge has Been Filed</u>**

The EEOC regulations require respondents to preserve all payroll and personnel records relevant to the charge until final disposition of the charge or litigation. 29 CFR §1602.14. For more information on your obligation to preserve records, see https://www.eeoc.gov/employers/recordkeeping-requirements.

**<u>Non-Retaliation Requirements</u>**

The laws enforced by the EEOC prohibit retaliation against any individual because s/he has filed a charge, testified, assisted or participated in an investigation, proceeding or hearing under these laws. Persons filing charges of discrimination are advised of these Non-Retaliation Requirements and are instructed to notify the EEOC if any attempt at retaliation is made. For more information, see http://www.eeoc.gov/laws/types/facts-retal.cfm.

**<u>Legal Representation</u>**

Although you do not have to be represented by an attorney while we handle this charge, you have a right, and may wish to retain an attorney to represent you. If you do retain an attorney, please provide the attorney's contact information when you log in to the online system.

Please retain this notice for your records.