**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **AMANDA L. KONDRAT'YEV,** | § | |
| *Plaintiff*, | § | |
| vs. | § | **Civil Action No. 4:25-CV-04785** |
| **NASA JOHNSON SPACE CENTER, ET AL** | § | |
| *Defendants*. | § | |

**DEFENDANT ALL POINTS LOGISTICS LLC'S**
**MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**
**PURSUANT TO 12(b)(6)**

# TABLE OF CONTENTS

**Page**

I. NATURE AND STAGE OF PROCEEDING ..... 12

A. Non-Appearing Individual Defendants ..... 13

II. FACTUAL BACKGROUND ..... 14

III. ISSUES TO BE RULED UPON AND STANDARD OF REVIEW ..... 15

A. Rule 12(b)(6) ..... 16

B. Exhaustion of Administrative Remedies ..... 17

C. Statute of Limitations ..... 17

IV. SUMMARY OF THE ARGUMENT ..... 19

V. ARGUMENT AND AUTHORITIES ..... 20

A. SEVERAL CLAIMS MUST BE DISMISSED FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES. ..... 20

1. Title VII Race Discrimination (Count XXV) ..... 20

B. MULTIPLE CLAIMS ARE BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS. ..... 22

1. Title VII and ADA Discrete Acts ..... 22

2. Hostile Work Environment ..... 24

3. Defamation (Count X) — One-Year Limitations ..... 25

4. State-Law Torts and Conspiracy Claim — Two-Year Limitations ..... 26

5. FLSA and Equal Pay Act — Two/Three-Year Limitations ..... 28

C. EACH CLAIM INDEPENDENTLY FAILS TO STATE A PLAUSIBLE CLAIM FOR RELIEF. ..... 29

1. ADA Disability Discrimination (Count I) ..... 29

2. ADA Failure to Accommodate (Count II) ..... 32

3. ADA Retaliation (Count III) .......... 33

4. Equal Pay Act (Count V) .......... 34

5. Title VII Sex Discrimination (Count VI) .......... 34

6. Title VII Sexual Harassment / Hostile Work Environment (Count VII) .......... 37

7. Title VII Retaliation (Count VIII) .......... 39

8. Defamation Per Se (Count X) .......... 39

9. FLSA Retaliation (Count XI) .......... 40

10. Federal Contractor Whistleblower Protection (Count XII) .......... 41

11. Intentional Infliction of Emotional Distress (Count XIII) .......... 42

12. Civil Conspiracy (Count XIV) .......... 42

13. Tortious Interference with Prospective Employment (Count XV) .......... 43

14. Negligence (Count XVI) .......... 43

15. 42 U.S.C. § 1981 Race Discrimination (Count XVII) .......... 44

16. 42 U.S.C. § 1981 Retaliation (Count XVIII) .......... 45

17. 42 U.S.C. § 1981 Interference with Contract Rights (Count XIX) .......... 45

18. Negligent Hiring, Supervision, and Retention (Count XX) .......... 46

19. Fraud / Fraudulent Misrepresentation (Count XXI) .......... 46

20. 42 U.S.C. § 1985(3) Civil Rights Conspiracy (Count XXII) .......... 47

21. Promissory Estoppel (Count XXIII) .......... 47

22. Rehabilitation Act § 504 (Count XXIV) .......... 48

23. Title VII Race Discrimination (Count XXV) .......... 48

24. ADA Hostile Work Environment (Count XXVI) .......... 49

25. Retaliatory Hostile Work Environment (Count XXVII) .................. 51

D. PLAINTIFF'S COMMON-LAW CLAIMS ARE PREEMPTED OR DISPLACED BY STATUTORY SCHEMES. .......................................... 51

VI. CONCLUSION AND PRAYER ................................................................ 52

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agar Corp. v. Electro Circuits Int'l, LLC*,
580 S.W.3d 136 (Tex. 2019) .......... 42

*Agoh v. Hyatt Corp.*,
992 F. Supp. 2d 722 (S.D. Tex. 2014) .......... 17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 16, 17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 16

*Benchmark Elecs., Inc. v. J.M. Huber Corp.*,
343 F.3d 719 (5th Cir. 2003) .......... 46

*Boyles v. Kerr*,
855 S.W.2d 593 (Tex. 1993) .......... 44

*Campbell v. City of San Antonio*,
43 F.3d 973 (5th Cir. 1995) .......... 16

*Cantú v. Moody*,
933 F.3d 414 (5th Cir. 2019) .......... 47

*Castro v. Tex. Dep't of Crim. Just.*,
541 F. App'x 374 (5th Cir. 2013) .......... 21, 48

*Chance v. Rice Univ.*,
984 F.2d 151 (5th Cir. 1993) .......... 34

*Cicalese v. Univ. of Tex. Med. Branch*,
924 F.3d 762 (5th Cir. 2019) .......... 29, 35

*Clark Cnty. Sch. Dist. v. Breeden*,
532 U.S. 268 (2001) .......... 33, 39

*Clark v. Champion Nat'l Sec., Inc.*,
952 F.3d 570 (5th Cir. 2020) .......... 32, 50

*Coinmach Corp. v. Aspenwood Apartment Corp.*,
417 S.W.3d 909 (Tex. 2013) ........ 43

*Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*,
589 U.S. 327 (2020) ........ 44, 45

*Creditwatch, Inc. v. Jackson*,
157 S.W.3d 814 (Tex. 2005) ........ 42

*Davis v. Fort Bend County*,
765 F.3d 480 (5th Cir. 2014) ........ 39

*Domino's Pizza, Inc. v. McDonald*,
546 U.S. 470 (2006) ........ 45

*E.E.O.C. v. LHC Grp., Inc.*,
773 F.3d 688 (5th Cir. 2014) ........ 30

*Endeavor Energy Res., L.P. v. Cuevas*,
593 S.W.3d 307 (Tex. 2019) ........ 46

*English v. Fischer*,
660 S.W.2d 521 (Tex. 1983) ........ 47

*FDIC v. Conner*,
20 F.3d 1376 (5th Cir. 1994) ........ 18

*Feist v. La. Dep't of Justice*,
730 F.3d 450 (5th Cir. 2013) ........ 32

*Flowers v. S. Reg'l Physician Servs., Inc.*,
247 F.3d 229 (5th Cir. 2001) ........ 49

*Flynn v. Distinctive Home Care, Inc.*,
812 F.3d 422 (5th Cir. 2016) ........ 48

*Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*,
960 S.W.2d 41 (Tex. 1998) ........ 46

*Fort Bend County v. Davis*,
587 U.S. 541 (2019) ........ 17

*Gardner v. CLC of Pascagoula, L.L.C.*,
915 F.3d 320 (5th Cir. 2019) ........ 37

*Grant v. Lone Star Co.*,
21 F.3d 649 (5th Cir. 1994) .......... 13

*Great Am. Fed. Sav. & Loan Ass'n v. Novotny*,
442 U.S. 366 (1979) .......... 47

*Griffin v. Breckenridge*,
403 U.S. 88 (1971) .......... 47

*Griffin v. City of Dallas*,
26 F.3d 610 (5th Cir. 1994) .......... 17, 22

*Hagan v. Echostar Satellite, L.L.C.*,
529 F.3d 617 (5th Cir. 2008) .......... 40

*Halferty v. Pulse Drug Co.*,
821 F.2d 261 (5th Cir. 1987) .......... 28, 29

*Halter v. Beauty Basics, Inc.*,
No. 4:22-cv-1659, 2023 WL 4054713 (S.D. Tex. May 25, 2023) .......... 37

*Hamilton v. Dallas County*,
79 F.4th 494 (5th Cir. 2023) .......... 34

*Heath v. Bd. of Supervisors for S. Univ.*,
850 F.3d 731 (5th Cir. 2017) .......... 38, 51

*Helton v. Clements*,
832 F.2d 332 (5th Cir. 1987) .......... 26, 27

*Henson v. Bell Helicopter Textron, Inc.*,
128 F. App'x 387 (5th Cir. 2005) .......... 33

*Hernandez v. Yellow Transp., Inc.*,
670 F.3d 644 (5th Cir. 2012) .......... 37

*Hoffmann-La Roche Inc. v. Zeltwanger*,
144 S.W.3d 438 (Tex. 2004) .......... 42, 51

*Holmes v. Greyhound Lines, Inc.*,
757 F.2d 1563 (5th Cir. 1985) .......... 18

*IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*,
143 S.W.3d 794 (Tex. 2004) .......... 43

*Indest v. Freeman Decorating, Inc.*,
164 F.3d 258 (5th Cir. 1999) .......... 13

*Jackson v. City of Hearne, Texas*,
959 F.3d 194 (5th Cir. 2020) .......... 27

*Johnson v. Crown Enters., Inc.*,
398 F.3d 339 (5th Cir. 2005) .......... 26

*Kansa Reinsurance Co. v. Congressional Mortgage Corp. of Tex.*,
20 F.3d 1362 (5th Cir. 1994) .......... 16

*Kharb v. Ericsson, Inc.*,
2018 WL 8369848 (E.D. Tex. Nov. 5, 2018) .......... 28, 29

*Kummerle v. EMJ Corp.*,
3:11–CV–2839–SAF, 2012 WL 2995065 (N.D.Tex. July 23, 2010) .......... 37

*Lee v. Kan. City S. Ry.*,
574 F.3d 253 (5th Cir.2009) .......... 36

*Lemonia v. Westlake Mgmt. Servs., Inc.*,
No. 22-30630, 2023 WL 6878915 (5th Cir. 2023) .......... 51

*In re Lipsky*,
460 S.W.3d 579 (Tex. 2015) .......... 39

*Lopez v. AT&T Mobility Servs. LLC*,
767 F. Supp. 3d 406 (W.D. Tex. 2025) .......... 24, 38

*Lyons v. Katy Indep. Sch. Dist.*,
964 F.3d 298 (5th Cir. 2020) .......... 34, 39

*Massey v. Armco Steel Co.*,
652 S.W.2d 932 (Tex. 1983) .......... 42

*McClain v. Lufkin Indus., Inc.*,
519 F.3d 264 (5th Cir. 2008) .......... 17

*Muldrow v. City of St. Louis*,
601 U.S. 346 (2024) .......... 34

*Nat'l R.R. Passenger Corp. v. Morgan*,
536 U.S. 101 (2002) .......... 17, 23, 24

*Olivarez v. T-mobile USA, Inc.*,
997 F.3d 595 (5th Cir. 2021) ........................................................................ 36

*Pacheco v. Mineta*,
448 F.3d 783 (5th Cir. 2006) ............................................................ 17, 21, 48

*Patton v. Jacobs Eng'g Grp., Inc.*,
874 F.3d 437 (5th Cir. 2017) ........................................................................ 32

*Provident Life & Accident Ins. Co. v. Knott*,
128 S.W.3d 211 (Tex. 2003)......................................................................... 26

*Robertson v. Intratek Computer, Inc.*,
976 F.3d 575 (5th Cir. 2020) ........................................................................ 41

*Rodriguez v. City of Corpus Christi*,
129 F.4th 890 (5th Cir. 2025) ................................................................. 40, 41

*Seaman v. CSPH, Inc.*,
179 F.3d 297 (5th Cir. 1999) ........................................................................ 33

*Strife v. Aldine Indep. Sch. Dist.*,
138 F.4th 237 (5th Cir. 2025) ............................................................ 32, 49, 50

*Trevino v. RDL Energy Servs., L.P.*,
No. CV H-14-1936, 2016 WL 11477431 (S.D. Tex. July 21, 2016), on *reconsideration in part*, No. CV H-14-1936, 2017 WL 1167160 (S.D. Tex. Mar. 29, 2017) ............................................................................... 28

*Twyman v. Twyman*,
855 S.W.2d 619 (Tex. 1993)......................................................................... 42

*Velocity Databank, Inc. v. Shell Offshore, Inc.*,
456 S.W.3d 605 (Tex. App.—Houston [1st Dist.] 2014, pet. denied).................. 25, 40

*Waffle House, Inc. v. Williams*,
313 S.W.3d 796 (Tex. 2010)............................................................ 42, 46, 51

*Walker v. Beaumont Indep. Sch. Dist.*,
2019 WL 4458378 (5th Cir. Sept. 18, 2019) ................................................. 16

*Watson v. Ragle Inc.*,
No. 4:25-CV-00667-P, 2026 WL 958691 (N.D. Tex. Feb. 10, 2026), *report and recommendation adopted*, 2026 WL 957723 (N.D. Tex. Apr. 8, 2026) ....................................................................................................... 40

*Wiggins v. Poyner Spruill, L.L.P.*,
No. 24-20011, 2024 WL 4212894 (5th Cir. Sept. 17, 2024) ..................................... 40

*Yeh v. Chesloff*,
483 S.W.3d 108 (Tex. App.—Houston [1st Dist.] 2015, pet. denied)........................ 50

*Zamora v. City of Houston*,
798 F.3d 326 (5th Cir. 2015) ........................................................................ 31, 35

**Statutes**

29 U.S.C. § 206(d)(1) ........................................................................................ 34

29 U.S.C. § 215(a)(3) ........................................................................................ 40

29 U.S.C. § 255(a) ............................................................................................ 28

41 U.S.C. § 4712 .............................................................................................. 12

41 U.S.C. § 4712(a)(1) ...................................................................................... 41

42 U.S.C. § 1981 ....................................................................... 12, 15, 44, 45

42 U.S.C. § 1985(3)......................................................................................*passim*

42 U.S.C. § 2000e-2(a)(1) ................................................................................ 34

42 U.S.C. § 2000e-5(e)(1) ............................................................................ 17, 22

Rehabilitation Act § 504................................................................................ 15, 48

Tex. Civ. Prac. & Rem. Code § 16.002(a) ....................................................... 25, 40

Tex. Civ. Prac. & Rem. Code § 16.003(a) ........................................................... 26

Tex. Lab. Code § 301.074 .................................................................................. 39

Tex. Lab. Code § 408.001(a)............................................................................... 44

Tex. Lab. Code § 408.001(b)............................................................................... 44

**Rules**

Fed. R. Civ. P. 8(a)(2) ...................................................................................... 19

Fed. R. Civ. P. 8(d)(1) ...................................................................................... 19

Fed. R. Civ. P. 9(b) .......... 46

Fed. R. Civ. P. 10(b) .......... 19

Fed. R. Civ. P. 12(b)(2) .......... 14

Fed. R. Civ. P. 12(b)(6) .......... 13, 16, 19

Fed. R. Civ. P. 15(c) .......... 18, 23, 25

Fed. R. Civ. P. 15(c)(1)(B) .......... 18, 26, 27

# I. NATURE AND STAGE OF PROCEEDING

Plaintiff Amanda L. Kondrat'yev ("Plaintiff"), proceeding pro se, initiated this employment action in this Court on October 3, 2025, against NASA Johnson Space Center, Leidos Holdings, Inc., and All Points Logistics LLC ("All Points"), the latter was her employer of record. Plaintiff's six-page Original Complaint asserted claims under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Americans with Disabilities Act ("ADA") arising from her employment as a Personal Computer Support Technician at NASA Johnson Space Center. Plaintiff alleged that she was subjected to race and sex discrimination, disability discrimination and a failure to accommodate, sexual harassment and a hostile work environment, unequal terms and conditions of employment, retaliation, a failure to promote, and unlawful termination. *See* Doc. 1.

All Points filed its Answer to the Original Complaint on January 28, 2026. On March 25, 2026, the Court entered a Docket Control Order establishing April 24, 2026, as the deadline for amended pleadings. Plaintiff filed her First Amended Complaint ("Amended Complaint") on that deadline. *See* Docs. 23, 42, 45.

The Amended Complaint expands Plaintiff's action substantially, exponentially growing her six page original complaint to **259 pages**, adding numerous corporate and individual defendants and asserting **29** causes of action against all Defendants. As to All Points, Plaintiff makes 25 claims under the ADA, Title VII, the Equal Pay Act, the Fair Labor Standards Act, the Rehabilitation Act, 41 U.S.C. § 4712, 42 U.S.C. §§ 1981 and 1985(3), and Texas common law. Plaintiff's claims against All Points include disability, sex, and race discrimination; failure to accommodate; retaliation; sexual harassment and

hostile-work-environment theories; wage and whistleblower claims; defamation; intentional infliction of emotional distress; civil conspiracy; tortious interference; negligence; negligent hiring, supervision, and retention; fraud; and promissory estoppel. *See* Doc. 45.

On May 8, 2026, All Points, NASA, and the Leidos defendants requested a pre-motion conference regarding their anticipated motions to dismiss the Amended Complaint. On May 11, 2026, the Court determined that a conference was unnecessary and granted Defendants leave to file any and all applicable motions to dismiss. *See* Docs. 46, 48. All Points now moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss with prejudice all claims asserted against it in the Amended Complaint.

### A. Non-Appearing Individual Defendants

All Points files this motion solely on its own behalf. Individual defendants Robyn Smith and Charles "Ed" Scarborough have not been properly served in this action and are not making an appearance. They do not waive service of process, personal jurisdiction, or any other defenses available to them. To the extent the Amended Complaint purports to assert Title VII or ADA claims against Smith and Scarborough in their individual capacities, such claims are facially barred because neither Title VII nor the ADA imposes individual liability on employees or supervisors. *See Grant v. Lone Star Co.*, 21 F.3d 649, 653 (5th Cir. 1994) (no individual liability under Title VII); *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir. 1999) (same for ADA). Additionally, Smith and Scarborough are domiciled in Florida and the Amended Complaint does not plead facts

establishing this Court's personal jurisdiction over them under Rule 12(b)(2). All Points preserves their rights and defenses without waiver.

## II. FACTUAL BACKGROUND

All Points is a Service-Disabled Veteran Owned Small Business headquartered in Merritt Island, Florida, with approximately 300 employees operating in 26 states. All Points was a subcontractor to Leidos, Inc. ("Leidos"), the prime contractor on the NASA End-User Services and Technologies ("NEST") contract at NASA Johnson Space Center ("JSC"). *See* Ex. 1, All Points' Position Statement at 1.

All Points offered Plaintiff a position as a Personal Computer Support Technician on the NEST contract on August 20, 2022, with a start date of September 19, 2022. The offer letter expressly stated that employment was at-will and could be terminated at any time by either party. *See* Ex. 2, Offer Letter. During onboarding with All Points, Plaintiff certified her disability status as "No." *See* Ex. 3, Statutory Compliance Panel.

Under the NEST contract structure, Leidos provided day-to-day oversight and management to All Points employees, including Plaintiff. Brent Wong ("Wong"), the alleged primary harasser identified in the Amended Complaint, was a Leidos employee, not an All Points employee. Susana Kane ("Kane"), another individual identified in the Amended Complaint, was also a Leidos employee. *See* Ex. 1 at 2–3.

On December 29, 2023, Leidos notified All Points that Plaintiff had made a false allegation about being assaulted by another employee and that NASA security was performing an investigation. Plaintiff was terminated on January 4, 2024 as a result of

Leidos request that All Points remove Plaintiff from the NEST contract. All Points understood the removal was related to the NASA Security investigation regarding an assault allegation made by Plaintiff on December 29, 2023. *See* Ex. 1 at 6–7.

## III. ISSUES TO BE RULED UPON AND STANDARD OF REVIEW

All Points moves to dismiss all 25 of Plaintiff's claims against it. The issues to be ruled on within the Motion to Dismiss include whether Plaintiff has sufficiently pled a claim against All Points for:

1. Count I - ADA Disability Discrimination
2. Count II - ADA Failure to Accommodate
3. Count III - ADA Retaliation
4. Count V - Equal Pay Act
5. Count VI - Title VII Sex Discrimination
6. Count VII - Title VII Sexual Harassment
7. Count VIII - Title VII Retaliation
8. Count X - Defamation Per Se
9. Count XI - FLSA Retaliation
10. Count XII - Federal Contractor Whistleblower Protection
11. Count XIII - Intentional Infliction of Emotional Distress
12. Count XIV - Civil Conspiracy
13. Count XV - Tortious Interference with Prospective Employment
14. Count XVI - Negligence
15. Count XVII - 42 U.S.C. 1981 Race Discrimination
16. Count XVIII - 42 U.S.C. 1981 Retaliation
17. Count XIX - 42 U.S.C. 1981 Interference with Contract Rights
18. Count XX - Negligent Hiring, Supervision, and Retention
19. Count XXI - Fraud / Fraudulent Misrepresentation
20. Count XXII - 42 U.S.C. 1985(3) Civil Rights Conspiracy
21. Count XXIII - Promissory Estoppel
22. Count XXIV - Rehabilitation Act 504
23. Count XXV - Title VII Race Discrimination
24. Count XXVI - ADA Hostile Work Environment; and
25. Count XXVII - Retaliatory Hostile Work Environment

Plaintiff has failed to plead a sufficient legal and factual basis for all 25 claims against All Points, and her claims are subject to dismissal under Rule 12(b)(6), the applicable statute of limitations, and her failure to exhaust administrative remedies.

**A. Rule 12(b)(6)**

In deciding a Rule 12(b)(6) motion, a court's inquiry is limited to "(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Walker v. Beaumont Indep. Sch. Dist.*, 2019 WL 4458378, at *4 (5th Cir. Sept. 18, 2019). The plaintiff's complaint must contain allegations of every material point necessary to sustain recovery. *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995). A motion to dismiss should also be granted when a successful affirmative defense appears on the face of the pleadings. *Kansa Reinsurance Co. v. Congressional Mortgage Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court "accept[s] all well-pleaded facts as true and view[s] those facts in the light most favorable to the plaintiff," but is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of

the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Plaintiff's claims, as more fully discussed below, fall short of this requirement.

### B. Exhaustion of Administrative Remedies

Before filing suit under Title VII or the ADA, a plaintiff must exhaust administrative remedies by filing a charge with the EEOC. *Fort Bend County v. Davis*, 587 U.S. 541 (2019). Importantly, the scope of a Title VII/ADA lawsuit is limited to the scope of the EEOC charge and any claims "reasonably related" to the charge. *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006); *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008). Numerous claims that Plaintiff asserts in the Amended Complaints are barred due to her failure to exhaust administrative remedies.

### C. Statute of Limitations

In states such as Texas, which has a state administrative mechanism for discrimination complaints, a plaintiff must file a Title VII charge of discrimination with the EEOC no later than 300 days after the discriminatory conduct is alleged to have occurred. 42 U.S.C. §2000e-5(e)(1); *Griffin v. City of Dallas*, 26 F.3d 610, 612 (5th Cir. 1994). Failure to file a Charge within that 300-day window will result in the claim being untimely and subject to dismissal. *Agoh v. Hyatt Corp.*, 992 F. Supp. 2d 722, 732 (S.D. Tex. 2014). Plaintiff filed her Charge against All Points on October 10, 2024. Accordingly, any discrete discriminatory or retaliatory act occurring before December 15, 2023—300 days before the Charge was filed—is untimely. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). A number of Plaintiff's claims, again referenced below, are untimely.

Federal Rule of Civil Procedure 15(c) does not alter these administrative charge-filing requirements. Rule 15(c) governs whether an amended pleading filed in court relates back to the date of an earlier judicial pleading; it does not relate to nor extend the 300-day EEOC charge-filing period or revive discrete Title VII or ADA acts for which no timely administrative charge was filed. Accordingly, Plaintiff cannot invoke Rule 15(c) to render actionable any discrete discriminatory or retaliatory act occurring before December 15, 2023.

For claims whose limitations periods are measured by the date suit was filed, Rule 15(c)(1)(B) permits relation back *only* when the amended pleading asserts a claim arising from the "conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). Although an amendment may relate back when it merely amplifies previously alleged facts or asserts a new legal theory based on the same operative facts, it does not relate back when it introduces different conduct, separate transactions, or a distinct factual predicate of which the original pleading provided no notice. *FDIC v. Conner*, 20 F.3d 1376, 1385–86 (5th Cir. 1994); *Holmes v. Greyhound Lines, Inc.*, 757 F.2d 1563, 1566 (5th Cir. 1985). Notice of the underlying conduct—not merely the existence of an employment dispute—is the critical inquiry.

Plaintiff's Original Complaint asserted claims concerning alleged discrimination, harassment, denial of accommodations, retaliation, and termination. Her Amended Complaint substantially expanded the case by adding numerous statutory and common-law causes of action based on additional alleged conduct, including, for example, defamation per se. Whether a newly asserted claim relates back must therefore be evaluated claim by

claim. Any claim that depends on conduct, statements, transactions, or injuries not set out, or attempted to be set out, in the Original Complaint does not relate back merely because it arose during Plaintiff's employment or bears some general connection to her termination. All Points addresses the timeliness and relation back of each such claim below.

## IV. SUMMARY OF THE ARGUMENT

All Points respectfully moves this Court pursuant to Federal Rules of Civil Procedure 12(b)(6) to dismiss with prejudice all claims asserted against it in Plaintiff's Amended Complaint because each claim is either barred by limitations, barred due to Plaintiff's failure to exhaust remedies, or preempted by statutory administrative scheme. (Doc. 45). In support thereof, All Points states as follows:

Plaintiff's Amended Complaint is a 259-page document that asserts 25 causes of action against All Points. The Amended Complaint incorporates all prior allegations into every count, includes extensive immaterial factual narrative, legal argument, conclusory assertions, and speculative allegations that obscure the actual bases for liability. It is the quintessential "shotgun pleading" repeatedly condemned by the Fifth Circuit. The Amended Complaint fails to give All Points fair notice of which specific factual allegations support which specific claims, in violation of Rules 8(a)(2), 8(d)(1), and 10(b).

Beyond its structural deficiencies, the Amended Complaint is substantively deficient. Several claims exceed the scope of Plaintiff's EEOC Charge of Discrimination, which identified only disability, retaliation, and sex as bases for discrimination and referenced only the ADA and Title VII. Plaintiff never raised a claim for race

discrimination. Other claims are barred by the applicable statute of limitations. Still others fail to state plausible claims because the Amended Complaint does not allege facts sufficient to establish the required elements. And Plaintiff's common-law tort claims are preempted by or displaced by the comprehensive statutory remedial schemes that govern her federal employment-discrimination claims.

For these reasons, and as set forth in detail below, All Points respectfully requests that this Court dismiss all twenty-five claims asserted against it with prejudice.

## V. ARGUMENT AND AUTHORITIES

### A. SEVERAL CLAIMS MUST BE DISMISSED FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES.

Plaintiff's EEOC Charge identified only disability discrimination, sex/gender discrimination (and sexual harassment), and retaliation. *See* Ex. 4. The Charge states that Plaintiff believed she was "sexually harassed, subjected to different terms and conditions, denied reasonable accommodations, retaliated against and terminated based on my Sex, Female, disability and participating in a protected activity, in violation of the [ADA] and Title VII." *Id.* The Charge did not check "Race" or any other basis, nor does its narrative contain any allegations of race-based discrimination.

#### *1. Title VII Race Discrimination (Count XXV)*

Plaintiff's newly asserted Title VII race-discrimination claim exceeds the scope of her administrative Charge and should be dismissed for failure to exhaust. Title VII litigation is limited to claims asserted in the administrative charge and those that could reasonably be expected to grow out of the EEOC's investigation of the factual allegations

actually presented. *Pacheco*, 448 F.3d at 789. *Castro v. Tex. Dep't of Crim. Just.*, 541 F. App'x 374, 379 (5th Cir. 2013). Although an EEOC charge is construed liberally, the inquiry remains tied to the factual substance of the charge; a plaintiff may not use a subsequent lawsuit to introduce an entirely different basis of discrimination that the charge gave the employer and the EEOC no reason to investigate. *Pacheco,* 448 F.3d at 789.

That is what Plaintiff attempts here. During her employment, Plaintiff did not complain to All Points that she was being treated differently because of her race. Her complaints concerned sexual harassment, disability and accommodation issues, workplace treatment, and retaliation—not race. She does not allege that she told All Points that anyone made race-based remarks, treated her differently because she was Asian, or otherwise discriminated against her based on race.

More importantly, Plaintiff's signed EEOC Charge against All Points does not allege race discrimination. Plaintiff acknowledges in the Amended Complaint that the signed Charge identifies sex, disability, and retaliation, while "[r]ace is absent." The Charge's factual narrative is likewise devoid of any race-based comments, any allegation that Plaintiff's race motivated a challenged employment action, or any other factual basis from which an EEOC investigation into race discrimination by All Points could reasonably be expected to arise. The omission, therefore, is not merely a failure to check the "race" box; the underlying factual allegations themselves do not present a race-discrimination claim. That distinction matters because the Fifth Circuit looks principally to the factual statement in the Charge in determining the permissible scope of the subsequent lawsuit. *Id.* at 789.

Count XXV therefore represents a new theory of discrimination that was not administratively exhausted through Plaintiff's Charge against All Points. Because a race-discrimination investigation could not reasonably be expected to grow out of a Charge alleging sex, disability, and retaliation without any factual allegation tying the challenged employment actions to Plaintiff's race, Count XXV must be dismissed with prejudice.

## B. MULTIPLE CLAIMS ARE BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS.

Plaintiff's Charge was filed on October 10, 2024. In Texas (a deferral state), the 300-day limitations period means that discrete Title VII and ADA acts occurring before approximately December 15, 2023 are untimely. Many of the Amended Complaint's factual allegations concern events occurring in 2022 and 2023, including allegations regarding work assignments in January and April 2023; the July 2023 roundtable meeting between Leidos and All Points, during which All Points first learned of the conflict between Plaintiff and Wong; the September 2023 communications concerning Plaintiff's allegations of being targeted by management, All Points' issuance of a written and final warning for alleged insubordination, Plaintiff's subsequent inquiry regarding ADA protections, and All Points' response; and alleged denials of reasonable accommodation in May and September 2023—all of which predate the limitations period.

### *1. Title VII and ADA Discrete Acts*

A Title VII or ADA plaintiff in Texas must file an EEOC charge within 300 days of each allegedly unlawful employment practice. 42 U.S.C. § 2000e-5(e)(1); *Griffin*, 26 F.3d at 612. Because Plaintiff filed her Charge on October 10, 2024, the limitations period

reaches back only to December 15, 2023. The Supreme Court has held that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges," and that each discrete act "constitutes a separate actionable 'unlawful employment practice'" for which the clock runs independently. *Morgan*, 536 U.S. at 102. The Court identified "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire" as examples of separately actionable practices, each of which "occurred" on the day it happened. *Id.* at 114.

Measured against that standard, the discrete acts on which Plaintiff's ADA and Title VII claims occurred well outside the limitations period, including the May 2023 accommodation request (which was granted), the September 2023 communications, and all allegations regarding work distribution and alleged retaliation (January and April 2023). Nor can these untimely acts be resurrected. The continuing-violation doctrine does not apply to discrete acts; a plaintiff may recover only for those discrete acts that fall within the charge-filing period. *Id.* at 113. And Federal Rule of Civil Procedure 15(c) does not cure the defect: Rule 15(c) governs relation back of pleadings in court and neither extends the 300-day administrative charge-filing period nor revives discrete acts for which no timely charge was filed. Accordingly, to the extent Plaintiff's ADA and Title VII claims rest on discrete acts occurring before December 15, 2023, including the May 2023 accommodation request, the September 2023 communications, and her work-distribution and retaliation allegations predating that date, those claims are time-barred and should be dismissed.

### *2. Hostile Work Environment*

In the hostile work environment context, the continuing violation doctrine encompasses only those acts that form part of the same pattern or policy of discrimination that gives rise to the relevant (and timely filed) Title VII claims. *Morgan*, 536 U.S. at 117. Application of this theory relieves a plaintiff from the burden of proving the entire violation occurred within the limitations period, as long as he can show at least one of the alleged discriminatory acts arose within 300 days of his EEOC charge. *Id.* Put another way, the continuing violation doctrine allows liability for unlawful employer conduct beyond the statute of limitations, but only if it is sufficiently connected to unlawful conduct occurring within the limitations period. A hostile-work-environment claim is timely only if Plaintiff alleges at least one act within the 300-day charge-filing period that actually contributed to the same actionable hostile environment. *Id.* Acts outside the filing period are "sufficiently related" to a timely act—and thus revived—only when they involve the same type of harassment from the same offender. *Lopez v. AT&T Mobility Servs. LLC*, 767 F. Supp. 3d 406, 429–30 (W.D. Tex. 2025).

Here, Plaintiff filed her EEOC Charge on October 10, 2024, making December 15, 2023, the beginning of the applicable 300-day period. The only potentially relevant employment-related events alleged after that date are the December 29, 2023 physical altercation involving Susana Kane (a female Leidos employee) and Plaintiff's January 4, 2024 termination. Neither event plausibly constitutes sex-based or disability-based harassment, much less harassment attributable to All Points.

### *3. Defamation (Count X) — One-Year Limitations*

Under Texas law, defamation claims are subject to a one-year statute of limitations that begins when the allegedly defamatory statement is published. Tex. Civ. Prac. & Rem. Code § 16.002(a); *Velocity Databank, Inc. v. Shell Offshore, Inc.*, 456 S.W.3d 605, 609 (Tex. App.—Houston [1st Dist.] 2014, pet. denied). The Amended Complaint specifically alleges that All Points made defamatory statements in a February 8, 2024 written submission to the Texas Workforce Commission and during an April 3, 2024 TWC hearing. Any claim based on those publications therefore expired no later than April 3, 2025—six months before Plaintiff filed her Original Complaint on October 3, 2025, and more than one year before she first asserted a defamation claim in the Amended on April 24, 2026.

The Amended Complaint also references statements allegedly made in EEOC and OFCCP submissions during 2024 but does not plead their precise publication dates. All Points therefore asserts the statute-of-limitations defense as to the specifically dated TWC publications and separately addresses the alleged EEOC and OFCCP statements under the applicable absolute and judicial-proceedings privileges. *See infra* V. C. 8.

Nor does Count X relate back to the Original Complaint under Rule 15(c). Although the allegedly defamatory statements concerned Plaintiff's termination and related administrative proceedings, the Original Complaint did not allege that All Points published any false statement to a third party, identify any challenged TWC, EEOC, or OFCCP communication, or seek relief for reputational injury arising from such publications. Count X thus rests on distinct post-termination communications and injuries that were not set

out—or attempted to be set out—in the Original Complaint. In any event, relation back cannot revive the specifically dated TWC claims because those claims were already time-barred before the Original Complaint was filed. Accordingly, Count X is barred to the extent it is based on the February 8, 2024 and April 3, 2024 publications and should be dismissed.

#### *4. State-Law Torts and Conspiracy Claim — Two-Year Limitations*

Plaintiff asserts a number of tort claim and a statutory claim that are bound by a two-year statute of limitations. Specifically, Plaintiff's IIED, civil conspiracy, tortious interference, negligence, and negligent hiring/supervision/retention claims are subject to a two-year statute of limitations. Tex. Civ. Prac. & Rem. Code § 16.003(a). Plaintiff's 42 U.S.C. § 1985(3) claim is likewise subject to a two-year limitations period. *See Helton v. Clements*, 832 F.2d 332, 334 (5th Cir. 1987). A cause of action accrues, and limitations begin to run, when a wrongful act causes a legal injury, regardless of when the plaintiff learns of that injury. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003). Because Plaintiff first asserted these claims on April 24, 2026, any claim based on conduct or an injury that accrued before April 24, 2024 is untimely unless it relates back to the Original Complaint.

As set forth in the Statute of Limitations standard above, Rule 15(c)(1)(B) permits relation back only when the newly asserted claim arises from the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading. The focus is on whether the original complaint gave fair notice of the factual circumstances underlying the later claim. *Johnson v. Crown Enters., Inc.*, 398 F.3d 339, 342 (5th Cir. 2005).

Plaintiff's Original Complaint summarized only her sexual-harassment, disability-discrimination, accommodation, retaliation, and wrongful-discharge claims. It alleged none of the distinct factual predicates underlying the new tort claims—unsafe vehicles or equipment and a bicycle assignment despite a lifting restriction (negligence); post-termination agency submissions affecting future employment (tortious interference); All Points' purported retention of alleged harassers (negligent supervision); or a cross-corporate conspiracy among NASA, Leidos, All Points, and others, together with numerous post-termination acts (conspiracy). Those occurrences involve distinct conduct, duties, publications, and injuries necessary to the new causes of action, not mere amplification of the original claims of alleges discrimination, harassment, or retaliation, and therefore do not relate back under Rule 15(c)(1)(B).

Plaintiff's § 1985(3) claim is likewise untimely insofar as it rests on the alleged campaign culminating in her January 4, 2024 termination. A civil-rights claim accrues when the plaintiff knows or has reason to know of the injury, and labeling a series of events a continuing conspiracy does not postpone accrual until the last overt act. *Helton*, 832 F.2d at 335; *Jackson v. City of Hearne, Texas*, 959 F.3d 194, 205 (5th Cir. 2020) (two-year limitations period). Plaintiff knew of her termination and the allegedly coordinated conduct by January 4, 2024 but did not assert the 1985(3) claim until April 24, 2026, and it does not relate back because the Original Complaint alleged no race- or gender-based agreement among All Points, Leidos, TekFive, Seabrook Solutions, and the individual defendants. Later agency submissions do not revive the termination-based claim as any distinct later injury accrues separately.

Accordingly, Count XIII through Count XVI (Intentional Infliction of Emotional Distress; Civil Conspiracy; Tortious Interference with Prospective Employment; Negligence) and Counts XX through Count XXIII (Negligent Hiring, Supervision, and Retention; Fraud/Fraudulent Misrepresentation; 42 U.S.C. 1985(3) Civil Rights Conspiracy; Promissory Estoppel), are time-barred to the extent they depend on conduct or injuries occurring before April 24, 2024. As discussed below, the claims also fail on independent substantive grounds.

### *5. FLSA and Equal Pay Act — Two/Three-Year Limitations*

FLSA and Equal Pay Act claims are subject to a two-year statute of limitations, or three years for willful violations. 29 U.S.C. § 255(a). Such a claim accrues at each regular payday immediately following the work period for which the wages or overtime are claimed. *Halferty v. Pulse Drug Co.*, 821 F.2d 261, 271 (5th Cir. 1987). A violation is not willful merely because Plaintiff labels it intentional or alleges that All Points should have known its conduct was unlawful. Rather, Plaintiff must plead facts supporting a plausible inference that All Points either knew its conduct violated the FLSA or acted with reckless disregard as to whether it did. *See Trevino v. RDL Energy Servs., L.P.*, No. CV H-14-1936, 2016 WL 11477431, at *22 (S.D. Tex. July 21, 2016), on *reconsideration in part*, No. CV H-14-1936, 2017 WL 1167160 (S.D. Tex. Mar. 29, 2017); *See Kharb v. Ericsson, Inc.,* 2018 WL 8369848, at *5 (E.D. Tex. Nov. 5, 2018). Plaintiff bears the burden of demonstrating willfulness, and mere knowledge of the FLSA and its applicability does not suffice, nor does conduct that is merely negligent or unreasonable. *Kharb*, 2018 WL 8369848, at *5. Instead, allegations supporting willfulness ordinarily must show that the

employer actually knew its compensation practices violated the FLSA or deliberately disregarded complaints alerting it to a potential FLSA violation. *Id.* at *6.

The Amended Complaint alleges no such facts. It does not allege that All Points had previously been advised that its compensation practices violated the FLSA, that any governmental agency or court had identified a violation, that Plaintiff complained of an FLSA violation that All Points deliberately ignored, or that All Points otherwise knew its pay practices were unlawful and nevertheless continued them.

The only allegation conceivably related to unpaid wages or off the clock work concerns Plaintiff's September 2023 email. Those wage claims accrued on the September 2023 paydays, *see Halferty*, 821 F.2d at 271, yet Plaintiff did not assert an FLSA or Equal Pay Act claim until her April 2026 Amended Complaint—well outside the two-year period. Because the Amended Complaint does not plausibly allege willfulness to extend the period to three years, the claims are untimely, and the label "willful" alone cannot revive them. Plaintiff's FLSA and Equal Pay Act claims should therefore be dismissed as time-barred.

## C. EACH CLAIM INDEPENDENTLY FAILS TO STATE A PLAUSIBLE CLAIM FOR RELIEF.

### *1. ADA Disability Discrimination (Count I)*

Consistent with the law cites above, All Points presents the legal basis supporting dismissal of all 25 counts against All Points. Although Plaintiff need not plead a prima facie case, she must allege facts plausibly supporting the ultimate elements of her claim, including that All Points subjected her to an adverse employment action because of an actual or perceived disability. *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766–

67 (5th Cir. 2019); *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014). To state an ADA disability discrimination claim, a plaintiff must allege (1) she has a disability, (2) that she was qualified for the job; and (3) that she was subject to an adverse action on account of her disability. *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014). The third element requires facts making it plausible that disability "actually play[ed] a role in the employer's decision making process and ha[d] a determinative influence on the outcome." *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 702 (5th Cir. 2014). The Amended Complaint does not clear that bar, because Plaintiff's own pleaded chain of causation attributes her termination to something other than disability.

First, Plaintiff's cat's-paw theory supplies no causal connection. She alleges that John Walters, a TekFive employee, submitted a false complaint to Leidos supervisor Brent Wong on November 27, 2023 accusing her of having "pressured" coworker Jesse Smith, and that Wong later told All Points Vice President Ed Scarborough that the JSC Security investigation had found Plaintiff "had not told the truth" about the December 29, 2023 incident. But the alleged falsity concerns Plaintiff's workplace conduct and credibility—not her disability. The Amended Complaint does not allege that Walters or Wong referenced any disability, accommodation request, or perceived impairment, or acted because of one; nor is Walters alleged to be Plaintiff's supervisor, an All Points employee, or a decisionmaker. At most, Plaintiff alleges that Wong relayed inaccurate information to Scarborough, who passed it to All Points Human Resources, which then terminated her—reliance on inaccurate information, not proof that disability "actually play[ed] a role" in the decision. That is not enough. Cat's-paw liability requires more than a third party's supplying

inaccurate or even deliberately false information to the decisionmaker; the intermediary must have acted with discriminatory animus, intended to cause the adverse action, and proximately caused it. *See Zamora v. City of Houston*, 798 F.3d 326, 331–33 (5th Cir. 2015). Plaintiff pleads the alleged falsity of Walters' and Wong's statements but no facts tying either to disability-based animus.

Second, Plaintiff's comparators—Ryan Sauer, Jordan Hollan, Mark Martinez, and William Figueredo—do not support an inference of disability discrimination. The Amended Complaint does not allege that they shared her employer, decisionmakers, and policies, or that any engaged in conduct comparable to her conduct during the December 29 incident that prompted Leidos to request her removal from the NEST contract.

Third, Robyn Smith's September 2023 statement is not "direct evidence." It addressed only whether Plaintiff's requested accommodation was covered by the ADA; it did not mention or recommend termination. Linking it to Plaintiff's January 2024 termination requires multiple inferences, and the roughly three-and-one-half-month gap—spanning the December 29 incident, the NASA Security investigation, and Leidos's removal request—further defeats any inference of disability-based causation. *See* Ex. 6.

Finally, the September 2023 Final Warning, the alleged accommodation denial, and any other discrete act before December 15, 2023 are independently time-barred. Even assuming the December 29 suspension and January 4 termination are timely, the Amended Complaint does not plausibly allege that All Points took either action because of a disability. Count I should be dismissed.

### *2. ADA Failure to Accommodate (Count II)*

To state a failure-to-accommodate claim, Plaintiff must plausibly allege that she was a qualified individual with a disability, All Points knew of the disability and its resulting limitations, and All Points failed to provide a reasonable accommodation. *Feist v. La. Dep't of Justice*, 730 F.3d 450, 452 (5th Cir. 2013). When the disability and necessary accommodation are not obvious, the employee must identify the disability-related limitation and request a workplace adjustment addressing it. *Patton v. Jacobs Eng'g Grp., Inc.*, 874 F.3d 437, 444 (5th Cir. 2017).

Plaintiff alleges no timely, unfulfilled request. All Points accommodated her June 2023 temporary 20-pound lifting restriction by assigning her to the Spacebar, where minimal lifting was required. *See* Ex. 5. When that 6–8 week restriction expired, she provided no renewed medical restriction, and her allegation that she was "too afraid" to ask for additional accommodations does not show that All Points knew of a continuing limitation. Nor is her September 18 email the "formal" request accompanied by medical documentation she claims: it only asks whether an unspecified "disability/disorder" causing a "strong need to ask questions" is covered by the ADA and offers documentation later. *See* Ex. 6. Her earlier requests for written procedures are not alleged to have been presented to All Points as disability accommodations. Without a sufficiently specific accommodation request, no interactive-process obligation arose. *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 587 (5th Cir. 2020). *Strife* is distinguishable because it involved a specific accommodation for a known disability that remained pending for six months. *Strife v. Aldine Indep. Sch. Dist.*, 138 F.4th 237, 243–45 (5th Cir. 2025). In any event, the

September 2023 denial of a purported accommodation request was a discrete act outside the 300-day charge period. *Henson v. Bell Helicopter Textron, Inc.*, 128 F. App'x 387, 390–91 (5th Cir. 2005). Count II should be dismissed.

### *3. ADA Retaliation (Count III)*

To state an ADA-retaliation claim, Plaintiff must plausibly allege protected activity, a materially adverse action, and a causal connection between the two; she also must show that the adverse action would not have occurred *but for* the protected activity. *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999).

The Amended Complaint's chronology defeats its principal retaliation theory. Plaintiff's September 18, 2023, 5:20 p.m. email complained of unspecified "targeting" and off-the-clock work—not disability discrimination or the denial of an accommodation. All Points issued the alleged Final Warning at 5:46 p.m., before Plaintiff sent her disability-related inquiry at 6:18 p.m. *See* Ex. 6. Thus, the warning could not have been retaliation for that later ADA inquiry. *Id.* The September warning and alleged accommodation denial are also time-barred, discrete acts. Plaintiff's remaining references to cancelled overtime and a "hostile security interview" lack dates, responsible decisionmakers, and facts connecting them to protected activity. Finally, her January 4, 2024 termination occurred more than three months later and followed the December 29 workplace incident, NASA Security investigation, and Leidos' request that she be removed from the contract. Causation cannot rest on temporal proximity alone unless the proximity is "very close," *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001), and the Fifth Circuit has held that even a five-month lapse is not close enough, without other evidence of retaliation, to

establish the causal-connection element, *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 305 (5th Cir. 2020). Here, the gap, together with the intervening events alleged in the Amended Complaint itself, defeats any inference that protected activity was the but-for cause of termination. As set forth below, this same intervening-events chronology—the December 29 incident, the NASA Security investigation, and Leidos' removal directive—independently defeats causation for Plaintiff's other retaliation theories. Count III should be dismissed.

#### 4. *Equal Pay Act (Count V)*

Although the EPA does not require exhaustion, a plaintiff must allege lower wages than a specific male comparator for equal work requiring equal skill, effort, and responsibility. 29 U.S.C. § 206(d)(1); *Chance v. Rice Univ.*, 984 F.2d 151, 153 (5th Cir. 1993). The Amended Complaint contains no such allegations. Allegations about promotions, overtime, or full-time, permanent Leidos positions purportedly awarded to someone else do not state EPA wage-disparity claims as to her employer All Points. This claim should be dismissed.

#### 5. *Title VII Sex Discrimination (Count VI)*

Title VII prohibits an employer from discriminating against an employee because of sex with respect to her compensation or the terms, conditions, or privileges of employment. 42 U.S.C. § 2000e-2(a)(1). Plaintiff need not plead a prima facie case, but she must allege facts plausibly showing that she suffered harm to an identifiable term, condition, or privilege and that All Points imposed it because of her sex. *See Muldrow v. City of St. Louis*, 601 U.S. 346, 350, 354–59 (2024); *Hamilton v. Dallas County*, 79 F.4th

494, 501–02 (5th Cir. 2023); *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767–68 (5th Cir. 2019). Count VI does not plausibly allege that All Points took any action against Plaintiff because she is a woman.

First, the Amended Complaint lumps separate entities together as "Defendants." The alleged sexual comments and "boys' club" conduct are attributed principally to Brent Wong, a Leidos employee not alleged to be an All Points employee, agent, or decisionmaker. Plaintiff does not allege that All Points decisionmakers Robyn Smith or Ed Scarborough made any sex-based comment or favored male employees. Allegations that "Defendants" collectively imposed harsher discipline, lost overtime, credibility attacks, exclusion from team photographs, and termination neither identify which All Points representative acted with any bias nor show that any All Points action was motivated by sex.

Second, the cat's-paw theory does not cure that gap. It requires facts showing that a person acting with gender-based animus performed an act intended to cause, and proximately causing, the challenged decision. *See Zamora*, 798 F.3d at 331–33. Plaintiff offers only conclusory assertions that Wong "coordinated" her discipline or supplied a "false report narrative"; she identifies no communication in which Wong sought her discipline or termination because of her sex. Labels like "coordinated," "direct evidence," and "cat's paw" are not facts.

Third, the comparator allegations fail. A plaintiff must identify employees treated more favorably under "nearly identical circumstances"—the same responsibilities, the same supervisor or decisionmaker, comparable disciplinary standards and history, and

conduct itself "nearly identical" to hers. *Lee v. Kan. City S. Ry.,* 574 F.3d 253, 259-60 (5th Cir.2009). “Employees with different supervisors, who work for different divisions of a company or who were the subject of adverse employment actions too remote in time from that taken against the plaintiff generally will not be deemed similarly situated.” *Id.* at 259. Critically, the conduct that prompted the adverse employment action must itself be “nearly identical” to the comparator’s conduct. *Id.* Plaintiff's male comparators—Sauer, Hollan, and Martinez—are not alleged to have shared her employer, decisionmakers, or disciplinary standards, and their conduct differs materially: Sauer and Hollan participated in a VPN-provisioning incident and Martinez in a separate "Flipper Zero" event, whereas All Points removed Plaintiff after learning she had been untruthful about the December 29 incident and ensuing investigation. Merely characterizing these employees as “similarly situated” and their conduct as “identical” or “worse” is a legal conclusion that the Court need not accept. Without basic facts showing comparable employment, decisionmakers, conduct, and disciplinary circumstances, the comparator allegations do not permit a reasonable inference that All Points treated Plaintiff differently because of sex. *Olivarez v. T-mobile USA, Inc.*, 997 F.3d 595 (5th Cir. 2021).

Finally, the remaining allegations add nothing. Plaintiff does not allege that All Points controlled the NASA or Leidos team photographs or explain how exclusion harmed a term or condition of her employment, and her vague "negative credibility attacks" and others' alleged promotions are not tied to any All Points decision. Her "mixed-motive," "direct evidence," and "same-decision" arguments supply labels, not facts showing that sex motivated an All Points employment decision. Count VI should be dismissed.

***6. Title VII Sexual Harassment / Hostile Work Environment (Count VII)***

To state a hostile-work-environment claim, Plaintiff must plausibly allege unwelcome sex-based harassment that was sufficiently severe or pervasive to alter the conditions of employment. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651, 654 (5th Cir. 2012); *Gardner v. CLC of Pascagoula, L.L.C.*, 915 F.3d 320, 322–23 (5th Cir. 2019). Liability also requires facts showing that the employer knew or should have known of the harassment and failed to take prompt remedial action. *Id.*

The available allegations do not support employer liability against All Points. Plaintiff alleges that she reported Wong's conduct to Leidos through Christy Murray, a Leidos employee, and that a meeting occurred with Leidos and All Points in July 2023. All Points' Position Statement states that All Points first learned of issues between Plaintiff and Wong during the July 13, 2023 meeting, followed up with Plaintiff on July 19, 2023, and invited Plaintiff to contact All Points with workplace issues so All Points could help. *See* Ex. 1. Plaintiff does not plead facts showing that All Points controlled Wong, had authority to discipline Wong, knew before July 2023 of severe or pervasive sex-based harassment by Wong, or failed to respond after receiving notice. Absent facts supporting both actionable harassment and a basis for imputing liability to All Points, the sexual-harassment claim fails. *Kummerle v. EMJ Corp.*, 3:11–CV–2839–SAF, 2012 WL 2995065, at *4 (N.D.Tex. July 23, 2010); *Halter v. Beauty Basics, Inc.*, No. 4:22-cv-1659, 2023 WL 4054713, at *2 (S.D. Tex. May 25, 2023).

Plaintiff does not allege that she thereafter informed All Points that Wong's alleged sexual conduct continued or that All Points otherwise knew its response was ineffective.

The claim is also time-barred. As explained in Section V. III. B, the 300-day charge-filing period reaches only acts on or after approximately December 15, 2023, and the continuing-violation doctrine revives earlier acts only if a timely act is sufficiently related to them. Plaintiff's principal harassment allegations about Wong—including the July 2023 report and follow-up meeting—predate December 15, 2023, and she pleads no timely sex-based harassing act to anchor them under the same-offender standard discussed above. *Lopez*, 767 F. Supp. 3d at 430.

Here, the alleged harassment does not involve the same type of harassment from the same offender. Plaintiff's allegations regarding the December 29 incident wherein Kane allegedly pushed boxes toward Plaintiff after stating, "I'm your new Brent," does not, without additional facts, plausibly show harassment because of sex or conduct forming part of the same sexually hostile environment act to resurrect the prior time barred conduct. The December 29 incident involved a different actor, different conduct, and a different alleged wrong. The Amended Complaint does not allege that Kane's act was sexual in nature, accompanied by sex-based comments, motivated by Plaintiff's sex, or otherwise part of the same course of sexual harassment allegedly committed by Wong. The isolated reference to "Brent," without additional factual allegations connecting Kane's conduct to Wong's alleged sexual harassment, does not plausibly transform the December 29 altercation into a continuation of the same sexually hostile environment. Because the Amended Complaint alleges no timely sex-based act after December 15, 2023, the earlier allegations cannot be revived under the continuing-violation doctrine. *Heath v. Bd. of Supervisors for S. Univ.*, 850 F.3d 731, 736–38 (5th Cir. 2017). Count VII should be dismissed.

***7. Title VII Retaliation (Count VIII)***

Title VII retaliation requires (1) protected activity, (2) adverse action, and (3) causal connection. *Davis v. Fort Bend County*, 765 F.3d 480, 490 (5th Cir. 2014). Plaintiff's July 2023 sexual-harassment report is the only plausibly protected Title VII activity alleged. Her September 2023 email concerned general targeting and off-the-clock work, while her December 2023 assault report did not allege sex-based discrimination.

Plaintiff was terminated nearly six months after the July 2023 report. For the reasons set forth in Count III, that gap—together with the same intervening December 29 incident, NASA Security investigation, and Leidos directive removing Plaintiff from the contract—defeats any inference that the July 2023 report was the but-for cause of termination. Temporal proximity alone does not establish causation unless it is "very close," and a multi-month lapse is not. *See Breeden*, 532 U.S. at 273; *Lyons*, 964 F.3d at 305.

The remaining allegations concerning coworker complaints and post-termination conduct are conclusory and do not plausibly connect any materially adverse action by All Points to protected activity. Count VIII should be dismissed.

***8. Defamation Per Se (Count X)***

Under Texas law, defamation requires publication of a false statement of fact about the Plaintiff to a third party, the requisite degree of fault, and damages unless the statement is actionable per se. *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015). Plaintiff bases Count X on statements allegedly made in TWC, EEOC, and OFCCP proceedings. Statements made to TWC in connection with unemployment-compensation proceedings are absolutely privileged and "may not be the basis for an action for defamation of character." Tex. Lab.

Code § 301.074; *Watson v. Ragle Inc.*, No. 4:25-CV-00667-P, 2026 WL 958691, at *2 (N.D. Tex. Feb. 10, 2026), report and recommendation adopted, 2026 WL 957723 (N.D. Tex. Apr. 8, 2026). All Points' EEOC position statement is likewise absolutely protected by Texas's judicial-proceedings privilege. *Wiggins v. Poyner Spruill, L.L.P.*, No. 24-20011, 2024 WL 4212894, at *4–5 (5th Cir. Sept. 17, 2024). The specifically dated TWC statements from February and April 2024 are also independently barred by Texas's one-year statute of limitations, which runs from publication, for the reasons set forth in Section V. III. C. *See Velocity Databank*, 456 S.W.3d at 609; Tex. Civ. Prac. & Rem. Code § 16.002(a). Count X should be dismissed.

***9. FLSA Retaliation (Count XI)***

An FLSA-retaliation claim requires protected activity, an adverse employment action, and a causal link. 29 U.S.C. § 215(a)(3). An informal complaint is protected only if it is sufficiently clear for a reasonable employer to understand it as an assertion of FLSA rights and a request for their protection. *Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 625–26 (5th Cir. 2008). Plaintiff's September 18, 2023 email does not plausibly allege protected activity under that standard. Plaintiff alleges only that she "felt pressured" to work off the clock; it did not assert that All Points violated the FLSA, demand unpaid wages, or otherwise frame the concern as unlawful. That is materially analogous to *Rodriguez*, where the Fifth Circuit held that an employee's email discussing overtime did not constitute protected activity because, viewed in context, it expressed "discontent or disagreement" rather than a complaint of illegality and did not make clear that the employee was asserting FLSA-protected rights. *Rodriguez v. City of Corpus Christi*, 129 F.4th 890,

898-99 (5th Cir. 2025). As the Fifth Circuit explained, an employee does not engage in protected activity where she fails to frame her objection in terms of potential illegality. *Id.*

Even assuming protected activity, Plaintiff's January 4, 2024 termination occurred more than three months later and followed the December 29 incident, NASA Security investigation, and Leidos' request that she be removed from the contract. For the reasons set forth in Count III, those intervening events defeat any causal connection. The remaining allegations of cancelled overtime are undated and identify no responsible decisionmaker. Count XI should be dismissed.

***10. Federal Contractor Whistleblower Protection (Count XII)***

Section 4712 protects disclosures that an employee reasonably believes evidence gross mismanagement of a federal contract, gross waste of federal funds, abuse of contract-related authority, a substantial and specific danger to public safety, or a violation of law related to a federal contract. 41 U.S.C. § 4712(a)(1). Plaintiff alleges ordinary employment complaints concerning discrimination, accommodations, wages, and a coworker dispute. The conclusory assertion that these events occurred at a federal worksite or involved contract funds does not plausibly connect them to the administration or misuse of the federal funds related to the NASA contract.

The claim is also premature. Section 4712 requires exhaustion before suit, which occurs only after the agency denies relief or fails to act within 210 days. *Robertson v. Intratek Computer, Inc.*, 976 F.3d 575, 580–81 (5th Cir. 2020). Plaintiff admits she submitted her NASA Inspector General complaint on April 24, 2026—the same day she

filed the Amended Complaint—and that the 210-day period will not expire until November 2026. Count XII should therefore be dismissed, at minimum without prejudice, for failure to exhaust administrative remedies.

### *11. Intentional Infliction of Emotional Distress (Count XIII)*

IIED is a "gap-filler" unavailable when another statutory or common-law theory addresses the alleged conduct. *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447–48 (Tex. 2004); *Waffle House, Inc. v. Williams*, 313 S.W.3d 796 (Tex. 2010). The allegations against All Points, including discipline, denial of accommodations, retaliation, termination, and allegedly false agency submissions, duplicate Plaintiff's ADA, Title VII, FLSA, and defamation claims. She cannot repackage that conduct as IIED merely because those claims may fail or be time-barred. *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816–18 (Tex. 2005). Nor do the alleged employment and post-termination actions plausibly constitute conduct so extreme and outrageous as to be "utterly intolerable in a civilized community." *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993). Count XIII should be dismissed.

### *12. Civil Conspiracy (Count XIV)*

Civil conspiracy is a derivative theory requiring an underlying tort, a meeting of the minds, and an unlawful overt act. *Agar Corp. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 141–42 (Tex. 2019); *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983). Count XIV merely characterizes workplace communications, complaints, discipline, and termination as "coordination" and speculates that discovery will reveal an agreement. It alleges no facts showing that All Points specifically agreed with another Defendant to

commit any particular tort. Because the underlying tort claims fail and the Amended Complaint does not plausibly allege an agreement, specific intent, or independently tortious overt act, the conspiracy claim should be dismissed.

### *13. Tortious Interference with Prospective Employment (Count XV)*

Tortious interference with prospective business relations requires a reasonably probable relationship, intentional interference through independently tortious or unlawful conduct, proximate causation, and actual damages. *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013). The Amended Complaint alleges only that Plaintiff submitted numerous applications; it identifies no prospective employer, probable employment relationship, reference inquiry received by All Points, or facts showing that any employer accessed or relied on All Points' agency submissions. The theory that those statements to the pertinent agencies might appear in a future background check is speculative. Moreover, the alleged predicate defamation is privileged or time-barred. Because the Amended Complaint fails to plausibly allege a probable relationship, independently tortious act, intent, or causation, Count XV should be dismissed.

### *14. Negligence (Count XVI)*

Negligence requires a duty, breach, and damages proximately caused by the breach. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004). Although the Amended Complaint lists allegedly unsafe conditions at her worksite, it alleges no accident or physical injury caused by the vehicle, bicycles, equipment, or evacuation procedures—only fear, risk of possible harm, and voluntarily incurred expenses. Texas recognizes no general duty to avoid negligently inflicting emotional

distress. *Boyles v. Kerr*, 855 S.W.2d 593, 597 (Tex. 1993). Nor does the absence of cameras plausibly establish that All Points proximately caused the alleged coworker assault.

Moreover, to the extent Plaintiff alleges an employment-related injury covered by workers' compensation, the Act provides the exclusive remedy. Tex. Lab. Code § 408.001(a). Her reliance on the gross-negligence exception is misplaced because that exception applies only when an employee's death results from the employer's gross negligence. Id. § 408.001(b). Count XVI should be dismissed.

### *15. 42 U.S.C. § 1981 Race Discrimination (Count XVII)*

Section 1981 prohibits intentional race discrimination affecting contractual rights, and Plaintiff must plausibly allege that race was the but-for cause of an adverse employment action. *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020).

Count XVII alleges no race-based statement, policy, or other facts connecting any All Points decision to Plaintiff's race. Instead, it relabels the same sex-, disability-, and retaliation-based allegations as "intersectional" race discrimination and relies on an unrelated proceeding against NASA. The alleged white-male comparators are not plausibly similarly situated because the Amended Complaint does not allege that they were All Points employees subject to the same decisionmaker or engaged in conduct comparable to the December 29 incident that preceded Plaintiff's removal. Because the Amended Complaint does not plausibly allege that Plaintiff's race was a but-for cause of any adverse action, Count XVII should be dismissed.

***16. 42 U.S.C. § 1981 Retaliation (Count XVIII)***

Section 1981 prohibits retaliation for opposing race discrimination, and Plaintiff must plausibly allege that such protected activity was a but-for cause of the challenged action. *Id.*

Plaintiff's pre-termination complaints purportedly concerned sexual harassment, disability accommodations, off-the-clock work, and a coworker assault—not race discrimination. Her conclusory characterization of those complaints as "intersectional" does not transform them into protected § 1981 activity.

***17. 42 U.S.C. § 1981 Interference with Contract Rights (Count XIX)***

Section 1981 protects contractual rights from intentional race discrimination, and Plaintiff must plausibly allege that race was the but-for cause of the impairment. *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006); *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020).

Count XIX merely repackages Plaintiff's § 1981 discrimination claim. The Amended Complaint alleges no facts showing that All Points denied any contractual benefit, altered her employment terms, or terminated her because of race. Its reliance on sex- and disability-based allegations, male comparators, and an unrelated proceeding against NASA does not establish purposeful race discrimination. Because the Amended Complaint does not plausibly allege race-based interference with Plaintiff's contractual rights, Count XIX should be dismissed.

***18. Negligent Hiring, Supervision, and Retention (Count XX)***

A negligent hiring, supervision, or retention claim requires negligence concerning the defendant's employee and actionable conduct by that employee that proximately caused the plaintiff's injury. *Endeavor Energy Res., L.P. v. Cuevas*, 593 S.W.3d 307, 311 (Tex. 2019). The Amended Complaint alleges that Wong, Murray, and Garcia were Leidos employees and that Kane was employed by Seabrook Solutions; it does not allege that All Points hired, retained, controlled, or had authority to supervise them. Nor does it identify an All Points employee whose conduct supports this claim. To the extent Count XX repackages Plaintiff's sexual-harassment allegations as negligent supervision, it is preempted by the TCHRA's comprehensive remedial scheme. *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 799–805 (Tex. 2010). Count XX should be dismissed.

***19. Fraud / Fraudulent Misrepresentation (Count XXI)***

Fraud requires a material misrepresentation, knowledge or recklessness, intent to induce reliance, actual and justifiable reliance, and resulting injury. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998). Rule 9(b) also requires the circumstances of the alleged fraud to be pleaded with particularity. *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003).

None of Plaintiff's factual theories alleged in Count XXI state a claim. Smith's September 19, 2023 statement that Plaintiff's request was not covered by the ADA expresses All Points' legal position; the alleged injury arises from the purported denial of accommodations, not from Plaintiff's reliance on that characterization. The second theory concerns a handbook submitted to the EEOC. According to Plaintiff, it was the EEOC who

relied on the All Points Handbook—not actual and justifiable reliance by Plaintiff—and the Amended Complaint does not plausibly allege that the handbook submission to the EEOC caused Plaintiff a cognizable injury. Count XXI should be dismissed.

### *20. 42 U.S.C. § 1985(3) Civil Rights Conspiracy (Count XXII)*

Section 1985(3) requires a conspiracy, an act in furtherance, resulting injury, and racial animus motivating the agreement. *Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971); *Cantú v. Moody*, 933 F.3d 414, 419–20 (5th Cir. 2019). Count XXII lists workplace communications and allegedly adverse acts but alleges no facts plausibly showing that All Points agreed with another Defendant to deprive Plaintiff of rights because she is Asian. References to an unrelated NASA proceeding, non-Asian comparators, and "intersectional" discrimination do not establish a race-motivated agreement.

Moreover, alleged violations of Title VII cannot be repackaged under § 1985(3). *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 378 (1979) (§ 1985(3) may not be invoked to redress violations of Title VII). Count XXII should be dismissed.

### *21. Promissory Estoppel (Count XXIII)*

Promissory estoppel requires a promise, foreseeable reliance, and substantial detrimental reliance. *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983). Count XXIII identifies NASA Security Deputy Chief Kindred—not All Points—as the alleged promisor. The Amended Complaint does not allege that Kindred had authority to bind All Points or that All Points adopted his alleged statement that management would "work it out" after the holiday. That vague statement also imposes no definite obligation on All Points. To the extent Plaintiff construed it as a promise of continued employment, her signed offer letter

expressly provided that her employment was at will and could be terminated at any time. Count XXIII should be dismissed.

***22. Rehabilitation Act § 504 (Count XXIV)***

Section 504 of the Rehabilitation bars discrimination only in programs that received federal financial assistance; it does not broadly protect the disabled from discrimination in the private sector. *Flynn v. Distinctive Home Care, Inc.*, 812 F.3d 422, 425–26 (5th Cir. 2016). The Amended Complaint alleges only that All Points received payments for services under a NASA subcontract; it identifies no grant, subsidy, or other federal financial assistance accepted by All Points. Even if § 504 applied, the Amended Complaint fails to allege a qualifying disability or denial of benefits solely by reason of disability. Count XXIV should be dismissed.

***23. Title VII Race Discrimination (Count XXV)***

As explained in Section V. A. 1, Plaintiff failed to exhaust a race-discrimination claim because her operative EEOC charge did not identify race as a basis of discrimination or contain allegations that would reasonably prompt an investigation into race discrimination. A judicial claim cannot rest on a new discrimination theory untethered to the administrative charge. *Pacheco v. Mineta*, 448 F.3d at 788–89; *Castro*, 541 F. App'x at 379.

Count XXV is independently implausible. Although the Amended Complaint now identifies Plaintiff as Asian American and of Korean descent, it alleges no race-based statement, policy, or other facts connecting her race to any decision by All Points. The purported comparators are not alleged to have been subject to the same All Points

decisionmaker or disciplined under comparable circumstances, and an unrelated proceeding involving alleged discrimination by NASA does not support an inference of racial animus by All Points. Merely relabeling Plaintiff's sex-, disability-, and retaliation-based allegations as "intersectional" race discrimination does not plausibly allege that race motivated any challenged action. Count XXV should be dismissed with prejudice.

### *24. ADA Hostile Work Environment (Count XXVI)*

To state an ADA hostile-work-environment claim, Plaintiff must plausibly allege that: (1) she belongs to a protected group; (2) she experienced unwelcome harassment; (3) the harassment was based on her disability; (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and (5) All Points knew or should have known of the harassment but failed to take prompt remedial action. *Flowers v. S. Reg'l Physician Servs., Inc.*, 247 F.3d 229, 235–36 (5th Cir. 2001); *Strife v. Aldine Independent School District*, 138 F.4th 237, 248 (5th Cir. 2025).

The Amended Complaint satisfies none of the essential harassment elements. Its only purported allegation of disability-directed harassment is the conclusory assertion that Travis McFarland mocked Plaintiff's "processing style," "executive-function differences," and accommodation needs. The Amended Complaint identifies no specific statement, incident, date, frequency, context, or other facts showing that McFarland subjected Plaintiff to recurring harassment because of a disability. Labels such as "mockery" and "obsessive surveillance" cannot substitute for factual allegations establishing actionable harassment. Nor does the Amended Complaint allege that Plaintiff reported McFarland's supposed conduct to All Points or that All Points otherwise knew about it and failed to respond.

The remaining allegations merely repackage Plaintiff's other causes of action as a hostile environment. The alleged denial of an accommodation, failure to engage in the interactive process, issuance of a final warning, workplace monitoring, and termination are discrete personnel or accommodation disputes—not severe or pervasive harassment on the basis of disability. The Fifth Circuit has specifically held that "a disagreement with an employer over terms of employment or an accommodation do[es] not amount to harassment." *Strife*, 138 F.4th at 248 (quoting *Clark v. Champion National Security, Inc.*, 952 F.3d 570, 585 (5th Cir. 2020)). Temporal proximity between Plaintiff's ADA email and the final warning may relate to her separate retaliation theory, but it does not transform a discrete disciplinary decision into pervasive disability-based harassment.

The other alleged conduct is equally deficient. The Amended Complaint does not allege that the December 2023 altercation was motivated by Plaintiff's disability, and her subjective belief that the incident was particularly harmful because she suffers from PTSD does not establish that the conduct occurred because of a disability. Likewise, alleged post-termination statements to administrative agencies could not alter the conditions of a workplace in which Plaintiff was no longer employed. *Yeh v. Chesloff*, 483 S.W.3d 108, 118 (Tex. App.—Houston [1st Dist.] 2015, pet. denied) (holding that post-termination acts are not within a hostile work environment claim).

Plaintiff's claimed emotional distress and subsequent treatment do not cure the absence of objectively severe or pervasive workplace harassment. Count XXVI should be dismissed with prejudice.

***25. Retaliatory Hostile Work Environment (Count XXVII)***

The Fifth Circuit has not recognized an independent retaliatory-hostile-work-environment claim. *Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731, 741 n.5 (5th Cir. 2017); see also *Lemonia v. Westlake Mgmt. Servs., Inc.,* No. 22-30630, 2023 WL 6878915, at *8 (5th Cir. 2023) (declining to entertain the theory). Thus, Count XXVII should be dismissed.

## D. PLAINTIFF'S COMMON-LAW CLAIMS ARE PREEMPTED OR DISPLACED BY STATUTORY SCHEMES.

Independent of the claim-specific deficiencies above, Plaintiff's state common-law claims impermissibly repackage the same alleged discrimination, harassment, retaliation, accommodation, and termination facts addressed by the comprehensive statutory remedial schemes—Title VII, the ADA, the FLSA, and the Equal Pay Act.

Under Texas law, the TCHRA provides the exclusive remedy for employment-discrimination claims, displacing common-law theories whose gravamen is workplace discrimination. *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 800–01 (Tex. 2010); *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004). A plaintiff cannot circumvent statutory remedies by recharacterizing the same facts as common-law torts.

Here, each common-law claim arises from the same nucleus of facts underlying Plaintiff's statutory claims. These claims are displaced and must be dismissed.

## VI. CONCLUSION AND PRAYER

For all the reasons herein, there is no plausible basis for any viable claim by Plaintiff against All Points. All Points respectfully requests Defendant respectfully requests its Motion to Dismiss be granted and the claims asserted in Plaintiff's First Amended Petition be dismissed with prejudice.

Respectfully submitted,

*/s/ Katherine D. Strathman*

**Laura E. De Santos – Lead Counsel**
State Bar No. 00793612
SDTX No. 19328
ldesantos@grsm.com
**Katherine D. Strathman**
State Bar No. 24137365
SDTX No. 3861991
kstrathman@grsm.com
Gordon Rees Scully Mansukhani, LLP
1900 West Loop South, Suite 1000
Houston, TX 77027
(713) 961-3366 (Telephone)
(713) 961-3938 (Facsimile)

**ATTORNEYS FOR DEFENDANT ALL POINTS LOGISTICS LLC**

## CERTIFICATE OF CONFERENCE

I hereby certify that I conferred with counsel for Defendants NASA and Leidos as well as Plaintiff via e-mail regarding the relief sought in this Motion on September 15, 2026. On September 15, 2026, Counsel for NASA, Ariel Wiley, indicated NASA is not opposed to the relief sought in this Motion. Counsel for Leidos has not responded. On September 18, 2026, Plaintiff indicated she is opposed.

*/s/ Katherine D. Strathman*
Katherine D. Strathman

## CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2026, a true and correct copy of the foregoing was served on all parties of record via the Court's CM/ECF system.

*/s/ Katherine D. Stathman*
**Katherine D. Strathman**